## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, <br> 2101 E Street NW <br> Washington, DC 20037, <br><br> and <br><br> AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, <br> 80 F Street NW <br> Washington, DC 20001, <br><br>     *Plaintiffs*, <br><br>   v. <br><br> DONALD TRUMP, President of the United States of America, <br> 1600 Pennsylvania Avenue NW <br> Washington, DC 20050, <br><br> UNITED STATES DEPARTMENT OF STATE, <br> 2201 C Street NW <br> Washington, DC 20520, <br><br> UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, <br> 1300 Pennsylvania Avenue NW <br> Washington, DC 20004, <br><br> UNITED STATES TREASURY DEPARTMENT, <br> 1500 Pennsylvania Avenue NW <br> Washington, DC 20220, <br><br> MARCO RUBIO, Secretary of State, <br> and Acting Administrator of <br> United States Agency for <br> International Development, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br><br><br><br><br><br><br><br> Civil Action No. _____ |

1

|                                                   |   |
|---------------------------------------------------|---|
| United States Department of State,                | ) |
| 2201 C Street NW                                  | ) |
| Washington, DC 20520,                             | ) |
|                                                   | ) |
| and                                               | ) |
|                                                   | ) |
| SCOTT BESSENT, Secretary of Treasury,             | ) |
| 1500 Pennsylvania Avenue NW                       | ) |
| Washington, DC 20220,                             | ) |
|                                                   | ) |
| *Defendants*.                                     | ) |

## INTRODUCTION

This action seeks declaratory and injunctive relief with respect to a series of unconstitutional and illegal actions taken by President Donald Trump and his administration that have systematically dismantled the United States Agency for International Development (USAID). These actions have generated a global humanitarian crisis by abruptly halting the crucial work of USAID employees, grantees, and contractors. They have cost thousands of American jobs. And they have imperiled U.S. national security interests.

The first of these actions came on January 20, 2025, when Defendant Trump issued an Executive Order titled "Reevaluating and Realigning United States Foreign Aid," directing an immediate "90-day pause in United States foreign development assistance for assessment of programmatic efficiencies and consistency with United States foreign policy."[1] Defendants State Department

---

[1] Exec. Order. No. 14169, 90 Fed. Reg. 8619.

and Rubio then directed the immediate issuance of stop-work orders on USAID foreign assistance awards. USAID grantees and contractors reeled as they were— without any notice or process—constrained from carrying out their work alleviating poverty, disease, and humanitarian crises. Defendant Rubio subsequently was named by Defendant Trump as Acting Director of USAID and announced that he would consult with Congress on "potential reorganization" of the agency.[2]

Shortly after assistance funding was frozen, over one thousand USAID institutional support contractors—and thousands more employees of USAID contractors or grantees—were laid off or furloughed. The humanitarian consequences of defendants' actions have already been catastrophic. USAID provides life-saving food, medicine, and support to hundreds of thousands of people across the world. Without agency partners to implement this mission, U.S.-led medical clinics, soup kitchens, refugee assistance programs, and countless other programs shuddered to an immediate halt.

Days ago, Elon Musk and other members of the so-called "Department of Government Efficiency" (DOGE) gutted what remained of the agency. Members of DOGE reportedly demanded access to classified USAID systems without requisite security clearances; USAID security officials who attempted to block

---

[2] Press Release, U.S. Dep't of State, Secretary Marco Rubio Appointed as Acting Administrator for the United States Agency for International Development (USAID) (Feb. 3, 2025) (https://tinyurl.com/znt34s64) ).

them were placed on administrative leave.[3] Musk posted on February 3 that he spent the previous weekend "feeding USAID into the wood chipper," and that same day, USAID headquarters shut down.[4] More than 1,000 employees—including some in war zones—were locked out of their computer accounts.[5] The usaid.gov website now indicates that "all USAID direct hire personnel will be placed on administrative leave globally" on Friday, February 7, 2025, at 11:59 PM.

Not a single one of defendants' actions to dismantle USAID were taken pursuant to congressional authorization. And pursuant to federal statute, Congress is the only entity that may lawfully dismantle the agency.

Given the severe ongoing harms suffered by plaintiffs and defendants' intent to inflict imminent future harm, plaintiffs now file this Complaint and will seek a temporary restraining order directing Defendants to reverse these unlawful actions and to halt any further steps to dissolve the agency until the Court has an opportunity to more fully consider the issues on the merits.

---

[3] Margaret Brennan, et al., *Two top security officials at USAID placed on leave, sources say*, CBS News (Feb. 3, 2025), https://tinyurl.com/54z6pnu2 .

