# EXHIBIT J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, et al., ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> DONALD TRUMP, et al., ) <br> ) <br> *Defendants*. ) | Civil Action No. 1:25-CV-352 |

**DECLARATION OF JANICE DOE**

I, Janice Doe, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am currently stationed at at a USAID Mission in Asia as a personal services contractor (PSC) with USAID. PSCs do the same sorts of work as direct-hire employees of USAID but we have contracts that govern our employment, which provide that we must be given 15 days notice before the contract is terminated.

3. I have worked for USAID as a PSC since 2020 . Before being posted to Asia, I served in a technical advisory role for USAID.  In these roles, I supported USAID programs to advance overall U.S. national security and foreign policy objectives by preventing and ending conflicts, countering radicalization and extremism, and protecting civilian victims of war.

4. I am joined at my Asia posting by my husband and our two young children, one in kindergarten and one who is in preschool. My husband's income is also tied to USAID because he works as an institutional support contractor (ISC) in support of another USAID mission. In his role, he supports USAID programs to address immediate needs of people living in a conflict zone and promote longer-term solutions to the conflict through development projects.

5. My entire family receives health insurance through my contract. Termination of my PSC contract will mean the immediate loss of medical coverage for myself and all family members. The proposed rapid repatriation of myself and family to the United States under the order to recall all USAID overseas personnel leaves insufficient time to obtain replacement healthcare. I am particularly concerned about the abrupt loss of health insurance because I receive ongoing medical monitoring for a previous cancer diagnosis. The compulsory return to the U.S. will result in me losing access to my medical care at my current posting and significantly delay my required monitoring to ensure my cancer remains in remission.

6. I have a young child enrolled in school at my current post in Asia. Terminating my PSC contract and/or ordered return to the U.S. under the February 4 notice issued by USAID risks significant loss of time for my child in the classroom. We have not been told where the U.S. Government plans to send us under the repatriation order, rendering preparations to enroll my child in an American school impossible. Extracting a young child from school mid-year and absent any plan or pledged support for re-enrollment in another school guarantees the child will be

harmed from missed time in the classroom and difficulties adjusting to a new learning environment and curriculum, not to mention the emotional trauma such actions take on young children and their parents. If we are located in a city where we are unable to demonstrate residency for school registration purposes, we will be compelled to enroll our child in a costly private school during a period where both parents are unemployed. This could prompt a quick accrual of large financial debts. We would also need to pay for daycare for our young, toddler (age 36 months) at a U.S. preschool that is assuredly far more expensive than her current preschool in Asia.

7.      Thus far, neither USAID nor the Department of State has provided a written commitment to underwrite the costs of repatriating me as a PSC and my family and our property from our current diplomatic posting in Asia. A message posted to the USAID website on February 6 indicates the opposite, that individuals or families choosing to stay at their posting beyond the 30 days prescribed in the February recall order do so at their own personal financial risk and "Beyond 30 days, however, Agency funded and arranged return travel may not be available." I have children in school, two dogs at my overseas Embassy-provided residence, and personal property to pack or sell, including a vehicle purchased through diplomatic marketplaces at my post. The proposed timeline is too short for an orderly repatriation. The latest information issued on February 6 by USAID threatens to withhold all support for my return should I stay beyond the extremely short 30-day timeline. If we are forced to leave Asia and return to the United States without government support, we will have to pay for our travel expenses out of pocket at a

time when neither my husband nor I will have any source of income. Terminated from our jobs, my husband and I will not be able to cover the monthly mortgage on our house. Our house is located in the northeast United States. Our job prospects remain most strong in Washington D.C. We would likely have to relocate to Washington D.C. to search for employment, meaning needing to pay a house mortgage and rent on no incomes. Such financial burdens would require assuming extraordinary amounts of debt. We would be mortgaging our future financial health in a desperate dash to find work. Moreover, we will not be able to take our two dogs with us due to standing import guidelines issued by the Center for Disease Control and Prevention (CDC) that require waiting times longer than 30 days to qualify for bringing dogs from overseas. This means we will need to pay a lot of money to keep our dogs in a kennel for weeks in Asia while we await the permits. We will need to pay for international animal transport at an outrageous cost once the required import permits are obtained. This is not a cost that can be shouldered by a family with both parents unemployed. One dog requires ongoing care for cancer. The loss of both PSC and ISC salaries makes this care impossible to finance. The removal of treatment due to the prohibitive cost consigns the dog to a slow, painful death at a kennel in Asia or the difficult choice to put the dog down before we are repatriated.

8. I'm also distressed by how chaotic this process has been so far and how chaotic I expect it to be if it is not stopped. There is no one at USAID headquarters in Washington D.C. from my Bureau to help me and my family return to the U.S. As of February 6, most of my colleagues in Washington have lost email and systems access

to the platforms needed to bring me home safely and in an orderly manner. We understand that almost all USAID systems will be closed on February 7 when the remainder of my colleagues are placed on administrative leave. Reports indicate the Department of State may assume responsibility for our return. Without previous experience and familiarity with USAID systems, even well-intentioned Department of State personnel will be unable to execute, or quickly overwhelmed by, the massive logistical and financial challenges posed by returning thousands of Americans from overseas. This is likely to result in a chaotic and disorderly process. For example, evacuations of U.S. diplomatic posts abroad usually involve a much smaller pool of evacuees and do not include immediate pack out of personal property. This one is being handled in such a rushed manner without key personnel in place to manage it that I have no doubt that connecting flights, hotel reservations, and other logistical details will fall through the cracks, causing stress to foreign aid workers and their families, including mine. Unintentional errors, oversights, and administrative glitches could leave my family and other travelers stranded enroute without access to our USAID systems to request help or our colleagues in place in Washington to provide it. Property may be damaged, lost, or misrouted in transit due to unprecedented high volumes that overwhelm systems and lack personnel to oversee them.

9. I'm also bothered by the personal medical information we've been forced to reveal in public settings in the course of asking to have our forced return home delayed, and I don't trust that our private medical information will be kept secure.

We were required to put sensitive data on medical conditions and health treatments in unprotected cloud-computing based files. I don't know who has access to the information being compiled about us or how it will be used.

10. Dissolving USAID will harm me and my family in many ways, but the harms are far broader. We sponsor a nanny to live with us in embassy housing. She will lose her ability to stay in the country where we are posted. Without job prospects or onward opportunities, she will be stranded and financially destitute. Having that happen to the person who has cared for your kids for years and needing to explain to your children why you have to abandon a person who we treat as a member of our family is heart wrenching. We will also leave behind USAID partners, abandoned themselves and left to the vagaries of the authoritarian, predatory regimes where they live, subject to untold violence, and likely accused of collaborating with foreign enemies for their work with USAID. They will be persecuted and hunted, while we are loaded onto aircraft and sent home. This is not why I joined USAID and dedicated my life to helping others in the service of my country. It is the antithesis of the ideals that we espouse and that we encourage our partners to emulate: democracy, the rule of law, freedom from wanton violence, and opportunity for future generations. We move forward with the current course at extreme risk to our country's standing in the world and the fate of this and future generations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2025.

_____
Janice Doe