UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FOREIGN SERVICE
ASSOCIATION, et al.,

    *Plaintiffs*,

v().

DONALD TRUMP, et al.,

    *Defendants*.

Civil Action No. 1:25-cv-352 (CJN)

## ORDER

Plaintiffs, two unions that represent employees of USAID, object to various recent executive branch actions that they allege have "systematically dismantled" that agency. ECF No. 1 (Compl.) at 2. Plaintiffs allege that their members are suffering or will suffer irreparable harm because of those actions, and late this morning filed a motion for a temporary restraining order that would "maintain the status quo" while the Court considers more fully whether the challenged actions are legal. ECF No. 9-1 (Mot.) at 2. The Court explored the alleged harms and claims at a hearing this afternoon and, for the reasons explained below, will enter a limited TRO.

To obtain a TRO, "the moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the [TRO] were not granted, (3) that [the TRO] would not substantially injure other interested parties, and (4) that the public interest would be furthered" by the TRO. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Hall v. Johnson*, 449 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) (explaining that the TRO and PI standards are the same). "When the movant seeks to enjoin the government, the

1

final two TRO factors—balancing the equities and the public interest—merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020).

Plaintiffs frame their TRO request as pertaining to one overarching event: the allegedly "illegal and unconstitutional dismantling of USAID." Mot. at 9. But at the TRO hearing, it became clear that plaintiffs' allegations of irreparable injury flow principally from three government actions: (1) the placement of USAID employees on administrative leave; (2) the expedited evacuation of USAID employees from their host countries; and (3) Secretary Rubio's January 24, 2025 order "paus[ing] all new obligations of funding . . . for foreign assistance programs funded by or through . . . USAID." Dep't of State, Memo. 25 STATE 6828. The Court finds that a TRO is warranted as to the first two actions but not the third.

**I.    Administrative Leave**

When the Court received plaintiffs' TRO motion, it was not clear how many USAID employees had been or would be placed on administrative leave, or even what precisely "administrative leave" entailed. The TRO hearing provided some clarity. The government reported that 500 USAID employees have already been placed on administrative leave and that, absent a TRO, 2,200 additional USAID employees would be placed on administrative leave by midnight tonight. The government also reported that employees would still be paid while on administrative leave. Plaintiffs, meanwhile, contended—as they had in their complaint and motion—that USAID employees placed on administrative leave, including USAID employees stationed abroad, lack access to the agency's email, payment, and "internal security warning/alert systems." Mot. at 20; *see* ECF No. 9-1 ¶ 18. As plaintiffs' counsel put it at the hearing, overseas USAID employees placed on administrative leave exist within an "informational vacuum" with respect to possible threats to their safety.

Taking the TRO factors somewhat out of order and beginning with irreparable injury, the Court finds that plaintiffs have adequately demonstrated that their members are facing irreparable injury from their placement on administrative leave, and that more members would face such injury if they were placed on administrative leave tonight. Many USAID personnel work in "high-risk environments where access to security resources is critical." ECF No. 9-10 ¶ 14. No future lawsuit could undo the physical harm that might result if USAID employees are not informed of imminent security threats occurring in the countries to which they have relocated in the course of their service to the United States. The government argued at the TRO hearing that placing employees on paid administrative leave is a garden-variety personnel action unworthy of court intervention. But administrative leave in Syria is not the same as administrative leave in Bethesda: simply being paid cannot change that fact.

Turning to the likelihood of success on the merits, plaintiffs have asserted at least a colorable argument that placing almost 3,000 USAID employees on administrative leave would violate the Further Consolidated Appropriations Act of 2024, which requires the State Department and USAID to consult with Congress before, among other things, "reorganiz[ing]" or "redesign[ing]" USAID, including by "downsiz[ing]" it. Pub. L. 118-47 §§ 7063(a), (b), 138 Stat. 460 (2024). To be sure, the government strongly objects to this argument, and the Court—without the benefit of a brief from the government and given the highly compressed timeline—has not had the opportunity to consider it in detail. But the TRO inquiry operates on a "sliding scale," wherein "a strong showing on one factor c[an] make up for a weaker showing on another." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (quotation marks and citation omitted). Given plaintiffs' strong arguments about the seriousness of the safety risks posed to

3

overseas USAID employees bereft of government support, the Court concludes that plaintiffs' merits argument is enough to support a TRO here.

The last TRO factor requires the Court to balance the equities.  When the Court asked the government at the TRO hearing what harm would befall the government if it could not immediately place on administrative leave the more than 2000 employees in question, it had no response—beyond asserting without any record support that USAID writ large was possibly engaging in "corruption and fraud."  The Court thus has no difficulty concluding that the balance of the hardships favors the plaintiffs.  A TRO as to this issue is warranted.

## II.     Expedited Evacuations

Plaintiffs have also alleged that, in addition to being placed on administrative leave, USAID employees stationed abroad are being ordered to return to the United States on expedited timelines that are far shorter than those the agency normally prescribes.  Specifically, whereas USAID's "usual process" provides foreign service officers with six to nine months' notice before an international move, plaintiffs allege that USAID has now issued a "mandatory recall notice" that would require more than 1400 foreign service officers to repatriate within 30 days.  Mot. at 18.

