UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-00352-CJN |

I, Jason Gray, pursuant to 28 U.S.C. 1746, hereby declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2. Since August 2022, I have served as the Chief Information Officer ("CIO") at the United States Agency for International Development ("USAID" or the "Agency"). As USAID's CIO, I oversee all information technology, communications, and digital systems management at the Agency. On January 20, 2025, President Trump designated me under the Federal Vacancies Reform Act, 5 U.S.C. 3345 *et seq.*, to serve as Acting Administrator of USAID. I served in that role from until January 30, 2025, when President Trump designed Secretary Rubio to serve as Acting Administrator. Prior to USAID, I have held positions at the Department of Education, the Department of Transportation, the Veterans Administration and the Department of Defense.

1

3. As of February 7, 2025, but before this Court entered its Temporary Restraining Order ("TRO"), 2,140 USAID employees had been placed on paid administrative leave.

4. As is customary, when these USAID employees are placed on administrative leave, Agency information technology personnel and advisors temporarily disabled the affected employees' access to USAID digital or "logical" systems. For example, employees on paid administrative leave were restricted from accessing their Agency-sponsored email accounts, Agency information and contracting databases, or using their Agency-owned devices (*e.g.* their mobile phones and laptops). These restrictions on digital and informational access were effectuated in order to protect sensitive or classified Agency information, personal and private information, and to guard against potential sabotage.

5. The process of disabling logical access across USAID's various digital platforms can be slow, complicated and error-prone. In the past two weeks, most disabling of logical access users has been accomplished manually: by searching for, clicking into, and specifically electing to disable a users' account. While there are potentially faster ways to disable logical access, USAID employed this approach because it was safer and more careful. USAID took careful pains never to delete – but rather only to temporarily disable – employees' logical access accounts.

6. After the Court's TRO was entered late in the evening of February 7, 2025, USAID's leadership and information technology professionals began the process of reversing these steps re-enabling user accounts for the employees on paid administrative leave. The only users who USAID did not re-enable were four

employees who were separately placed on investigative leave by Agency leadership.

7. The process of re-enabling users can too be slow, manual, and error-prone. While re-enabling a user account can often be accomplished by writing a computer script, rather than manually clicking into each users' profile, these scripts do not have a 100% effective rate. When running these scripts across a large number of users, they are slow and prone to crashes and other malfunctions. Moreover, even after a request to re-enable a user account has been entered, it can take 24 hours to process. That is, after USAID executes a script to re-enable a user account, the user may encounter delays in regaining functionality to their account and systems.

8. As of 5:40pm on Monday, February 10, 2025, to the best of my knowledge, USAID successfully restored access and full functionality to all employees previously on administrative leave (with the exception of the four on investigative leave). To reduce the risk of technical issues impacting functionality and access, USAID has run several different scripts, undertaken a full scrub of all users to ensure working logical access, and fixed individual account issues.

9. On Sunday, February 9, 2025 and February 10, 2025, when made aware of issues with specific user accounts, USAID has worked diligently to troubleshoot and correct these issues. For example, on the afternoon of Monday, February 10, 2025, USAID information technology professionals became aware that 30 employees had not properly had their accounts restored. USAID quickly troubleshooted the issue and confirmed that these systems were available to these employees as of 5:40pm on Monday, February 10, 2025. During the pendency of the Court's February 7,

2025 Order, should Plaintiffs' counsel identify specific employees encountering technical issues limiting the functionality or access these systems, USAID will diligently work to rectify any such inadvertent access limitation.

I declare under penalty of perjury under the laws of the United States that the information in this declaration is true and correct.

_____
Jason Gray
Chief Information Officer, USAID
February 11, 2025