UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 1:25-CV-352 |
| v. | ) ) ) | |
| DONALD TRUMP, et al., | ) ) | |
| *Defendants*. | ) ) ) | |

**DECLARATION OF THOMASINA DOE**

I, Thomasina Doe, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am a member of the American Foreign Service Association.

3. I am a member of the Acquisition and Assistance workforce at USAID.

4. On February 6, 2025, the Industry Liaison (communication position within the Management Bureau) sent an email to all Contracting and Agreement Officers, instructing officers to immediately terminate 800 awards (contracts and grants). The instructions did not come from an authorized procurement official with the ability to instruct any Contracting Officer to utilize their warrant, nor did it have the legally required information in order to comply with these instructions, namely, when we would obtain proper authorization to complete the terminations, rationale for the terminations, and authority for the terminations. Several individuals asked

questions about these issues, which went unanswered. The Contracting Officers were told to update the spreadsheet immediately and timelines of two-hour intervals were suggested to complete updates. Per the Federal Acquisition Regulation (FAR), contract terminations take approximately one year, but Contracting Officers were told to do this immediately, without explanation as to how such an expedited timely was feasible.

5. No Operating Unit was ever given any opportunity to explain how their awards aligned with the America First priorities, many of which do align. Some were already headed for finalization, as the end of the period of performance had already come or was coming up soon. In these cases, a termination wouldn't make sense. Some of the awards had valid waivers for life-saving activities, but they were still on the termination list.

6. Within one or two hours, the email was rescinded without any explanation. By that point, of the 800 awards, approximately 70 were marked with letters having already been sent to terminate the awards. Access to the termination spreadsheet was then rescinded as well.

7. On February 10, 2025, Contracting and Agreement Officers received two new spreadsheets, both from the Senior Procurement Executive, who does have valid authority to instruct us to use our warrants. These spreadsheets contained approximately 200 awards to be terminated. These awards were new and different. Awards that appeared on the initial spreadsheet were not necessarily on the new spreadsheets. Awards that had not appeared on the original 800-award spreadsheet

were now in these 200-award spreadsheets.

8. While the Senior Procurement Executive sent the email, there was no indication from whom the order was coming officially for documentation purposes. When someone asked the Senior Procurement Executive, Jami Rodgers, an individual named Jeremy Lewin responded: "Jami has more detail and perhaps put out a memo clarifying this, but all of the terminations in these tranches have been signed off by Secretary Rubio and Acting Deputy Administrator Marocco. The programmatic choices are being made at the most senior levels. Jami or Ken Jackson can direct the termination of these programs and are doing so consistent with the Secretary's express approval and directives." This individual is unknown to the Contracting Officers, nor is his title in his email, nor did he provide any valid information that could be used and acted upon. Contracting Officers have no such memo upon which to base any terminations. The comment seemed to be a threat. This same individual also responded to a particular Contracting Officer's question to the Senior Procurement Executive without having the proper authority or knowledge to advise the Contracting Officer.

9. Multiple Contracting Officers have voiced public questions and concerns about how to proceed legally with the terminations. Much information is still missing for the Contracting Officers to proceed to follow such a directive. Some of these questions include whether the Office of General Counsel has cleared these terminations, whether Congress has approved terminations of earmarked funding, whether these terminations are within Contracting Officer's warrants, whether this

3

order violates current temporary restraining orders that prohibit all Agencies from terminating any awards, whether USAID will protect us from liability related to these terminations, what the justification for these terminations are, and other concerns. None of these questions or concerns have been addressed. I am unsure if any termination letters have been sent as a result of the February 10, 2025 communications.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2025.

/s/ *Thomasina Doe*
Thomas Doe