UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, et al., )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>DONALD TRUMP, et al., )<br><br>*Defendants.* ) | Civil Action No. 1:25-CV-352 |

**FURTHER DECLARATION OF JANE DOE**

I, Jane Doe, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I submitted the Declaration of Jane Doe, Compl. Exh. I. I write to make further declarations as to the Personal Services Contractor Association (PSCA), of which I am an Executive Committee Member.

3. U.S. Personal Services Contractors (PSCs) are just like direct-hires for virtually all purposes: If you were in the field with us, you would not know who was hired as a direct-hire and who was hired as a PSC. We work together, with direct hires, all as employees of U.S. Agency for International Development (USAID). However, we are not eligible for programs administered by the Office of Personnel Management (OPM), and if we are unjustly terminated, we are not eligible to appear before the Merit Systems Protection Board (MSPB).

4. The programs administered by OPM from which PSCs are statutorily excluded are Federal Employee Health Benefits (FEHB), Federal Employee Group Life Insurance (FEGLI), and retirement programs like Federal Employees Retirement System (FERS). To offer some measure of parity, the Agency for International Development Acquisition Regulation (AIDAR) generally provides for the partial reimbursement to PSCs, subject to annual limits, for individually purchased health and life insurance policies using their post-tax income. USAID has also established a 401(k) plan through which PSCs can make pre-tax contributions but without any matching by the Agency. OPM also manages an awards program for direct-hire personnel across the U.S. government; USAID has an additional awards program in which PSCs do participate.

5. USAID withholds federal and state income taxes for PSCs and issues W-2s.

6. PSCs and their authorized dependents who are posted overseas and PSCs who travel overseas on official business are issued Diplomatic Passports by the Department of State. PSCs posted abroad are also eligible for diplomatic titles.

7. The PSCA is an Employee Non-Labor Organization within the USAID. Established in 1999, the Association comprises PSCs employed by USAID both domestically and abroad. The PSCA, through an elected Executive Committee, advocates for equitable treatment of PSCs and direct-hire employees regarding benefits, entitlements, working conditions, and responsibilities, unless precluded by federal law or regulation.

8. Per the Association's charter, all PSCs at USAID are automatically members of the PSCA. The PSCA, then, represents about 500 PSCs stationed overseas in countries ranging from Armenia to Zimbabwe, and around 600 stationed in the United States.

9. The PSCA is governed by an Executive Committee consisting of up to seven individuals, elected from among its membership to serve one-year terms. I am one of those Executive Committee members.

10. The PSCA operates under a formal charter, which establishes its mission, governance structure, and operational framework. The includes regular elections, member engagement, and formal processes for advocacy and policy recommendations to USAID leadership.

11. Major policy shifts or structural changes within the Association, such as the establishment of new initiatives or councils, require approval through a General Assembly vote open to all members.

12. The PSCA has consistently engaged in structured advocacy with USAID leadership, including the Administrator's Office, the Management Bureau and its Office of Acquisition and Assistance, the Office of General Counsel, and the Office of Human Capital and Talent Management, to address critical issues affecting PSCs. The Association has successfully advocated for numerous policy and regulatory changes over the years.

13. The Association's Executive Committee also regularly disseminates information to its members via emails, informational briefings, a public website, and

3

other online resources, ensuring that PSCs remain informed of contractual rights and obligations and to provide updates on policy and regulatory developments.

14. Throughout the year, the PSCA Executive Committee conducts surveys and solicits direct feedback from members to ensure that advocacy priorities align with the most pressing concerns of PSCs. This engagement allows the Executive Committee to effectively represent the collective interests of the membership when interfacing with USAID leadership.

15. The Executive Committee regularly engages with individual PSC members through various channels to ensure timely communication and support. The Committee maintains an open email inbox where members can submit concerns and questions, responding to inquiries as they come in. When necessary, the Committee escalates issues to USAID leadership to advocate on behalf of PSCs. In addition, the Executive Committee regularly engages with the PSC Ombudsman in OAA to exchange information regarding key issues affecting PSCs.

16. When PSCs engage with the Executive Committee, they do so with the understanding that the committee's members serve on a volunteer basis. The Executive Committee does its best to source recommendations based on documented past experiences, but its advice is neither legal nor binding in nature.

17. Beginning on February 2, 2025, members of the Executive Committee were progressively locked out of their USAID email accounts, Google Drive, and other collaboration platforms. Hundreds of the Association's members similarly lost access to the USAID network. Specific to the needs of the Executive Committee, this abrupt

action resulted in the total loss of access to historical records, prior advocacy documentation, internal communications, and, most critically, its membership roster and listserv. Consequently, from February 3, 2025, onwards, the Executive Committee has been unable to formally and thoroughly consult the Association's membership on next steps, including possible legal action.

18. The forced, unannounced removal from USAID systems also meant that the Executive Committee faced great difficulty in re-establishing its operations in an external setting. Some Executive Committee members did not even have each other's personal contact information because all prior communication was conducted through government-provided platforms. It took several days for the Executive Committee to reconnect and determine how to re-establish its operations outside of USAID systems without access to its membership roster or other records. USAID's decision effectively cut off all avenues of communication between the Executive Committee and its members and preemptively halted any potential response from the Association.

19. Under normal circumstances, if PSCs were considering legal action or seeking collective legal representation, the Executive Committee would initiate a General Assembly vote to ensure full participation of its membership in determining the collective stance of the Association. Due to the abrupt USAID-imposed systems lockout, however, the Association lacks a mechanism to notify or convene members and thus cannot conduct a vote of its full membership.

20. Given the impact of USAID's actions on the workforce, I would have recommended that the PSCA formally join this litigation as a plaintiff. Because PSCs

are identically situated to USAID direct-hires in nearly all respects, including those relevant to this case, PSCs have the exact same interest in this litigation as their direct-hire colleagues represented by the American Foreign Service Association and the American Federation of Government Employees. The Association and its members have suffered the same harms, including loss of access to essential communication channels, loss of safety, and sudden changes to employment-related rights without consultation or recourse. USAID's actions have, therefore, directly prevented the PSCA from exercising its representative function.

21. We are hamstrung: The Administration has cut off our way of communicating with each other. The PSCA exists to help protect and advocate for the rights of PSCs, ensuring that they receive fair and equitable treatment by the agency. The recent actions of the agency have severely curtailed the Association's ability to fulfill this mission, leaving PSCs vulnerable and without proper collective representation in this matter.

22. I respectfully ask the Court to afford any such relief that it affords to direct-hire employees also to U.S. Personal Services Contractors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 9, 2025.

/s/ Jane Doe_____

Jane Doe