# Exhibit 9

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, et al., | ) ) ) ) | |
| *Plaintiffs,* | ) ) | Civil Action No. 1:25-CV-352 |
| v. | ) ) ) | |
| DONALD TRUMP, et al., | ) ) ) | |
| *Defendants.* | ) ) | |

## FOURTH DECLARATION OF RANDALL CHESTER

I, Randall Chester, declare the following under penalties of perjury:

1. My name is Randall Chester.

2. I am the Vice President of the American Foreign Service Association (AFSA) representing 1,980 Foreign Service Officers and 485 non-career Foreign Service Limited officers who work for the United States Agency for International Development (USAID).

3. I previously submitted three declarations in this case. *See* ECF No. 9-2, ECF No. 24-17, and ECF No. 36-1.

4. Earlier today (Thursday, February 20, 2025), Defendants submitted a third declaration on behalf of Pete Marocco (ECF No. 46-1) in response to the Court's request for clarity on the official policy regarding the options available to USAID employees if faced with a mandatory evacuation.

5.	I submit this declaration with additional information on that topic, as well as further actions taken by Defendants in the days following my last declaration (submitted on Monday, February 17, 2025).

6.	This declaration is based on my personal knowledge, as well as reports made to me by AFSA members regarding their experiences over the last few weeks.

**AFSA Members' Understanding of the Mandatory Evacuation & Waivers**

7.	Mr. Marocco's declaration is inconsistent with what AFSA members continue to experience and understand about an evacuation.

8.	AFSA members around the world continue to report to us that (1) their best understanding is that they are subject to a mandatory evacuation, (2) they have requested waivers from the evacuation and have received no response, and (3) they have not been given an option to remain in their host countries on administrative leave absent a waiver.

9.	Following the confusion at yesterday's hearing about whether the evacuation is mandatory, I received emails overnight from 37 AFSA members in 18 countries summarizing the communications they have received to date about the evacuation and waiver process. More such emails are coming in as this declaration is being drafted. Among others, I received such emails from Terry Doe and Eric Doe, both of whom previously submitted declarations. *See* Terry Doe Decl., ECF No. 36-2; Eric Doe Decl., ECF No. 9-5.

10.	Pursuant to these emails, I understand that the communication to USAID staff overseas has been confusing, chaotic, and at times contradictory. However, one thing is clear: Defendants communicated to the entire agency on

February 5, 2025 that there would be a mandatory recall and have not retracted that plan in the ensuing weeks. Indeed, AFSA members have told me they fear that if the TRO is lifted, Defendants will resume their plan to evacuate everyone by March 7, 30 days from when the original email was sent, which would be absolutely devastating. I summarize the communications received by AFSA's members in chronological order below.

11. On February 4, 2025, the usaid.gov website was updated with a post that stated: "For USAID personnel currently posted outside the United States, the Agency, in coordination with missions and the Department of State, is currently preparing a plan, in accordance with all applicable requirements and laws, under which the Agency would arrange and pay for return travel to the United States within 30 days[.]" The website further stated that the agency would "consider case-by-case exceptions" based on medical and other reasons.

12. On February 5, 2025, USAID staff overseas received an agency-wide email titled "The Path Forward" from the email address internalcomms@subscribe.usaid.gov. That email repeated the message from the usaid.gov website.



13. Based on this email and the usaid.gov posting, AFSA members understood that the recall was mandatory.

14. On the same day as the Path Forward email, many missions around the world organized hasty and wholly insufficient processes for their employees to request waivers from the mandatory recall.[1] For example, in several countries, mission leadership gave USAID staff extremely short windows of time to fill out

---

[1] A few missions organized a waiver submission process the next day on February 6, 2025.

4

waiver requests. One AFSA member reports having to submit a request within *50 minutes* of getting an email about the waiver process; another received only two hours; and yet another 5 hours. Several AFSA members who emailed last night explained that they were told to input their waiver requests into a spreadsheet with fields that had a 50 character limit. One such AFSA member told me that after stating that they had children enrolled in schools, the member lacked the space necessary to explain that they were also recovering from a surgery.

15. Of those AFSA members who emailed me noting that they had requested a waiver, not one has received any response to their request or even confirmation that their request was being reviewed by a decisionmaker. Nor have employees stationed overseas received any indication of how far in advance of any departure date decisions on waivers would be made or communicated. This uncertainty about whether, and when, waivers will be granted forces employees to begin making preparations for an evacuation, despite the harm such an evacuation would cause them and their families, because waiting for a waiver that may never be forthcoming would risk leaving them even less prepared for the impending evacuation, thus compounding the harm.

