UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| American Foreign Service Association, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> President Donald J. Trump, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00352 |

**PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs file this emergency motion for temporary restraining order to stop Defendants' imminent and ongoing destruction of evidence.

Defendants are, as this motion is being filed, destroying documents with potential pertinence to this litigation. Today, Acting Executive Secretary of USAID Erica Carr sent an email to USAID staff noting that the agency was "clearing [its] classified safes and personnel documents" from the Ronald Reagan Building starting today at 9:30 am. The email further directs USAID staff to "[s]hred as many documents" as possible, and to use "burn bags for when the shredder becomes unavailable or needs a break." An image of that email follows:

> Good afternoon,
>
> Thank you for your assistance in clearing our classified safes and personnel documents from the RRB. The event will take place all day tomorrow, March 11, beginning at 9:30am.
>
> Please meet at the RRB 14th Street Lobby at 9:30a.m. However, if you cannot be there at that exact time your badge will be programmed for access to your work area.
>
> Shred as many documents first, and reserve the burn bags for when the shredder becomes unavailable or needs a break.
>
> If you need to use the burn bags, do not overfill, and ensure the burn bag can be closed with staples at the top.
>
> The only labeling required on the burn bags are the words "SECRET" and "USAID/(B/IG)" in dark sharpie if possible.
>
> If you need additional burn bags or sharpie markers, please let me or the SEC InfoSec team know.
>
> Thank you so much,
> Erica
>
> Erica Y. Carr
> Acting Executive Secretary
> USAID

Plaintiffs sought information from Defendants as to whether these document destruction efforts are ongoing. Defendants conveyed through counsel just before the time of filing that they are investigating this matter.

Plaintiffs, however, cannot wait. Immediate injunctive relief is necessary to halt this destruction. To obtain a temporary restraining order, "the moving party must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the [temporary restraining order] were not granted; (3) that [such an order] would not substantially injure other interested parties; and (4) that the public interest would be furthered" by the order. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations omitted); *see also Hall v. Johnson*, 559 F. Supp. 2d 1, 3 n.2 (D.D.C. 2008) ("[T]he same standard applies to both temporary restraining orders and to preliminary injunctions." (citation omitted)). "When the movant seeks to enjoin the government, the final two TRO factors—balancing the equities and the public

interest—merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).[1]

### I. Plaintiffs are likely to succeed on the merits.

Here, Plaintiffs have a substantial likelihood of success on the merits because Defendants have legal duties to preserve these documents under the Federal Records Act, USAID's own Records Management Program, and the duty to preserve evidence for litigation.

Defendants have issued a broad, short-fused directive to shred and burn documents immediately—today—that concern the structure, function, and activities of USAID. Defendants are destroying these records as this document is being written. Immediate relief from the court to maintain the status quo is required to prevent irreparable harm. This plainly violates Defendants' obligations under the Federal Records Act ("FRA"), 44 U.S.C. 3301 *et seq.*, as well as records preservation obligations Defendants have with respect to this ongoing litigation.

USAID's Acting Executive Secretary sent an email stating that today, March 11, personnel would provide "assistance in clearing our classified safes and personnel documents," directing employees to "[s]hred as many documents first, and reserve the burn bags for when the shredder becomes unavailable or needs a break." This directive

---

[1] In addition to entering preliminary injunctive relief, the Court has broad equitable powers to order Defendants to preserve documents during ongoing litigation. "Federal courts have the inherent power to issue orders preserving information relevant to the claims and defenses brought before them." *United States ex rel. Staggers v. Medtronic, Inc.*, No. 1:15-CV-392-TSC-RMM, 2022 WL 4078969, at *2 (D.D.C. Sept. 6, 2022). Here, Defendants sweeping and unbounded document destruction is so slipshod that documents relevant to Plaintiffs' claims could inevitably be destroyed. The Court could use its inherent powers to immediately cease this destruction. *See* Order & Opinion, *CREW v. U.S. DOGE Service*, Case No. 25-cv-511 (D.D.C. Mar. 10, 2025), ECF No. 18.

suggests a rapid destruction of agency records on a large scale that could not plausibly involve a reasoned assessment of the records retention obligations for the relevant documents under the FRA or in relation to this ongoing litigation.

The FRA requires that agencies and agency heads "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures" of the agency, and which are "designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. Records are defined to include "all recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government" or otherwise of informational value. 44 U.S.C. § 3101(a)(1)(A).

The FRA further requires that each agency head create a program for effective records management, including "effective controls over the creation and over the maintenance and use of records in the conduct of current business." 44 U.S.C. § 3102. In carrying out this requirement USAID promulgated records management policies and retention schedules that "applies to both classified and unclassified records." *See* 502.3.6.3 Disposal Authorizations, The USAID Records Management Program (Dec. 2, 2016), https://tinyurl.com/ct6v35zt. Under USAID's policy and retention schedules, organizational files must be preserved for 20 years, *see* Request for Records Disposition Authority (Jan. 24, 1996), https://tinyurl.com/mryw9c5z, and even emails are that are

determined to be "non-records" without significant informational value must be preserved for three years, *see* 502.3.6.3 Disposal Authorizations. USAID policy only permits destruction of records on a rapid basis "in the event of extreme emergency." 502.3.6.6 Emergency Destruction. And such "emergency" destruction may only take place consistent with 36 C.F.R. Part 1229, which permits documents to be destroyed "during a state of war between the United States and any other nation or when hostile action appears imminent."

