IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-352-CJN |
| PERSONAL SERVICES CONTRACTOR ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>PRESIDENT DONALD TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-00469 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTIONS OF MARCH 11, 2025 FOR
TEMPORARY RESTRAINING ORDER**

1

## INTRODUCTION

Plaintiffs' motions for a temporary restraining order[1] in these cases assume, based on one out-of-context email, that USAID on March 11, 2025 conducted an indiscriminate purge of documents in its possession at the Ronald Reagan Building in Washington, DC, which Plaintiffs have depicted as a violation of federal law and of rules on spoliation of evidence pertinent to the instant actions. But Plaintiffs have seriously misapprehended the facts. Trained USAID staff sorted and removed classified documents in order to clear the space formerly occupied by USAID for its new tenant. The removed classified documents had nothing to do with this litigation. They were copies of documents from other agencies or derivatively classified documents, where the originally classified document is retained by another government agency and for which there is no need for USAID to retain a copy. Any documents pertaining to current classified programs were retained, as were all personnel records and any document that must be retained under the Federal Records Act (FRA). Moreover, USAID will not destroy any additional documents after March 11, 2025, without first notifying Plaintiffs and providing an opportunity to raise the issue before this Court.

Because USAID was not violating and will not violate the FRA and is not destroying evidence potentially relevant to this litigation, Plaintiffs' motions lack any likelihood of success on the merits. Moreover, Plaintiffs have not established that they will suffer irreparable harm absent relief, especially given that USAID is no longer removing documents and will not resume any removal without first notifying Plaintiffs. And an order preventing Defendants from handling documents in accordance with applicable laws would hinder the Government's supervision and

---

[1] Plaintiffs in actions 1:25-cv-352 (*AFSA*) and 1:25-cv-469 (*PSCA*) both filed TRO motions on March 11, 2025 predicated on common factual assertions based on social media and news media accounts, and seeking similar relief against Defendants. *AFSA* Doc. 53; *PSCA* Doc. 24.

2

management of its records (including classified records) and thus would not be in the public interest. For those reasons, the Court should deny Plaintiffs' motions.[2]

## BACKGROUND

As part of the recent restructuring of USAID, the space in the Ronald Reagan Building in Washington, DC that the agency previously occupied is in the process of being decommissioned and prepared for the new tenant, U.S. Customs and Border Protection (CBP). Carr Decl. ¶ 5. As part of this decommissioning process, the General Services Administration (GSA) and CBP asked that USAID clear the space of documents by March 11, 2025, if possible, and no later than March 31, 2025. *Id.* Stored in parts of the space USAID has vacated are certain classified documents that must be maintained in classified safes or sensitive compartmentalized information facilities (SCIFs) until properly destroyed. *Id.* ¶ 3.

On March 11, 2025, 34 selected USAID personnel conducted a planned removal of documents from that space. *Id.* Those employees all hold Secret-level or higher security clearances, and all of them have completed records management training and training in how to properly safeguard and dispose of classified materials. *Id.* ¶¶ 3, 11. The vast majority of the removed documents fall into two categories: (1) copies of classified documents that were originally classified by other government agencies, or (2) derivatively-classified documents created for the purposes of, but not limited to, high-level meetings, official government travel, and intelligence briefings, which USAID no longer has a need to retain. *Id.* ¶ 6. Original copies of the classified documents are retained by other government agencies, or they are maintained in electronic format on classified systems. *Id.*

---

[2] Defendants respectfully request to be excused of the requirement to file tables of contents and authorities given the emergency posture of this filing.