[4] Elon Musk (@elonmusk), X (Feb. 4, 2025, 1:54 AM), https://tinyurl.com/mskvue6w .

[5] Hana Kiros, *America Can't Just Unpause USAID*, The Atlantic (Feb. 4, 2025), https://tinyurl.com/54w83yz4.

## PARTIES

1.    **Plaintiff American Foreign Service Association** (AFSA) is the professional association and exclusive representative for the U.S. Foreign Service. AFSA represents nearly 80 percent of active-duty members of the Foreign Service, including 1980 Foreign Service Officers (FSO) employed by USAID.

2.    **Plaintiff American Federation of Government Employees**, AFL-CIO (AFGE) is a labor organization and unincorporated association headquartered at 80 F Street N.W., Washington, D.C. 20001. AFGE, the largest federal union, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States.

3.    **Defendant Donald J. Trump** is the President of the United States and oversees the executive branch.

4.    **Defendant United States Department of State** is an executive department of the federal government that is responsible for the country's foreign policy and relations.

5.    **Defendant United States Agency for International Development** (USAID) is an independent agency of the United States government that is primarily responsible for administering civilian foreign aid and development assistance.

6.    **Defendant Department of Treasury** is an executive department of the federal government that is responsible for managing federal finances.

7.    **Defendant Marco Rubio** is the Acting Director of USAID and the Secretary of State. He is sued in his official capacities.

8.    **Defendant Scott Bessent** is the Secretary of Treasury. He is sued in his official capacity.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law, specifically, the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, and pursuant to 28 U.S.C. § 1361.

10.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because at least one of Defendants is headquartered in Washington, D.C., and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## LEGAL FRAMEWORK

11.    In 1961, President John F. Kennedy created USAID to aid strategically important countries, lead American efforts to alleviate poverty and disease, and assist the commercial interest of the United States by supporting

sustainable economic growth in developing countries to build capacity for global trade.[6]

12.    An act of Congress, the Foreign Affairs Reform and Restructuring Act of 1998, later established USAID as an independent agency outside of the Department of State. It explicitly provided that "there is within the Executive branch of Government the United States Agency for International Development." 22 U.S.C. § 6563 (1998).

13.    The 1988 act also afforded the president a time-limited opportunity to submit to Congress a "reorganization plan and report" for USAID. To that end, the president was empowered by Congress either to "provide for the abolition" of USAID or to transfer its functions to the Department of State. 22 U.S.C. § 6601(d). Alternatively, and "in lieu of abolition," the president could submit a plan to Congress providing for "the transfer to and consolidation" of certain USAID functions, and "additional consolidation, reorganization, and streamlining" of USAID.  *Id*. The president had 60 days following October 21, 1998, to submit the reorganization plan and report. 22 U.S.C. § 6601(a).

---

[6]    Cong. Rsch. Serv., U.S. Agency for International Development: An Overview (Jan. 6, 2025), https://tinyurl.com/4dc4wjhp*see also* The Am. Presidency Proj., *Executive Order 10973 - Administration of Foreign Assistance and Related Functions* (Nov. 3, 1961), https://tinyurl.com/3pwptwat (text of Executive Order 10973).

14.     On December 30, 1998, President Clinton submitted a report to Congress pursuant to Section 6601. That report determined that "USAID will remain a distinct agency with a separate appropriation."[7]

15.     Since the Foreign Affairs Reform and Restructuring Act of 1998, Congress has repeatedly appropriated funds for USAID as an independent agency. Congress most recently did so in the Further Consolidated Appropriations Act, 2024 ("Appropriations Act").

16.     The Appropriations Act also explicitly restricted the ability of the executive branch to reorganize USAID. The Act provided that "funds appropriated by this Act, prior Acts making appropriations for the Department of State, foreign operations, and related programs, or any other Act may not be used to implement a reorganization, redesign, or other plan . . . by the Department of State, the United States Agency for International Development, or any other Federal department, agency, or organization funded by this Act without prior consultation by the head of such department, agency, or organization with the appropriate congressional committees." Further Consolidated Appropriations Act, Pub. L. 118-47 § 7063(a), 138 Stat 460 (2024).

17.     The Appropriations Act defined "reorganization, redesign, or other plan" to include, *inter alia*, any action to "eliminate, consolidate, or downsize

---

[7] Reorganization Plan and Report Submitted by President Clinton to the Congress on December 30, 1998, Pursuant to Section 1601 of the Foreign Affairs Reform and Restructuring Act of 1998, as Contained in Public Law 105-277. https://tinyurl.com/48kthcr8.

covered departments, agencies, or organizations," any action to "eliminate, consolidate, or downsize the United States official presence overseas," or "reduce the size of the permanent Civil Service, Foreign Service, eligible family member, and locally employed staff workforce" of USAID "from the staffing levels previously justified to the Committees on Appropriations for fiscal year 2024." *Id.* § 7063(b).