Plaintiffs have demonstrated that this action, too, risks inflicting irreparable harm on their members.  Recalling employees on such short notice disrupts long-settled expectations and makes it nearly impossible for evacuated employees to adequately plan for their return to the United States.  For instance, one of plaintiffs' members attests that, if he is recalled from his foreign post, he will be forced to "[u]proot" his two special-needs-children from school in the middle of the year, "set[ting] back their development with possible lifelong implications."  ECF No. 9-5 ¶ 6.  He also attests that, because his family has no home in the United States and his children have "lived

overseas nearly their entire life," there will be "an inevitable gap—possibly a long one—before they are back in a stable routine . . . that medical professionals have determined they need to overcome developmental delays." *Id.*  Other of plaintiffs' members tell similar stories, explaining that the abrupt recall would separate their families, interrupt their medical care, and possibly force them to "be back in the United States homeless."  *See* ECF ECF No. 9-4 ¶ 7; ECF No. 9-5 ¶ 8; ECF No. 9-9 ¶ 6.  Even if a future lawsuit could recoup any financial harms stemming from the expedited evacuations—like the cost of breaking a lease or of abandoning property that could not be sold prior to the move—it surely could not recoup damage done to educational progress, physical safety, and family relations.

The remaining TRO factors shake out in similar way as they did with respect to the administrative leave question.  Plaintiffs again have a plausible argument that the expedited evacuations are unlawful (here because, on plaintiffs' telling, they flow from the ultra vires unilateral closure of USAID's overseas offices and operations), and the government, while opposing this argument, has not submitted any briefing on the issue.  Nor has the government articulated any harm that would result to its interests if it could not continue recalling USAID employees during the next week, while preliminary injunction briefing proceeds.  For these reasons, and again in light of plaintiffs' strong showing of irreparable harm, the Court finds a TRO is warranted.  *See Changji*, 40 F.4th at 726.

## III.    Funding Freeze

Plaintiffs finally seek a TRO as to Secretary Rubio's January 24, 2025 order freezing funding to USAID's contractors.  As a threshold matter, the Court notes that there are significant factual questions about what the practical effect of that order is.  The government argued at the hearing that the order only prevents USAID from entering "*new* obligations of funding"—leaving

it free to pay out contracts that it entered into prior to January 24, 2025—and indeed, the text of the order does seem to permit that result.  Dep't of State, Memo. 25 STATE 6828.  Yet, plaintiffs maintained at the TRO hearing that payments on existing USAID grants have been frozen, preventing certain "contracting officers" employed by USAID from using agency funds to fulfill monetary commitments that the agency had already made.

This factual dispute is relevant to plaintiffs' TRO arguments, but ultimately is not dispositive of them.  Plaintiffs allege that, by some legal mechanism, USAID contracting officers can be held personally liable for existing contractual expenses that USAID is supposed to, but does not, pay.  Plaintiffs thus argue that those officers face irreparable harm as a result of the funding freeze because they will be left "holding the bag" when USAID imminently fails to disburse funds.  Separately, plaintiffs argue that the general population of USAID employees will be emotionally harmed by the agency's inability to pay its contractors because they will be stuck "watching a slow speed train wreck" as the agency reneges on its humanitarian commitments.

Even assuming the funding freeze indeed prevents payments on existing grants in the way plaintiffs claim (instead of merely preventing USAID from entering new obligations, as the government suggested during the hearing), the Court concludes that plaintiffs have not demonstrated resulting irreparable harm.  Plaintiffs' claims about the risk of financial exposure for contracting officers are simply too speculative.  They have not explained how or why contracting officers would be held personally liable for contracts entered into by USAID, nor have they explained why there would be no recourse after the fact if that did somehow happen.  In response to the Court's questioning on those points at the TRO hearing, plaintiffs' counsel asserted that the mere "uncertainty" regarding potential exposure would be injurious.  But the Court concludes that this is the kind of hypothetical harm insufficient to warrant a TRO.  *Cf. Chaplaincy of Full Gospel*

*Churches*, 454 F.3d at 297 & n.2.  The same is true of the similarly hypothetical emotional harm that might befall USAID employes who are unhappy with the agency's direction.  *Id.*  A TRO as to the funding freeze therefore is not warranted.

### IV.     Conclusion

For the foregoing reasons, the Court will grant in part plaintiffs' Motion for Temporary Restraining Order, ECF No. 9.  The Court will enter a TRO as to the administrative leave and expedited evacuation issues until February 14, 2025 at 11:59 PM.  All USAID employees currently on administrative leave shall be reinstated until that date, and shall be given complete access to email, payment, and security notification systems until that date, and no additional employees shall be placed on administrative leave before that date.  No USAID employees shall be evacuated from their host countries before February 14, 2025 at 11:59 PM.

The Court will also hold an in-person preliminary injunction hearing on February 12, 2025 at 11:00 AM in Courtroom 17.  The government shall submit a brief in opposition to Plaintiffs' Motion, ECF No. 9, on or before 5:00 PM on February 10, 2025, and plaintiffs shall submit a reply brief on or before 5:00 PM on February 11, 2025.

**SO ORDERED.**

DATE: February 7, 2025

                                                                       CARL J. NICHOLS
                                                                       United States District Judge