16. Some of the reasons that AFSA members requested waivers include:
   a. A wife who is pregnant and unable to travel;
   b. A newborn infant who does not yet possess a diplomatic passport and has not yet received critical vaccines;

5

  c. A young child who is psychologically fragile following the recent death of a parent; and

  d. A physically frail parent who suffers from dementia.

17. In the intervening weeks, missions and embassies have begun taking logistical action to prepare for the recall, indicating that mission and embassy leadership continue to understand that the recall is going forward. I have included just below a list of some of these actions, alongside their dates:

  a. February 9, 2025 - One mission had an in-person meeting with USAID staff to discuss the forced recall.

  b. February 12, 2025 - One embassy hosted a town hall to discuss departure logistics for a rapid, accelerated packout, as well as visa issues.

  c. February 20, 2025 - One Embassy has scheduled a pre-departure seminar for today (February 20, 2025).

18. Multiple other AFSA members report that their embassies and missions have scheduled sessions on unknown dates to provide information about the forthcoming recall. For example, one mission hosted a town hall during which embassy leadership outlined the services they would utilize to evacuate the staff, including hosting a large car auction for forced evacuees and rapid demobilization support for pack-outs.

19. On February 14, 2025, some AFSA members received an email regarding a "Coordination Support Team." Though the intent of this team seems to

6

be to provide support to employees, the email did not include any actionable information on how to get in touch with or make use of the services of the Coordination Support Team. The email also stated: "We are fully committed to ensuring a smooth transition back to the United States for those seeking to return, and minimizing disruptions, with your well-being and safety as our highest priority." Although this language appears to suggest that transfers back to the United States would be voluntary, that was not stated explicitly and—as discussed below—USAID staff have not received any other communications stating that the recall is optional or voluntary.

20. On or around February 18, 2025—and consistent with the understanding that the evacuation is mandatory and imminent—AFSA members all over the world began noticing a change to their MyServices accounts, an online platform that has information on transfers for FSOs.

21. Specifically, AFSA members saw "moves" scheduled in their accounts showing that the members would "arrive" at an unspecified new location on March 7, 2025. I have included just below a screenshot from one AFSA member's account as an example:

7



*Screenshot taken by an AFSA member showing a "move" with an arrival date of March 7, 2025*

22. In the intervening days, some of these AFSA members report that their MyServices accounts were updated by revising the arrival dates for their forthcoming "moves" from March 7, 2025 to January 1, 2099.

23. To date, *none* of these AFSA members have received any communications that clearly state that there will be no mandatory recall. Nor have they received any communications giving USAID staff the option to remain in their host country while retaining access to US Government housing, USAID benefits, and USAID security resources.

24. Remaining in their host country without their housing, diplomatic security protections, and diplomatic status would be unworkable and extremely risky for many AFSA members. In many countries where AFSA members serve, like Rwanda, South Africa, or El Salvador, remaining in country on a tourist visa without diplomatic cover could be life-threatening. Moreover, as noted in the

8

declaration of Terry Doe, *see* Terry Doe Decl., ECF No. 36-2, applying for a tourist visa while in country may be impracticable–or even impossible.

**Updates on Additional Actions Since Monday, February 17**

25. Since Monday, February 17, 2025, Defendants have taken additional actions that harm USAID employees or that are consistent with unwinding the agency.

26. AFSA members report that emails sent from USAID employees are now subject to blanket designation as "Sensitive but Unclassified" (SBU), regardless of the email's actual content. The SBU designation cannot be seen by employee senders until after the email is sent. Such a designation should only be used if the content meets specific legal criteria for sensitivity under 5 U.S.C. § 552 (Freedom of Information Act), and should be justified based on that criteria instead of being enforced across the board. AFSA members are concerned about how this designation will impact their ability to communicate especially in the context of employee rights and union communications.

27. I, and others at AFSA, have been told that in the coming weeks many USAID direct hires will be terminated pursuant to large scale reductions-in-force (RIFs), which will impact the foreign service. We have also been informed that in recent days the contracts of the vast majority of personal services contractors have been terminated.

Executed on February 20, 2025

   */s/  Randall Chester*

Randall Chester