The core purpose of the FRA is to ensure that agencies preserve records necessary for their future business and to protect the rights of outside parties who may be affected. 44 U.S.C. § 3101. Here, Defendants are rushing to destroy USAID records with a broad brush in a matter where the agency's continued functioning is the very matter at issue. In short, Defendants are seeking to accomplish precisely what the FRA exists to prevent: document destruction that would make impossible the functioning of the agency and the vindication of the rights of "persons directly affected by the agency's activities." *Id.*

Further, there exists a duty to preserve evidence when litigation is reasonably foreseeable and the evidence is likely relevant. *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 171 (D.C. Cir. 2013); *see also Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1481 (D.C. Cir.1995) (noting that a party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant ... if it knew the destruction or alteration of those documents would prejudice [its opponent]"). Litigation here is not just foreseeable: it is ongoing. And the documents targeted for destruction (e.g., personnel documents) appear to be directly relevant to Defendants'

5

ongoing efforts to dissolve the agency, which includes a massive reduction in USAID's personnel.

In light of the legal duties to preserve the evidence that Defendants are in the process of shredding and burning, Plaintiffs are likely to prevail on the merits of their claims.

## II. Plaintiffs will suffer immediate, irreparable injury should the agency continue to destroy records.

Plaintiffs will suffer irreparable injury if the TRO is not granted. The "classified" and "personnel" documents that are currently being shredded contain information that will be critical to the continued operation or—as the agency continues to be dismantled—the reconstitution of the agency. For example, if the agency is required as a result of this litigation to rehire terminated employees, personnel records that identify USAID employees and contain personal contact information will be essential to rehiring those employees. If USAID lacks records containing contact information for terminated employees, it will be severely constrained in its ability to rehire them. Such harms are not speculative. For example, just last month, the National Nuclear Security Administration (NNSA) struggled to rehire more than 300 terminated staff because the NNSA lacked personal contact information and was unable to get in touch with its former personnel.[2] USAID will similarly struggle to rehire its staff if it destroys records with contact information. And if the destruction results in a total erasure of all personnel records, the agency may not even know *who* its former employees are.

---

[2] Brandon Drenon, *US government tries to rehire nuclear staff it fired days ago*, BBC (Feb. 18, 2025), https://tinyurl.com/mwspwast.

Likewise the destruction of "classified" and "personnel" records could prevent the agency from resuming operations as normal. Although Plaintiffs do not know at this moment which records are being destroyed, the destruction of records may severely undermine the agency's ability to function. For example, destruction of records that contain information about the agency's operations may make it extraordinarily difficult—if not impossible—to recreate and rebuild agency programming.

### III.     The balance of equities and the public interest favor Plaintiffs.

The equities and public interest favor entry of an order requiring immediate cessation of the destruction of these records. As discussed above, destruction of these records is likely unlawful both because it violates the Federal Records Act, as well as USAID's own records management program, and is inconsistent with the government's obligation to preserve records related to this litigation. "It is well established that the Government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (quoting *Open Cmties. Alliance v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017)). Further, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Open Cmties. Alliance*, 286 F. Supp. 3d at 179 (quoting *League of Women Voters*, 838 F.3d at 12). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws." *Id*. (quoting *League of Women Voters*, 838 F.3d at 12). There is likewise substantial public interest in ensuring—should this Court elect to grant Plaintiffs' requested relief on the pending motion for summary judgment—that Defendants' actions do not render nugatory any further orders of this Court by making it impossible to reconstitute the agency.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and enter a temporary restraining order enjoining Defendants immediately from taking any further actions to destroy USAID documentation and immediately take remedial measures outlined in the Proposed Order until further order of this Court.

Dated: March 11, 2025                              Respectfully submitted,

/s/ *Kaitlyn Golden*

Kaitlyn Golden (DC Bar No. 1034214)
Kristen Miller (DC Bar No. 229627)
Rachel L. Fried (DC Bar No. 1029538)
Kayla M. Kaufman (DC Bar No. 90029091)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kgolden@democracyforward.org


Lauren Bateman (DC Bar No. 1047285)
Karla Gilbride (DC Bar No. 1005886)
Allison Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
lbateman@citizen.org

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7(n)**

      Pursuant to Local Civil Rule 65.1(a), at 1:40 pm on March 11, 2025, counsel for Plaintiffs emailed counsel of record for Defendants' in this case, notifying counsel of USAID's actions and Plaintiffs' intent to seek immediate injunction relief in short order. At 2:49 p.m., counsel for Defendants responded that they were investigating. Immediately prior to making this application to the Court, Plaintiffs emailed counsel electronic copies of the motion for temporary restraining order, and accompanying proposed order before completing this electronic filing.

                                                         /s/ Kaitlyn Golden
                                                         Kaitlyn Golden