USAID staff working on the decommissioning were instructed to retain any originally classified USAID documents if they had not met their retention requirement in accordance with the disposition schedule, approved by the National Archives and Records Administration (NARA). *Id.* ¶ 7. Staff were also instructed to retain current classified program files. *Id.* These documents are being safeguarded in the Ronald Reagan Building vault until permanent storage is identified. *Id.*

Furthermore, USAID's Office of Human Capital and Talent Management (HCTM) was given an opportunity to participate in the March 11 record management activity to identify and safeguard personnel records in accordance with the records management disposition schedule. *Id.* ¶ 8. None of the destroyed documents, which are all classified, are personnel records. *Id.* Any personnel records remaining in the Ronald Reagan Building were retained. *Id.*

The removal of documents was conducted in accordance with applicable law, including the Federal Records Act (FRA), *see id.* ¶ 10, 5 C.F.R. § 1312, *id.* ¶ 9 and Executive Order 13526, *id.*

Most of the classified documents that were deemed subject to destruction on March 11, 2025, were placed in approved burn bags. *Id.* ¶ 12. Those burn bags are currently being stored securely in the Ronald Reagan Building, where USAID will hold them and their contents until after the Court rules on Plaintiffs' March 11 motions for temporary restraining orders in the instant cases brought by AFSA and PSCA. *Id.* USAID has further stated that it will not destroy any additional documents stored in the spaces of the Ronald Reagan Building without giving notice to Plaintiffs and an opportunity for them to raise the issue with the Court. *Id.* ¶ 13.

At some point on March 11, 2025, an internal email containing partial logistical instructions on carrying out the planned removal of documents was made public. *See* Mot. at 2,

4

Doc. 53. Plaintiffs' TRO motions ensued in the *AFSA* and *PSCA* actions. *Id.* at 1.

## ARGUMENT

Plaintiffs have not satisfied any of the elements required to obtain a TRO because their assertions about USAID's conduct on March 11, 2025 are erroneous, as explained in Ms. Carr's declaration filed herewith.[3]

### 1. *No Likelihood of Success*

Plaintiffs' merits claims are that USAID's document handling acts on March 11, 2025 (1) violated the Federal Records Act, or (2) impaired Plaintiffs' access to relevant evidence in this action. Plaintiffs have no likelihood of success on either of those claims.

*First*, the FRA contention fails. *AFSA* Mem. 3-5 (Doc. 53). The FRA requires heads of federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. But even where a Government officer "has violated" the [FRA], the Supreme Court has explained, "Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative authorities." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 149–50 (1980). The Supreme Court held in that case that the FRA does not create any private enforceable rights, given that the statute was intended "not to benefit private parties, but solely to

---

[3] As explained in the Feb. 21 Order of this Court denying a preliminary injunction in *AFSA*, 2025 WL 573762 at *4, for a TRO, Plaintiffs must show "(1) a substantial likelihood of success on the merits, (2) that [they] would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Since Plaintiffs here seek to restrain the Government, "the final two factors are analyzed as one." 2025 WL 573762 at *4 (citing *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

benefit the agencies themselves and the Federal Government as a whole." *Id.* at 149.

Applying that teaching, in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991), the Court of Appeals assessed three types of agency actions under the FRA: "(1) agency employees' 'destroying records in contravention of the ... recordkeeping guidelines and directives'; (2) the agency's failure to employ adequate recordkeeping guidelines and directives; and (3) the agency head's or [Archivist of the United States]'s refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *See CREW v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018) (quoting *Armstrong*, 924 F.2d at 291, 294–95). Agency actions of the first type are "not reviewable," whereas those of the second and third types may proceed under the Administrative Procedure Act. *See id.* Hence, "courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA and ones alleging that the agency head or Archivist improperly refused to seek initiation of an enforcement action by the Attorney General." *Id.* at 258. Courts thus recognize that while the FRA "does contain several specific requirements," it "understandably leaves the details of records management to the discretion of individual agency heads." *Armstrong*, 924 F.2d at 293; *see also CREW v. U.S. DHS*, 507 F. Supp. 3d 228, 245 (D.D.C. 2020).

Here, Plaintiffs assert, based on social media and news media reports, that USAID personnel are "destroying . . . records" that "concern the structure, function, and activities of USAID." *AFSA* Mem. 3 (Doc. 53). That assertion baldly depicts the "agency employees" as engaged in "destroying records in contravention of the ... recordkeeping guidelines and directives" of the agency, which is the first of the three types of FRA claims analyzed in *Armstrong*—and, critically, the one type of claim that is "not reviewable" under that precedent. *See, e.g.*, *Pruitt*, 319

F. Supp. 3d at 257-58; *see generally Armstrong*, 924 F.2d at 291, 294–95. Tellingly, Plaintiffs altogether omit discussion of *Armstrong* or *Kissinger*.