18.    The Appropriations Act also imposes notification requirements on the funds. Among other things, it provides that no funds shall be available for obligation to "suspend or eliminate a program, project, or activity," "close, suspend, open, or reopen a mission or post," or "create, close, reorganize, downsize, or rename bureaus, centers, or offices" unless "previously justified to the Committees on Appropriations or such Committees are notified 15 days in advance of such obligation." *Id.* § 7015(a).

## FACTUAL ALLEGATIONS

### USAID Foreign Assistance Funding is Frozen

19.    On January 20, 2025, President Trump issued an Executive Order titled "Reevaluating and Realigning United States Foreign Aid," Exec. Order. No. 14169, 90 Fed. Reg. 8619, directing a "90-day pause in United States foreign development assistance for assessment of programmatic efficiencies and consistency with United States foreign policy." *Id.* The funding freeze applied "immediately" to all "obligations and disbursements of development assistance funds." *Id.* After that 90-day period, the Order directed "[t]he responsible

department and agency heads . . . [to] make determinations . . . whether to continue, modify, or cease each foreign assistance program . . . with the concurrence of the Secretary of State." *Id.*

20.    Four days later, on January 24, 2025, the Secretary of State directed his staff to halt "foreign assistance funded by or through" USAID and required the "immediate[ ]" issuance of "stop-work orders" for existing foreign assistance grants and contracts.[8]

21.    In the following days, USAID issued stop-work orders to contractor and grantee agency partners, requiring them to immediately stop work and to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage.

22.    Defendants simultaneously began purging agency employees and contractors. On January 26, at least fifty-six senior career agency staff were put on administrative leave.[9] By January 29, hundreds of institutional support contractors were laid off.[10] William Malyszka, USAID's top human resources

---

[8] Dep't of State, Memo. 25 STATE 6828 (attached as Exhibit A); *see also* Press Release, U.S. Dep't of State, *Prioritizing America's National Interests One Dollar at A Time* (Jan. 29, 2025),  https://tinyurl.com/2n4zyp8f (confirming the existence of the January 24 order).

[9] Ellen Knickmeyer and Matthew Lee, *US places dozens of senior aid officials on leave, citing possible resistance to Trump orders*, AP (Jan. 27, 2025),https://tinyurl.com/37r6pb2y.

[10] Anna Gawel, *Furloughs hit hundreds of USAID contractors*, Devex (Jan. 29, 2025),https://tinyurl.com/ycxpb54h. .

official, reportedly refused defendants' directives to put thousands more staff on administrative leave, before he, too, was pushed out.[11]

23.    As a result of these actions, most functions of the agency immediately halted, with life-threatening consequences. Clinics stopped distributing HIV medication.[12] Staff who operate humanitarian operations at refugee camps in Syria were told to stop work, leaving thousands of people vulnerable to instability and violence at the hands of ISIS.[13] Soup kitchens that feed nearly a million people in famine-stricken Khartoum were shut down.[14] Toddlers in Zambia were deprived of rehydration salts to treat life-threatening diarrhea.[15] Doctors at U.S.-funded medical facilities in Sudan that treat severely malnourished children were forced to choose whether to obey Defendants' orders

---

[11] Elissa Miolene, *Top USAID HR officer pushed out after refusing to fire more staff*, Devex (Feb. 4, 2025),https://tinyurl.com/4pujyp5t.

[12] Melody Schreiber, *Trump's 'stop-work' order for PEPFAR cuts off anti-HIV drugs for patients*, NPR (Jan. 28, 2025), https://tinyurl.com/bdf52kas.

[13] Tom Bateman, *How a US freeze upended global aid in a matter of days*, BBC (Jan. 29, 2025), https://tinyurl.com/27k3mjue.

[14] Sui-Lee Wee, et al., *How the World is Reeling from Trump's Aid Freeze*, N.Y. Times (Jan. 31, 2025),  https://tinyurl.com/2fjm79nh.