In any event, even apart from the apparent legal deficiencies in their FRA contention, Plaintiffs lack factual support for it. Rather, as Ms. Carr's declaration explains: The vast majority of the removed documents were either (1) copies of classified documents that were originally classified by agencies other than USAID, or (2) derivatively-classified documents created for such purposes as briefings and official travel, and USAID no longer has a need to retain them. Original copies of the classified documents are retained by other government agencies, or they are maintained in electronic format on classified systems. *See* Carr Decl. ¶ 6. (Notably, there is no basis for characterizing copies as "records" subject to the FRA at all: A record for purposes of the statute is defined to *exclude* "extra copies of documents preserved only for convenience of reference." 44 U.S.C. § 3301.)

And, as to personnel records, USAID personnel likewise handled those under the agencies' pre-existing records management disposition schedule. *See* Carr Decl. ¶ 8. None of the destroyed documents, which are all classified, are personnel records, and any personnel records remaining in the Ronald Reagan Building were retained. *See id.*

Plaintiffs provide no contrary basis for second-guessing the conclusion of agency personnel that the March 11, 2025 conduct appropriately respected agency policies and procedures for records management. Those personnel, Ms. Carr explains, received prior training in the agency's policies as to recordkeeping and as to classified information. *See* Carr Decl. ¶ 11. Hence, the FRA contention fails for that additional, factual reason as well.

*Second*, the spoliation contention—namely, the assertion that USAID's March 11, 2025 conduct violated the "duty to preserve evidence" in litigation—also fails. *AFSA* Mem. 5-6 (Doc.

53); *see also PSCA* Mot. 2 ¶ 4 (*PSCA* Doc. 24) (espousing "concern[] that evidence might be being spoliated"). "Spoliation" is "defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *True the Vote, Inc. v. IRS*, No. 13-cv-734, 2014 WL 4347197 at *4 (D.D.C. Aug. 7, 2014) (quoting, *inter alia*, *Clarke v. Wash. Metropolitan Area Transit Auth.,* 904 F.Supp.2d 11, 20 (D.D.C.2012)). "And a party is obligated to not spoliate "'documents it knew or reasonably should have known were relevant to the ... litigation if it knew the destruction or alteration of those documents would prejudice the plaintiff[ ].'" *Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1481 (D.C. Cir. 1995), *cited at AFSA* Mem. 5 (Doc. 53). But, again, there was no such "destruction or material alteration of evidence or . . . failure to preserve," *True the Vote*, 2014 WL 4347197 at *4, because as Ms. Carr's declaration explains, the classified materials removed were copies of materials in the possession of the agencies that originally classified them, *see* Carr Decl. ¶ 6, or derivatively-classified documents created for such transient events as meetings and briefings which USAID has no enduring need to retain, *id.* Moreover, while Plaintiffs' allegations in these actions center on USAID's actions as to its personnel, none of the destroyed documents (all of which are classified) constitute personnel records, and any personnel records remaining in the Ronald Reagan Building were retained. *See id.* ¶ 8.

Plaintiffs nevertheless maintain (*AFSA* Mem. 6 (Doc. 53)) that each and every classified record duplicated in USAID's files, and each and every personnel record in those files, must be preserved during the pendency of this action, because in the event the Court accepts Plaintiffs' allegations that USAID has been unlawfully "dismantled," those documents "will be critical to the continued operation or . . . reconstitution of the agency." Such an expansive conception of what documents are relevant to the claims and defenses in this action is boundless and implausible.

8

Notably, Plaintiffs identify no precedent for it.