[15] Stephanie Nolen, *Health Programs Shutter Around The World As Trump Pauses Foreign Aid*, N.Y. Times (Feb. 1, 2025),  https://tinyurl.com/53j4mhw9.

and "immediately stop their operations or to let up to 100 babies and toddlers die."[16]

**The State Department Issues Limited Foreign Assistance Waivers**

24.    As chaos engulfed the agency and the humanitarian operations it serves, the State Department issued two waivers of its order to halt foreign assistance through USAID. First, on January 28, 2025, it issued a limited waiver of the pause on USAID funding for "life-saving humanitarian assistance," defined to mean "core life-saving medicine, medical services, food, shelter, and subsistence assistance."[17] The statement specified that that limited resumption was "temporary in nature."[18]

25.    Second, on February 1, 2025, the State Department announced a "limited waiver" for "[l]ife-saving HIV care and treatment services, inclusive of HIV testing and counseling, prevention and treatment of opportunistic infections including TB, laboratory services, and procurement and supply chain commodities/medicines" and "[p]revention of mother-to-child transmission

---

[16] Brett Murphy and Anna Maria Barry-Jester, *"People Will Die": The Trump Administration Said it Lifted its Ban on Lifesaving Humanitarian Aid. That's Not True*, ProPublica (Jan. 31, 2025),  https://tinyurl.com/y7stwsua.

[17] Press Release, U.S. Dep't of State, *Emergency Humanitarian Waiver to Foreign Assistance Pause* (Jan. 28, 2025),  https://tinyurl.com/34wmfvu8.

[18] *Id.*

services, inclusive of commodities/test kits, medicines and PrEP for pregnant and breastfeeding women."[19]

26.    These waivers offered little –to no relief for USAID partners who suffered from defendants' freeze in funding. They were not "self-executing by virtue of the announcement,"[20] so contractors and grantees scrambled to reach USAID contacts to ascertain if they were covered by the waiver. But because agency staff had already suffered severe cuts, groups doing lifesaving work were unsure how to request a waiver and received little to no information about the status of such requests.[21]

**The Agency is Dissolved and Remaining Functions Halted**

27.    During the first weekend in February, Defendants swiftly moved to destroy what remained of the agency.

28.    On Saturday, February 1, Elon Musk and other members of the so-called "Department of Government Efficiency" (DOGE) reportedly demanded access to classified USAID systems without requisite security clearances. USAID

---

[19] @JohnHudson, X (Feb. 1, 2025) https://tinyurl.com/43mdff3p (posting an image of the first page of the order); Adva Saldinger, *Exclusive: Some PEPFAR programs get waiver to restart operations*, Devex (Feb. 1, 2025), https://tinyurl.com/28sk6xf5.

[20] Brett Murphy and Anna Maria Barry-Jester, *"People Will Die": The Trump Administration Said it Lifted its Ban on Lifesaving Humanitarian Aid. That's Not True*, ProPublica (Jan. 31, 2025),https://tinyurl.com/y7stwsua .

[21] *Id.*

security officials who attempted to block them were placed on administrative leave.[22]

29.    That same day, USAID.gov was taken offline.[23]

30.    By Sunday, contract personnel at USAID began reporting that they were locked out of their email.[24] Eventually, more than 1,000 USAID employees—including some in war zones—were completely locked out of their computer accounts.[25] On information and belief, most, if not all, received no prior notice or communication that they would be losing access to USAID systems. Those agency staffers still receiving emails were told that, "[a]t the direction of Agency leadership, the USAID headquarters at the Ronald Reagan building in Washington, D.C. will be closed to Agency personnel on Monday, February 3, 2025."[26] The email directed that any replies be sent to Gavin Kliger, a special

---

[22] Margaret Brennan, et al., *Two top security officials at USAID placed on leave, sources say*, CBSNews (Feb. 3, 2025), https://tinyurl.com/54z6pnu2..

[23] Edward Helmore*, USAID website offline as Trump moves to put agency under State Department*, The Guardian (Feb. 1, 2025), https://tinyurl.com/25buz7mx. .

[24] Michael R. Gordon, et al., *Marco Rubio wants USAID to undergo overhaul, backs off sudden shutdown*, The Wall Street Journal (Feb. 3, 2025), https://tinyurl.com/39s7nw83.    https://www.wsj.com/politics/policy/trump-administration-shutters-usaid-headquarters-db3fac7e

[25] Hana Kiros, *America Can't Just Unpause USAID*, The Atlantic (Feb. 4, 2025), https://tinyurl.com/54w83yz4.