Nor is there any reason to believe that the documents at issue are independently relevant to this litigation. As Ms. Carr explains, the classified documents are copies of other agencies' documents or derivatively-classified documents that were used "for purposes" such as "high-level meetings, official government travel, and intelligence briefings," and USAID "no longer has a need to retain" them. Carr Decl. ¶ 6. There is no reason to believe any such classified documents relate to the recent events at USAID that are the subject of this litigation.

Hence Plaintiffs lack any likelihood of success on the merits on either of their asserted claims that USAID's document removals were unlawful.

### 2. *No Irreparable Harm*

Given that Plaintiffs have not substantiated their allegations of spoliation of evidence or supported their "suspicion that" Defendants "will do so in the future," they also fail to show they will suffer irreparable harm absent a TRO directed to USAID's recordkeeping practices. *See True the Vote*, 2014 WL 4347197 at *5. Moreover, there is no ongoing conduct in dispute against which Plaintiffs' proposed restraint would be necessary: As Ms. Carr explains, USAID will not destroy any additional documents stored in the agency's offices of the Ronald Reagan Building without giving notice to the Plaintiffs and an opportunity for them to raise the issue with the Court. Carr Decl. ¶ 13. That would allow Plaintiffs to seek the Court's intervention, as appropriate, at *that time*—it is not a basis for issuance of an extraordinary provisional remedy at this time.[4]

---

[4] Indeed, the absence of ongoing pertinent conduct for the Court to restrain presents a distinct problem for Plaintiffs by showing they lack Article III standing to seek the TRO requested: "[W]hen a plaintiff seeks prospective relief such as an injunction," under Article III "the plaintiff must establish a sufficient likelihood of future injury." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). At the preliminary injunction stage Plaintiffs may not rest on "general allegations," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), but must adduce "specific facts" that make "a 'clear showing' that" each plaintiff "is 'likely' to establish

9

### 3. *Balance Of Interests Weighs Against Relief.*

To determine the balance of interests, including the public interest here, the Court "weighs the harm" to Plaintiffs "if there is no injunction against the harm to" the Government "if there is" an injunction. *Cf. Pursuing Am.'s Greatness*, 831 F.3d at 511. As explained above, denial of the TRO will not harm Plaintiffs because no relevant records were destroyed on March 11, 2025, and, moreover, there is no currently ongoing alleged misconduct to enjoin. On the other side of the balance, the public interest and the Government's interests would be impaired if the Court were to enjoin Defendants from ordinary application of USAID's record retention requirements in accordance with the agency's NARA-approved disposition schedule and its processes for handling current classified program files. *See* Carr Decl. ¶ 7. Plaintiffs' unrealistic position in the instant TRO motions appears to be that *any* removal or destruction of USAID's classified records should be enjoined, which would prevent the agency from following its decommissioning process and impose practical burdens also on other agencies given that the GSA and the new lessee, CBP, asked USAID to remove its files by March 31, 2025. *See* Carr Decl. ¶ 5. Plaintiffs provide no countervailing justification for imposing such infeasible burdens.

## CONCLUSION

Plaintiffs have not met the stringent requirements for a temporary restraining order predicated on their mistaken assertions about USAID's conduct on March 11, 2025. Their motions should be denied.

---

each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see id.* at 67 n.7 ("plaintiffs bear the burden to establish standing by setting forth 'specific facts'"). Without proof of "ongoing" or "continuing" asserted misconduct regarding recordkeeping, Plaintiffs simply fail to show "real and immediate threat of repeated injury," 603 U.S. at 58, necessary for Article III standing to seek prospective relief concerning USAID recordkeeping.

| | |
|---|---|
| Dated: March 12, 2025 | Respectfully submitted, |
| | YAAKOV M. ROTH<br>Acting Assistant Attorney General |
| | ALEXANDER K. HAAS<br>Director<br>Federal Programs Branch |
| | LAUREN A. WETZLER<br>Deputy Director<br>Federal Programs Branch |
| | */s/ Michael P. Clendenen*<br>MICHAEL P. CLENDENEN<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L St. NW<br>Washington, DC 20005<br>Phone: (202) 305-0693<br>Email: michael.p.clendenen@usdoj.gov |
| | *Counsel for Defendants* |