[26] Michael R. Gordon et al., *Marco Rubio Wants USAID to Undergo Overhaul, Backs Off Sudden Shutdown*, Wall St. J. (Feb. 3, 2025), https://tinyurl.com/39s7nw83.

advisor to the director of the Office of Personnel Management who appears to currently work for DOGE.[27]

31.    According to reports, members of DOGE also pressed the Treasury Department for access to the system through which aid payments are made. A top official reportedly wrote to the group, "I don't believe we have the legal authority to stop an authorized payment certified by an agency."[28] That official was reportedly terminated in the following days for refusal to give DOGE members access to the system.[29]

32.    By Monday, USAID—the world's premier humanitarian assistance and international development agency—was in complete disarray. Musk stated that he had spent the previous weekend "feeding USAID into the wood chipper."[30] He also claimed, "With regards to the USAID stuff, I went over it with [President Trump] in detail and he agreed that we should shut it down."[31]

33.    Consistent with defendants' efforts to shut down the agency, President Trump appointed Defendant Rubio to serve as Acting Administrator of

---

[27] *Id.*

[28] Andrew Duehren et al., *Treasury Sought to Freeze Foreign Aid Payments, Emails Show*, N.Y. Times (Feb. 6, 2025), https://tinyurl.com/yn27uumyhttps://.

[29] *Id.*
[30]    Elon    Musk    (@elonmusk),    X    (Feb.    3,    2025.    1:54    AM), https://tinyurl.com/mskvue6w.

[31] Jennifer Hansler et al., *Rubio says he's acting director of USAID as humanitarian agency is taken over by the State Department*, CNN (Feb. 4, 2025), https://tinyurl.com/3dw3h7nj.

USAID.[32] Defendant Rubio then sent a letter to the Senate Foreign Relations Committee and House Foreign Affairs Committee providing "notice" and advising Congress of the State Department's "intent to initiate consultations . . . regarding the manner in which foreign aid is distributed around the world."[33] Rubio further indicated that he authorized Peter Marocco, State Department Director of Foreign Assistance, to "begin the process of engaging in a review and potential reorganization of USAID's activities."[34] Rubio further advised that "State and other pertinent entities will be consulting with Congress . . . to reorganize and absorb certain bureaus, offices, and missions of USAID. . . . USAID may move, reorganize, and integrate certain missions, bureaus, and offices into the Department of State, and the remainder of the Agency may be abolished consistent with applicable law."[35]

34.    USAID has already been substantially dismantled. It has no independent leadership: Defendant Rubio has assumed the mantle of Acting Director, and U.S. lawmakers concerned about the dissolution of the agency were

---

[32] *Id.*

[33] Image of letter available at Brett Murphy (@BrettMurphy), X (Feb. 3, 2025, 3:41 PM), https://tinyurl.com/fnbxptpm.

[34] *Id.*
[35] *Id.*

reportedly blocked from meeting with USAID staff and told that it would be "best to contact" the State Department.[36]

35.    On Tuesday, February 4, 2025, President Trump told a reporter "I think so" when asked if he was going to wind down USAID.[37]

36.    On Tuesday, February 4, the State Department ordered the shutdown of all overseas USAID missions, ordering thousands of USAID employees to be recalled by Friday, February 7, 2025.[38] That same day, the State Department placed thousands of employees on administrative leave, directing them "not to enter USAID premises, access USAID systems, or attempt to use your position or authority with USAID in any way without [the] prior permission [of Peter Marocco] or prior permission of a supervisor in your chain of command."[39]

37.    Throughout the week, USAID workforce members reported that key portions of USAID's internal infrastructure were either inaccessible or offline. Such infrastructure includes Phoenix—which is USAID's core financial

---

[36] Elissa Miolene, *U.S. lawmakers blocked from USAID, told to go to State Department instead*, Devex (Feb. 3, 2025),https://tinyurl.com/m9hypwar.

[37] Jeff Mason & Daphne Psaledakis, *Trump says he thinks he will wind down US humanitarian agency*, Reuters (Feb. 4, 2025), https://tinyurl.com/k8swykw7.

[38] Humeyra Pamuk, *Trump administration puts on leave USAID staff globally in dramatic aid overhaul, Reuters* (Feb. 4, 2025),https://tinyurl.com/2hbvfvpm.

[39] Alex Marquardt et al., *USAID employees around the world will be placed on leave Friday and ordered to return to US*, CNN (Feb. 5, 2025), https://tinyurl.com/bdh4kaf5.

management system—as well as the Global Acquisition and Assistance System (GLAAS).

38.    On Tuesday, February 4, 2025, the USAID.gov website came back online, with the following notice:



On Friday, February 7, 2025, at 11:59 pm (EST) all USAID direct hire personnel will be placed on administrative leave globally, with the exception of designated personnel responsible for mission-critical functions, core leadership and specially designated programs. Essential personnel expected to continue working will be informed by Agency leadership by Thursday, February 6, at 3:00pm (EST).

For USAID personnel currently posted outside the United States, the Agency, in coordination with missions and the Department of State, is currently preparing a plan, in accordance with all applicable requirements and laws, under which the Agency would arrange and pay for return travel to the United States within 30 days and provide for the termination of PSC and ISC contracts that are not determined to be essential. The Agency will consider case-by-case exceptions and return travel extensions based on personal or family hardship, mobility or safety concerns, or other reasons. For example, the Agency will consider exceptions based on the timing of dependents' school term, personal or familial medical needs, pregnancy, and other reasons. Further guidance on how to request an exception will be forthcoming.

Thank you for your service.

**Consequences of Defendants' Actions**

39.  The agency's collapse has had disastrous humanitarian consequences. Among countless other consequences of defendants' reckless dissolution of the agency, halting USAID work has shut down efforts to prevent children from

dying of malaria, stopped pharmaceutical clinical trials, and threatened a global resurgence in HIV.[40] Deaths are inevitable. Already, 300 babies that would not have had HIV, now do.[41] Thousands of girls and women will die from pregnancy and childbirth.[42] Without judicial intervention, it will only get worse. The actions defendants plan to take on Friday will "doom billions of dollars in projects in some 120 countries, including security assistance for Ukraine and other countries, as well as development work for clean water, job training and education, including for schoolgirls under Taliban rule in Afghanistan."[43]

**Injuries to Plaintiffs**

40.  Plaintiff AFSA exists to support the United States Foreign Service, which deploys worldwide to protect and serve America's people, interests, and values. AFSA is both the principal advocate for the long-term institutional wellbeing of the professional career Foreign Service and responsible for safeguarding the interests of AFSA members.

---

[40] Matthew Kavanaugh & Luis Gil Abinader, *Abolishing USAID is both Unconstitutional and Dangerous*, Foreign Policy (Feb. 4, 2025), https://tinyurl.com/mr2wfsbd. /.

[41] Kate Knibbs, *Elon Musk's DOGE Is Still Blocking HIV/AIDS Relief Exempted From Foreign Aid Cuts*, Wired (Feb. 3, 2025), https://tinyurl.com/5n65ehw8.

[42] Mark Townsend et al., *Deaths predicted amid the chaos of Elon Musk's shutdown of USAID*, Guardian (Feb. 4, 2025), https://tinyurl.com/4ke5kb8p.

[43] Ellen Knickmeyer & Matthew Lee, *Almost all USAID workers will be pulled off the job worldwide, Trump administration says*, AP (Feb. 5, 2025), https://tinyurl.com/287dnnk4.

41.  AFSA represents 1,980 Foreign Service Officers (FSOs) who are currently employed by USAID. These members have already experienced extraordinary harms caused by the ongoing shutdown of USAID and are at imminent risk of further irreparable injury if the shutdown is allowed to continue.

42.  Financial Harms: AFSA's member FSOs are experiencing myriad financial injuries and will experience more such injuries as the shutdown continues. Among other financial harms and risks:

    a.  FSOs have reported to AFSA that they are unable to get reimbursed by USAID for incurred travel expenses, which can reach into the thousands and sometimes tens of thousands in any given month. Without reimbursement, FSOs will be on the hook for these expenses (which are carried on credit cards under the FSOs' names) and may also experience harm to their credit scores if the FSOs are unable to pay off their credit cards.

    b.  The mandatory 30-day evacuation—which is being accomplished on an impracticable timeline and is a gross departure from standard processes for evacuating—threatens to cause financial harm in a myriad of ways. For example, some FSOs have spouses employed at the local embassy. Such spouses will be forced to give up their employment and evacuate alongside the FSOs. Those families will therefore lose a second source of income. Further, under the normal evacuation process, FSOs would receive a special evacuation

allowance (which would include lodging and meals) for up to 180 days upon returning to the states. But FSOs have received no indication that they will receive that per diem and may be forced to incur thousands of dollars of expenses to secure short term housing (e.g., hotels or Airbnbs) for their families as they look for more permanent accommodations. And FSOs may lose income themselves upon repatriation. Many FSOs earn up to an additional 75% of their base salary (for hardship) depending on which country they work in. These FSOs will likely lose that additional income when they return to the states. Moreover, FSOs will face tremendous logistical uncertainty, from navigating the process of withdrawing their children from school mid-year to contemplating the possibility of leaving pets behind. The above impacts are just a sample of the harms that will flow from the mandatory evacuation.

43.    Physical Safety and Legal Exposure: Some FSOs are located in dangerous countries and have reported losing access to USAID's security apparatus, putting their safety and well-being at risk. Additionally, AFSA has heard reports that some FSOs have had their immunity status revoked by their host countries at the direction of senior USAID officials. The revocation of this status exposes FSOs to the law enforcement procedures of the host country and strips the FSOs of access to the U.S. embassy for legal counsel and advice. The

revocation of immunity status also comes with financial harm and risk: without it, FSOs are subject to duties on their purchases, imports, and exports.

44.    Plaintiff AFGE is the largest federal union in the nation, representing approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States.

45.    Through its affiliate, AFGE Local 1534, AFGE has over 500 members at USAID.

46.    As a union, AFGE has already been severely harmed by defendants' actions and will suffer continued, irreparable harm if defendants' actions persist. It has had to devote considerable resources into advising its members about the consequences of defendants' arbitrary and reckless actions. Unless this court intervenes, AFGE will lose the ability to represent its members who were USAID employees and will lose hundreds of members.

47.    AFGE's members, too, have been severely and irreparably harmed. They are confused and frightened. Some have made choices with significant financial consequences—such as geographic location and family planning—in reliance on defendants' adherence to federal law.

48.    Because many members have been shut out of USAID computer systems, they have been unable to recoup reimbursements or to access health benefits to which they are entitled. Many members will be forced to incur substantial out-of-pocket costs that they would not have otherwise incurred.

22

## CAUSES OF ACTION

### Count One
### Violation of Separation of Powers
### (against all Defendants)

49.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

50.    Plaintiffs have a non-statutory right of action to declare unlawful official action that is ultra vires.

51.    The President of the United States has only those powers conferred on him by the Constitution and federal statutes.

52.    The President may not confer powers upon other federal Officers or Departments within the Executive Branch that he does not himself possess.

53.    Federal legislation must be passed by both chambers of Congress before it may be presented to the President, and, if signed, become law.

54.    The President does not have the power under the Constitution unilaterally to amend statutes.

55.    The President may not confer powers upon other federal Officers or Departments within the Executive Branch that he does not himself possess.

56.    USAID was established as an independent federal agency by Congress in 1998 through a duly enacted statute, the Foreign Affairs Reform and Restructuring Act, signed into law by President Clinton.

57.     Since 1998, Congress has passed numerous additional statutes regarding USAID appropriations and oversight, all the while preserving USAID's status as an independent federal agency.

58.     Because Congress created USAID as a separate agency by statute, only Congress may act to dissolve it or merge it with the Department of State. *See, e.g.*, *Myers v. United States*, 272 U.S. 52 (1926).

59.     President Trump's actions to dissolve USAID exceed presidential authority and usurp legislative authority conferred upon Congress by the Constitution, in violation of the separation of powers.

60.     The remaining defendants, acting as agents of Defendant Trump, aided President Trump in dissolving USAID despite lacking the Constitutional authority to do so.

61.     Plaintiffs will suffer irreparable injury if the President's action is not declared unlawful, and Plaintiffs have no adequate remedy at law.

62.     The public interest favors issuance of a judicial declaration that the president's unilateral action in dissolving USAID is unlawful because that action has interrupted life-saving humanitarian work performed throughout the world by USAID and its contractors, undermined U.S. national security, and caused thousands of Americans to lose their jobs.

**Count Two**
**Violation of Take Care Clause**
**(against all Defendants)**

63.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

64.    Article II of the Constitution confers upon the President the duty to "take care that the Laws be faithfully executed." U.S. Const., Art. II, § 3.

65.    The Take Care Clause is judicially enforceable against presidential actions that violate or undermine statutes duly enacted by Congress. *See, e.g.*, *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945) ("Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of [the Executive Branch].").

66.    President Trump's actions in dissolving USAID violate the Take Care Clause because they violate duly enacted statutes establishing USAID as an independent agency.

67.    The Take Care Clause prohibits the President from directing federal officers to act in derogation of federal statute.

68.    President Trump's action in directing Secretary of State Rubio to take over USAID functions and absorb those functions into the State Department violates the Take Care Clause because such a restructuring would violate the Congressionally enacted arrangement under which USAID is an independent agency distinct from the State Department.

69.    The remaining defendants, as agents of Defendant Trump, acted contrary to duly enacted statute in violation of the Take Care Clause.

70.    Plaintiffs will suffer irreparable injury if the President's action is not declared unlawful, and Plaintiffs have no adequate remedy at law.

71.    The public interest favors issuance of a judicial declaration that the president's unilateral action in dissolving USAID is unlawful because that action has interrupted life-saving humanitarian work performed throughout the world by USAID and its contractors, undermined U.S. national security, and caused thousands of Americans to lose their jobs.

**Count Three**
**Administrative Procedure Act–706(2)(C)**
**In Excess of Statutory Authority**
**(against Defendants State Department, USAID, Department of**
**Treasury, Rubio, and Bessent)**

72.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

73.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

74.    No defendant possesses the statutory authority to dissolve USAID. Defendants' actions to dissolve USAID exceed their respective statutory authorities.

75.    Defendants' unilateral dissolution of USAID also violates a statutory limitation: namely, the Further Consolidated Appropriations Act, which limits the use of appropriated funds only to reorganizing or redesigning USAID—not dissolving it entirely—and only after first consulting with the appropriate congressional committees.

**Count Four**
**Violation of the Administrative Procedure Act—706(2)(A)**
**Arbitrary and capricious**
**(against Defendants State Department, USAID, Department of**
**Treasury, Rubio, and Bessent)**

76.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

77.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

78.    The dissolution of USAID is arbitrary and capricious in multiple respects.

79.    First, defendants failed to acknowledge the catastrophic consequences of their actions, both as they pertain to American workers, to the lives of millions across the world, and to U.S. national interests.

80.    Second, defendants fail to articulate a reasoned explanation for the dissolution of the agency.

81.    Third,  defendants failed to account for the substantial reliance interests in the continued existence of USAID. "When an agency changes course . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account," and the failure to do so is arbitrary and capricious. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotation marks and citation omitted).

82. The dissolution of USAID is also contrary to law. The statutes defendants violated include, but are not limited to:

a. 5 U.S.C § 6329a(b)(1), which provides that "during any calendar year, an agency may place an employee in administrative leave for a period of not more than a total of 10 work days."

b. 31 U.S.C. § 3901 *et seq.*, which requires agencies to pay valid invoices by their contracted due date or within 30 days.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

a. Declare unlawful and set aside the decision to shut down USAID as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A), contrary to constitutional right, power, privilege, or immunity under 5 U.S.C. § 706(2)(B), and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right under 5 U.S.C. § 706(2)(C);

b. Issue a temporary restraining order and preliminary injunction directing defendants to immediately cease actions to shut down USAID's operations in a manner not authorized by Congress and directing to them to take the following actions:

i. Appoint an independent Acting Director of USAID;

ii. Reopen USAID buildings;

iii. Restore all USAID computer systems and webpages;

    iv.  Restore funding pursuant to the terms of all grants, cooperative agreements, and contracts, consistent with the terms of the agreements and any relevant statutes and regulations;

    v.  Refrain from placing any additional workers on administrative leave, or continuing the leave of those previously placed on administrative leave, unless such leave is authorized by this Court after giving legitimate, non-arbitrary, and particularized reasons;

    vi.  Recall furlough notices to affected workers unless specifically authorized to do so by this Court after giving legitimate, non-arbitrary, and particularized reasons;

    vii.  Recall mandatory evacuation orders.

c.  Order Defendants to file a status report with the Court within 24 hours of entry of a temporary restraining order, and at regular intervals thereafter, confirming compliance with these orders.

d.  Issue a permanent injunction barring executive agencies and agency heads from taking any action to dissolve USAID absent the authorization of Congress;

e.  Award Plaintiffs their costs, reasonable attorney's fees, and other disbursements as appropriate; and

f.  Grant such other relief as the Court deems necessary, just, and proper.

Dated: February 6, 2025                    Respectfully submitted,

/s/ Lauren Bateman                         /s/ Kaitlyn Golden
Lauren Bateman                             Kaitlyn Golden
(DC Bar No. 1047285)                       (DC Bar No. 1034214)
Karla Gilbride                             Kristen Miller
(DC Bar No. 1005886)                       (DC Bar No. 229627)
Allison Zieve                              Kayla M. Kaufman*
(DC Bar No. 424786)                        (DC Bar No. 90029091)
Public Citizen Litigation Group            Robin F. Thurston
1600 20th Street NW                        (DC Bar No. 1531399)
Washington, DC 20009                       Skye L. Perryman*
(202) 588-1000                             (DC Bar No. 984573)
lbateman@citizen.org                       Rachel L. Fried
                                           (DC Bar No. 1029538)
                                           Democracy Forward Foundation
                                           P.O. Box 34553
                                           Washington, D.C. 20043
                                           (202) 448-9090
                                           kmiller@democracyforward.org
                                           (DC Bar No. 90029091)

                    *motion to appear *pro hac vice* forthcoming

                    *Counsel for Plaintiffs*