**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD TRUMP, *et al.*,<br><br>        Defendants. | Civil Action No. 1:25-cv-00352-CJN |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

I.    This Court Lacks Jurisdiction Over Plaintiffs' Claims. ....................................3

      A.    Plaintiffs Cannot Bypass The Specialized Statutory Scheme For
            Employment-Related And Contract-Related Claims ...............................3

      B.    Plaintiffs Lack Article III Standing.........................................................7

II.   Plaintiffs' APA Claims are Unreviewable by This Court..................................8

      A.    The Congressional Notice is not a Discrete Agency Action. ................8

      B.    The Congressional Notice is not a Final Agency Action. .....................9

      C.    The Challenged Actions are Committed to Agency Discretion by Law...............12

      D.    Alternative Adequate Remedies are Available to Plaintiffs.................14

III.  Defendants Are Entitled to Judgment on Plaintiffs' APA Claims ..................15

      A.    Plaintiffs Are Not Within the Zone of Interested Protected by the Statutes
            They Invoke.........................................................................................15

      B.    Defendants' Actions Are Authorized by Statute. .................................16

      C.    Defendants' Actions Are Not Arbitrary and Capricious......................18

IV.   Plaintiffs' Allegations That Defendants Violated FARRA And Similar Statutes
      Are Not Constitutional Claims, Subject to Judicial Review.............................19

      A.    Plaintiffs' Separation Of Powers Claims Allege Violations of Statute.
            They Are Not Constitutional Claims. ..................................................19

      B.    Plaintiffs' Take Care Clause Claim Is Not Justiciable Because Plaintiffs
            Challenge Purely Political Actions. ....................................................19

V.    Plaintiffs' Overbroad Remedies Cannot Be Granted In Any Event................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*AFGE, AFL-CIO v. Trump*,
   318 F. Supp. 3d 370 (D.D.C. 2018)........................................................................20

*Am. Foreign Serv. Ass'n v. Trump*,
   No. 1:25-cv-352, 2025 WL 573762 (D.D.C. Feb. 21, 2025)............................3, 4, 5

*AIDS Vaccine Advocacy Coalition v. U.S. Department of State*,
   No. 25-cv-400, 2025 WL 752378 (D.D.C. Mar. 10, 2025),
   *appeal docketed*, No. 25-5097 (D.C. Cir. Apr. 2, 2025), ......................................13

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ...............................................................................4

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ..........................................................................................3, 4, 5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ...............................................................................................9

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ...............................................................................................6

*California Cmtys. Against Toxics v. EPA*,
   934 F.3d 627 (D.C. Cir. 2019) .............................................................................10

*Center for Biological Diversity v. McAleenan*,
   404 F. Supp. 3d 218 (D.D.C. 2019).....................................................................21

*Center for Biological Diversity v. Trump*,
   453 F. Supp. 3d 11 (D.D.C. 2020) .......................................................................19

*Citizens for Resp. & Ethics in Washington v. Trump*,
   302 F. Supp. 3d 127 (D.D.C. 2018).....................................................................20

*City of N.Y. v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019)..................................................................................8

*Cmty. Servs. Admin., Region VIII, Denver, Colorado*,
   7 FLRA 762 (1982) ................................................................................................4

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) .............................................................................22

*Comm. on Jud. of U.S. House of Reps. v. McGahn*,
  968 F.3d 755 (D.C. Cir. 2020) ...................................................................7

*Dalton v. Specter*,
  511 U.S. 462 (1994) ............................................................... 10, 19, 20

*Department of Education v. California*,
  145 S. Ct. 966 (April 4, 2025) .................................................................6

*DOJ v. FLRA*,
  39 F.3d 361 (D.C. Cir. 1994) ................................................................17

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  396 F.3d 1265 (D.C. Cir. 2005) ............................................................14

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) .........................................................................3, 4, 5

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ...............................................................................7

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ..................................................................4

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) .............................................................9, 10

*Gill v. Whitford*,
  585 U.S. 48 (2018) ................................................................................21

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...............................................................................7

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .............................................................................12

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013) .........................................................12, 13

*Inv. Co. Inst. v. CFTC*,
  720 F.3d 370 (D.C. Cir. 2013) .............................................................18

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .............................................................................13

*Lujan v. Def. of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................20

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .................................................................................................8

*Mississippi v. Johnson*,
  71 U.S.  475 (1867) ...............................................................................................20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .................................................................................................18

*Nat'l Treasury Emps. Union v. Vought*,
  No. 25-cv-381, 2025 WL 942772 (D.D.C. Mar. 28, 2025),
  *preliminary injunction stayed*, No. 25-5091 ((D.C. Cir. Apr. 11, 2025),
  *and restored in part pending expedited argument* (D.C. Cir. Apr. 28, 2025) .......................8, 9

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ...............................................................................................8, 9

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ...................................................................................5

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................................................21

*Silver State Land, LLC v. Schneider*,
  145 F. Supp. 3d 113 (D.D.C. 2015) ..........................................................................18

*Southwest Airlines Co. v. U.S. Department of Transportation*,
  832 F.3d 270 (D.C. Cir. 2016) .................................................................................10

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) .................................................................................................7

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................................6

*Twin Rivers Paper Co. v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019) .................................................................................15

*United States v. Fausto*,
  484 U.S. 439 (1988) .................................................................................................3

*Widakuswara v. Lake*,
No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025),
*modified and administratively stayed in part* (May 7, 2025)
(en banc) (Doc. 2114884) ......................................................................1, 4, 5, 6, 8, 14, 22

*Widakuswara v. Lake*,
No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025),
*administratively stayed in part* (D.C. Cir. May 7, 2025)...........................................11, 13, 20

*Widakuswara v. Lake*,
No. 25-cv-2390, 2025 WL 945869 (S.D.N.Y. Mar. 28, 2025)................................................20

**Statutes**

5 U.S.C. § 104..............................................................................................................16

5 U.S.C. § 701........................................................................................................1, 10, 12

5 U.S.C. § 702..............................................................................................................6

5 U.S.C. § 704........................................................................................................1, 2, 14

5 U.S.C. § 706..............................................................................................................17

5 U.S.C. § 1101..............................................................................................................3

5 U.S.C. § 7703..............................................................................................................3

5 U.S.C. § 7105..............................................................................................................3

5 U.S.C. § 7123..............................................................................................................3

22 U.S.C. § 2151..............................................................................................................20

22 U.S.C. § 2381..............................................................................................................19

22 U.S.C. § 6563..............................................................................................................16

22 U.S.C. § 6592..............................................................................................................16

22 U.S.C. § 6601..............................................................................................................16

Further Consolidated Appropriations Act of 2024,
Pub. L. No. 118-47, 138 Stat. 460 (2024)........................................................................12, 16

Omnibus Consolidated and Emergency Supplemental Appropriations Act,

Pub. L. No. 105-277, 112 Stat. 2681 (1998)..........................................................................16

The Civil Service Reform Act of 1978,
  Pub. L. No. 95-454, 92 Stat. 1111 (1978)..............................................................................3

## INTRODUCTION

In denying Plaintiffs' motion for a preliminary injunction, the Court held that Plaintiffs' alleged injuries are related to employment disputes and "should proceed exclusively" through statutory schemes for federal employees and foreign service workers established by Congress. Despite adding OxFam, an entity that neither employs nor represents federal employees but indirectly benefits from foreign assistance funds, as a party and characterizing Defendants' actions to reorganize USAID as a "dismantlement," Plaintiffs have not established subject matter jurisdiction. Except in limited circumstances, the specialized statutory scheme governs federal employment-related disputes. Contrary to the contentions in their opposition brief, Plaintiffs have not established their employment related lawsuit falls within those limited circumstances. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) (panel order granting stay pending appeal), *modified and administratively stayed in part* (May 7, 2025) (*en banc*) (Doc. 2114884). And adding OxFam, which holds contractual claims that must be brought in another federal forum, does not change this result.

Separately, Plaintiffs fail to establish Article III standing to assert a broad challenge to USAID's reorganization. They have attempted to recharacterize alleged harms to nonparties as harms specific to Plaintiffs, a move that cannot confer standing.

In any event, the asserted APA and constitutional claims fail. Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Defendants have stated their goal is to work with Congress to reorganize USAID. Plaintiffs' construal of Defendants' actions to constitute a dismantling of USAID is, at most, a broad programmatic challenge, which is impermissible under the APA. *See Widakuswara*, 2025 WL 1288817, at *4. Nor is Defendants' implementation of the reorganization, which is in process, a final agency action.

Moreover, decisions committed to agency discretion by law are unreviewable under the APA. 5 U.S.C. § 701(a)(2). In appropriating funds for USAID, Congress gave the agency broad discretion to decide when and how to spend funds consistent with various purposes specified in the appropriations laws. Defendants exercised that discretion to pause funds in order to determine if they aligned with the Executive's foreign policy decisions and has notified Congress about those choices. The underlying authorizing and appropriations statutes do not articulate any judicially manageable standard for this Court to review those choices.

Additionally, review under the APA is available only where there is no other adequate remedy in court. 5 U.S.C. § 704. Again, Plaintiffs' allegations of injury are a consequence of employment-related decisions properly channeled into the specific statutory scheme for federal employees and foreign service workers.

Moreover, the APA claim fails because the challenged conduct was not arbitrary or capricious. At the outset of that inquiry, Plaintiffs fail because they are not proper parties to enforce the Foreign Affairs Reform and Restructuring Act ("FARRA") or any appropriations statute because their claims are not within the zone of interests those statutes protect: The purpose of the appropriations statutes is to provide foreign aid, and the benefit to employees of USAID is merely incidental. In any event, Defendants' actions are authorized by statute and historical practice. And Defendants have articulated a reasonable explanation for their interpretation of FARRA and the appropriations statutes and for their actions. That Plaintiffs disagree with Defendants' decisions is not a basis for finding the decision arbitrary and capricious.

Also deficient are Plaintiffs' constitutional claims, which share the same factual basis and derive from their statutory claims. Indeed, the separation-of-powers, Take Care Clause, and ultra vires claims are simply vehicles to dispute Defendants' implementation of statutes. They furnish

no independent basis for judgment for Plaintiffs—let alone warrant the overbroad relief they seek, which would impermissibly interfere with Defendants' employment decisions and disrespect the Executive's leading role in the foreign policy area.

**I.    This Court Lacks Jurisdiction Over Plaintiffs' Claims.**

**A.    Plaintiffs Cannot Bypass The Specialized Statutory Scheme For Employment-Related And Contract-Related Claims**

This Court denied a preliminary injunction, reflecting a determination that Plaintiffs had not established the Court had subject-matter jurisdiction to assess the legality of the USAID personnel actions forming "[t]he crux of the dispute" between the parties. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023). The preliminary injunction conclusion still endures, and warrants dismissal of this suit for lack of subject-matter jurisdiction. *See* Defs. Mem. 20-29. Plaintiffs have simply no basis for contesting that Congress has "established a comprehensive system for reviewing personnel action[s] taken against federal employees" that provides the "exclusive means" for review. *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5, 8 (2012).

Although Plaintiffs assert that it would be "atextual" (Pls. Opp. 8) to require the employee challenges underpinning this suit to proceed through "the remedial schemes laid out in" the relevant statutes, *see Am. Foreign Serv. Ass'n (AFSA) v. Trump*, No. 1:25-cv-352, 2025 WL 573762, at *8, (D.D.C. Feb. 21, 2025). Plaintiffs do not ground that assertion in a reading of any of the statutes Defendants discussed. In its preliminary injunction decision, the Court identified particular statutory provisions supporting the conclusion that Plaintiffs' claims must be channeled under that remedial scheme. Defs. Mem. 26-27. Those statutes are clear: The Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, sets out an "integrated scheme of administrative and judicial review" for challenges to personnel actions taken against members of the civil service. *United States v. Fausto*, 484 U.S. 439, 445 (1988). That scheme permits some, but not all

challenges, with some challenges limited to certain types of employees; channels those challenges to agencies; and grants exclusive jurisdiction to the Federal Circuit over appeals from final agency action. *See Elgin*, 567 U.S. at 5-6 & n.1; 5 U.S.C. § 7703(b)(1); 5 U.S.C. §§ 7105(a)(2), 7123(a); *see also* 5 U.S.C. § 1101 *et seq.* And the Foreign Service Act (FSA) provides a similar "statutory scheme of administrative and judicial review" for foreign service officers' challenges, culminating in review by a court of appeals, not this Court in the first instance. *See AFSA*, 2025 WL 573762, at *8.

Unable to reconcile their approach with the text of the statutes at issue, Plaintiffs simply repeat their arguments that their challenge is to USAID's "dismantlement" rather than to employee actions, and that Oxfam's presence allows the suit to proceed in this Court. Pls. Opp. 4, 6. Those arguments fail. There are only "limited circumstances" in which personnel disputes may fall outside the scope of the specialized statutory scheme, and none apply here. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump (AFGE)*, 929 F.3d 748, 755 (D.C. Cir. 2019); *see also Axon*, 598 U.S. at 186 (setting forth the three factors from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)); *Widakuswara*, 2025 WL 1288817, *3-4)).

*First*, channeling the claims to the proper administrative forum would not foreclose "all meaningful judicial review." *Elgin*, 567 U.S. at 15. The specialized scheme provides for ultimate judicial review in federal court. On review of the relevant agency's decision, that court would be able to decide the employment-related claims discussed in the Amended Complaint and issue a remedy, including damages, to make employees whole for lost pay, benefits, or other financial harms. And although Plaintiffs point (Pls. Opp. 5) to a decision holding that the *termination* of an agency through legislation rendered moot that agency's unfair labor practice dispute with a union,

*Cmty. Servs. Admin., Region VIII, Denver, Colorado*, 7 FLRA 762 (1982), USAID is not being terminated at this time but instead reorganized (as explained in Defendants' brief).

*Second*, Plaintiffs' challenges are not "wholly collateral" to the statutory review provisions. *Elgin*, 567 U.S. at 15. Merely labeling Plaintiffs' challenge as directed to "systematic" conduct (Pls. Opp. 4) cannot forestall channeling this suit to the remedial scheme. *Fornaro v. James*, 416 F.3d 63, 67–68 (D.C. Cir. 2005) (Roberts, J., for the Court) and *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448–49 (D.C. Cir. 2009) (Kavanaugh, J., for the Court), so held (Defs. Mem. 28), and Plaintiffs' cursory effort to distinguish those precedents is unavailing. *See Widakuswara*, 2025 WL 1288817, at *2 (quoting *Nyunt*). Moreover, in *Elgin*, the plaintiffs brought a District Court challenge to "adverse employment action by arguing that a federal statute [was] unconstitutional." 567 U.S. at 5. Their constitutional claims were not collateral to the CSRA, the Supreme Court held, because those claims were merely "the vehicle" by which they sought to reverse their adverse employment actions. *Id.* at 21-22. "Far from a suit wholly collateral to the CSRA scheme," *Elgin* involved "a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords." *Id.* at 22.

The same is true here: Plaintiffs have asserted claims under the separation of powers and Take Care Clause, but those are the "vehicle" by which they challenge reductions in force and other personnel actions. *Id.*, 567 U.S. at 21-22.

*Third*, the claims in the Amended Complaint do not fall outside the "agency's expertise." *Elgin*, 567 U.S. at 15. The agencies' expertise may be relevant to "threshold questions that may accompany" those otherwise broad claims. *Id.* at 22; *see Axon*, 598 U.S. at 195 (noting that *Elgin* relied on the agency's "expertise on a raft of ordinary employment issues surrounding the employee's contention that the Equal Protection Clause barred his discharge"). Or, as this Court

observed: "Here, even if the farthest reaches of" the suit "involve 'separation-of-powers issues,'" "the 'preliminary' questions the lawsuit poses are plainly employment-related—such as the lawfulness of the government's changes to plaintiffs' … employment conditions" and contracts. *AFSA*, 2025 WL 573762, *10.

Plaintiffs also err in contending (Pls. Opp. 7) that the presence of Oxfam—which neither is employed by nor represents federal employees or foreign service officers—exempts the case from channeling under *Thunder Basin*. If Plaintiffs' decision to join Oxfam as a Plaintiff could bypass the specialized statutory scheme for employees, then many federal employee working condition grievances could similarly avoid channeling through the simple expedient of joining a private party as co-plaintiff—say, some organization that contends it benefits from the work the employee does. As explained, precedent precludes such a stratagem. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984).

Oxfam has (at best) a channeling problem of its own, under *Department of Education v. California*, 145 S. Ct. 966, 966 (April 4, 2025) (per curiam); *see Widakuswara*, 2025 WL 1288817, at *3–*5 (applying *California*). Importantly, Oxfam does not assert that it *directly* receives foreign assistance funds from Defendants, but that it *indirectly* benefits from such funds received by nonparty organizations that work with it—such as the project "partly funded by a UN agency, which is in turn funded by the US government" (Doc. 51-23, ¶ 4). So Oxfam itself does not purport to have a contract-based claim against Defendants. Indeed, neither Oxfam nor any other Plaintiff in this action has Article III standing to seek the relief described in Plaintiffs' proposed summary judgment order concerning foreign-assistance funding agreements. Doc. 51-25 at 2 ¶¶ a—c. But in any event, even if Oxfam itself did have a funding agreement with a Defendant, a claim for payment of money due under that agreement has a separate channel: The *California* ruling teaches

that the sovereign immunity waiver in 5 U.S.C. § 702 does not apply to such contract-based relief and such suits must be brought in the Claims Court.

### B.    Plaintiffs Lack Article III Standing.

Article III courts "do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Instead, the "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).  Under those precedents, Plaintiffs have failed to establish standing to broadly challenge USAID's restructuring. They highlight various actions that they claim to be unlawful steps in a plan to unlawfully "dismantle" the agency.  But apart from the employment- and contract-related injuries of the nonparties whose interests they purport to represent, Plaintiffs identify no way in which the various actions injured them.  For example, they criticize closure of the USAID headquarters building, but they do not explain how such closure would injure *them*.  Instead, they point only to "undifferentiated" harms that are not "specific to" Plaintiffs and hence are insufficient to establish Article III standing.  *See Comm. on Jud. of U.S. House of Reps. v. McGahn*, 968 F.3d 755, 767 (D.C. Cir. 2020) (*en banc*).

Plaintiffs' attempt to show organizational standing (Pls. Opp. 10-12) by analogy to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), fails, because they hardly acknowledge the clarification of that case in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).  Plaintiffs have not shown that Defendants have "*directly* affected" their core activities—instead relying indirectly on purported harms to USAID employees and funding recipients not before the Court—and Plaintiffs have also not shown that they have done anything other than attempt to "divert[]" their "resources in response to" the Defendants' actions.  *See id.* at 395; Defs. Mem. 27-33.

## II.    Plaintiffs' APA Claims are Unreviewable by This Court.

Plaintiffs contend (Pls. Opp. 18) that the notification to Congress of March 28, 2025 describing a proposed reorganization of USAID shows "the decisionmaking has come to an end" so Defendants' actions must be reviewable under the APA.  But that misunderstands Defendants' conduct.  They are not unilaterally "dismantling USAID."  Pls. Opp. 17.  Defendants have described a proposal to reorganize USAID making clear that aspects of that reorganization would require enactment of legislation by Congress.  AR_0003–04; AR_0148.  But that proposed reorganization of USAID is unreviewable under the APA for four reasons: (1) the reorganization is not a discrete action; (2) the reorganization is not a final action; (3) the challenged actions are committed to agency discretion by law; and (4) an adequate alternative remedy is available to Plaintiffs.

### A.    The Congressional Notice is not a Discrete Agency Action.

The APA does not provide for general "judicial review of" agency conduct; instead, it allows only for challenges to "circumscribed [and] discrete" actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990); *see also City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (explaining that the "distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers" and prevents the judge from being injected into "day-to-day agency management").  Plaintiffs' argument echoes the argument the D.C. Circuit motions panel rejected in granting stay in *Widakuswara*, 2025 WL 1288817, at *3 (quoting *Nat'l Wildlife Fed'n*, 497 U.S. at 893):  "The 'dismantling' that plaintiffs allege is a collection of 'many individual actions' that cannot be packaged together and 'laid before the courts for wholesale correction under the APA.'"

Plaintiffs rely (Opp. 15) on a decision concerning the Consumer Financial Protection Bureau, *see Nat'l Treasury Emps. Union v. Vought (NTEU)*, No. 25-cv-381, 2025 WL 942772 (D.D.C. Mar. 28, 2025), *preliminary injunction stayed*, No. 25-5091 (D.C. Cir. Apr. 11, 2025), *and restored in part pending expedited argument* (D.C. Cir. Apr. 28, 2025). The Government has appealed that preliminary injunction, and simply assumes, solely for purposes of the discussion in this brief, that the District Court opinion in that case correctly describe the facts, because even on that assumption, that suit does not resemble this one: The District Court concluded that there was an "unchanged" effort "to shut the agency down entirely," *id.*, 2025 WL 942772 at *23, and that, absent the injunction, CFPB would fail to perform identified functions mandated by statute, *id.* at *40. By contrast here, the notification to Congress makes clear that USAID's statutorily-required functions will not be discontinued absent appropriate legislation, which the notification makes clear has yet to be proposed for enactment. AR_0261. Nor have the employment and contracting decisions described in the reorganization notice to Congress yet been undertaken. Plaintiffs' sweeping conception of a "discrete" action would appear to seek review of all of those decisions in one fell swoop. But "[t]he limitation to discrete agency action precludes" exactly that sort of "broad programmatic attack," *Norton*, 542 U.S. at 64; *see Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20-21 (D.C. Cir. 2006) ("plans themselves are generally unreviewable"; instead, "it is only [the] specific actions implementing the plans that are subject to judicial scrutiny.").

### B.    The Congressional Notice is not a Final Agency Action.

Contrary to Plaintiffs' contention (Pls. Opp. 17), the proposed reorganization does not satisfy the two elements of a final action—(1) the agency action "must mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*,

520 U.S. 154, 177–78 (1997) (citations omitted).  The proposed reorganization, as the notification to Congress made clear, reflects the Administration's intention to work with Congress to reorganize USAID. AR_0003–04; AR_0148.  The exact reorganization details and the role Congress will play in the reorganization remain to be decided.  *See* AR_0262 ("The Department anticipates… *proposing* legislation to abolish USAID as an independent establishment.") (emphasis added).  The reorganization is not a foregone conclusion, so it cannot be a final action reviewable under the APA.  *See, e.g.*, *Dalton v. Specter*, 511 U.S. 462, 468-70 (1994) (military-base closure recommendations to President were not final agency actions where "the President, not the Commission, takes the final action that affects the military installations"); *see also California Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637-38, 640-41 (D.C. Cir. 2019) (memorandum announcing agency's final interpretation of law was not final for APA purposes where its effects would not be felt until the agency implemented it).

In arguing otherwise (Pls. Opp. 17-18), Plaintiffs list acts such as the cancellation of foreign-assistance funding instruments and RIFs, but those acts are unavailing because, separately, they are committed to agency discretion by law.  *See* 5 U.S.C. § 701(a)(2); *infra* Part II(b).  In any event the notification to Congress describing the proposed reorganization is not final agency action.  A plan—no matter how decisive—is only a preliminary step along the way to a final action. See *Fund for Animals*, 460 F.3d at 22.

Plaintiffs err in relying (Pls. Opp. 18) on *Southwest Airlines Co. v. U.S. Department of Transportation*, 832 F.3d 270, 274-75 (D.C. Cir. 2016), where the department explicitly stated the challenged letter was not the agency's final word on the pertinent issue and provided the plaintiff and other interested parties with an opportunity to raise relevant arguments.  The court concluded the department did not consummate its decision making with the letter because it granted interested

parties a "full opportunity to raise arguments" at a later date. *Id.* at 275.  Similarly, here, USAID's notification to Congress explains that the agency "anticipates… proposing legislation to abolish USAID…," with USAID continuing to operate specified programs "until appropriate legislation is enacted to facilitate the transfer to the [State] Department." AR_0262, AR_0265–6.  Interested parties have the opportunity to raise arguments on USAID's reorganization through the political process—where such discussions belong.

Also unavailing are Plaintiffs' flawed comparisons to recent decisions from courts in this District challenging changes at other agencies—the CFPB, as discussed above, and the United States Agency for Global Media ("USAGM"), *see Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025), *administratively stayed in part* (D.C. Cir. May 7, 2025) (*en banc*).  The Government has appealed both of those preliminary injunctions, and simply assumes, solely for purposes of the discussion in this brief, that the District Court opinions in those cases correctly describe the facts, because even on that assumption, those suits do not resemble this one.

As to CFPB:  The notification to Congress concerning USAID articulates a plan to propose further steps, which cannot be final, so it does not resemble the situation as perceived by the District Court in *NTEU*.

As to the USAGM:  In *Widakuswara*, the District Court issued a preliminary injunction preventing USAGM from shutting down Voice of America ("VOA"), and several affiliated federally-funded entities, concluding that USAGM's decisions limited VOA and those entities' operations, resulting in a halt of agency programming, such that the challenged conduct was final agency action under the APA.  2025 WL 1166400 at *12.  The District Court distinguished this Court's preliminary injunction ruling, concluding that unlike USAID, which this Court described as "still standing," the VOA news service had "gone completely dark with no signs of returning."

*Widakuswara,* 2025 WL 1166400, at *11.  As the District Court there recognized, USAID is still standing, continuing to disburse foreign aid. AR_0010. As the notification to Congress makes clear, USAID will continue to disburse foreign aid until Congress approves its reorganization. AR_0261, AR_0264-5.  The conclusions about finality of agency action in the CFPB and USAGM preliminary injunction decisions are therefore of little help to Plaintiffs here.

  **C.**   **The Challenged Actions are Committed to Agency Discretion by Law**

  As explained (Defs. Mem. 37–38), neither the appropriations statutes nor the authorizing statutes on which Plaintiffs' challenges rely spell out standards "against which to judge the agency's exercise of discretion" in making the many choices the agency must make in administering foreign-assistance funds under those statutes. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Accordingly, the challenged decisions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2).

  Plaintiffs nevertheless contend (Pls. Opp. 21) that the Further Consolidated Appropriations Act of 2024 (FCAA) furnishes a "meaningful standard" for this Court's decision by defining the phrase "reorganization" and prohibiting its implementation "without prior consultation" with Congress. (Pls. Opp. 21) (FCAA § 7063(a)).  But Plaintiffs' argument is flawed because it fails to explain why the notifications to Congress that USAID did provide are not sufficient. It also assumes, without legal support, that any error in the *timing* of the consultation renders all of the challenged agency conduct invalid.

  Contrary to Plaintiffs' contention (Pls. Opp. 26), Congress did not foreclose USAID's reorganization by appropriating specific funds in the FCAA. Congress appropriated those funds *to the President*, not to USAID, for purposes of carrying out the FAA. 138 Stat. at 739.  That appropriation reflects the President's authority under the FAA to decide which agencies to task

with the FAA's administration, as well as Congress's recognition in the FCAA that the President retains authority to reorganize USAID.

Plaintiffs also argue (Pls. Opp. 20) that Defendants lack discretion *not* to expend appropriated funds.  But their reliance on *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J., for the Court) is misplaced.  The *Aiken County* Court ordered the Nuclear Regulatory Commission to continue spending congressionally appropriated funds to advance proceedings on the Department of Energy's license application to store nuclear waste at Yucca Mountain—*i.e.*, "the statutorily mandated Yucca Mountain licensing process."  *Id.* at 259.  The Court instructed that "the President and federal agencies may not ignore statutory *mandates or prohibitions* merely because of policy disagreement with Congress." *Id.*, 260 (citing *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)) (emphasis added).  But the statutory mandate the *Aiken County* Court enforced required the license proceeding continue.  Here, by contrast, both the pertinent authorizing and appropriations statutes are cast in broad terms that do not define a cognizable judicial standard for assessing the Executive's implementation choices.

Plaintiffs also rely on, among other decisions, the preliminary injunction decision in *Widakuswara*, 2025 WL 1166400.  But the agency there at issue, USAGM, is unlike USAID where discretion over appropriations is concerned.  The FCAA requires USAGM to disburse congressional appropriations via grant agreements to its private, non-profit partner organizations— with a line-item amount designated to each entity. *Widakuswara*, 2025 WL 1166400, at *2.  In contrast, the authorizing and appropriations statutes pertaining to USAID allow substantial flexibility in foreign aid administration.  *See* Defs. Mem.  14-15; *infra* (discussing various Foreign Assistance Act authorities).

Plaintiffs also err in relying on *AIDS Vaccine Advocacy Coalition v. U.S. Department of State*, No. 25-cv-400, 2025 WL 752378 (D.D.C. Mar. 10, 2025), *appeal docketed*, No. 25-5097 (D.C. Cir. Apr. 2, 2025), because that opinion did not apply *Heckler v. Chaney*.

### D.    Alternative Adequate Remedies are Available to Plaintiffs.

As explained (Defs. Mem. 44–45), Plaintiffs fail to state a valid claim under the APA because the specialized statutory schemes for employment-related and contract-related claims provide an "adequate remedy in a court," precluding their APA claims under 5 U.S.C. § 704.  In arguing otherwise, Plaintiffs simply repeat the same argument refuted above about the purported insufficiency of those schemes for addressing Plaintiffs' systematic challenge to USAID's "dismantlement" (Pls. Opp. 21–22).  *Cf. Widakuswara*, 2025 WL 1288817, at *3 (in rejecting "dismantling" claim as not directed at "discrete" action, reasoning that "while" agency "employees and contractors might have viable, discrete claims with respect to their individual personnel actions, those claims must be pursued through other remedial channels").

Plaintiffs maintain that they can proceed under the APA because only "clear and convincing evidence" of legislative intent can preclude judicial review under the APA. Pls. Opp. 21-22 (citing *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)).  But the decision they cite is inapposite.  In *El Rio*, physicians challenged the denial of coverage under the Federally Supported Health Centers Assistance Act ("FSHCAA").  *Id.* at 1274.  The Department of Health and Human Services contended that the District Court lacked jurisdiction over the physicians' APA claim because the FSHCAA provided a removal mechanism allowing plaintiffs to bring claims in federal court without resorting to the APA.  The D.C. Circuit disagreed.  Because of the removal mechanism, individual physicians could not be certain of insurance coverage until *after* being sued.  *Id.*  Thus, "the physician must either risk exposure to personal liability, incur or require the health center to

14

incur potentially redundant medical malpractice insurance costs, contrary to the purpose of the FSHCAA, or forego providing services to [a] health center altogether." *Id.* at 1273. That process was "too 'doubtful' to constitute an adequate remedy" within the meaning of the APA, *id.* at 1270, so APA review of the physicians' claims was appropriate. But here, Congress has provided an adequate, exclusive remedy through the specialized statutory schemes that this Court examined in denying the preliminary injunction.

## III.    Defendants Are Entitled to Judgment on Plaintiffs' APA Claims

### A.    Plaintiffs Are Not Within the Zone of Interested Protected by the Statutes They Invoke.

Plaintiffs' APA claims seek to enforce FARRA and the appropriations statutes, but as explained (Defs. Mem. 45-47), they lack a cause of action under the APA to enforce those statutes because they are not within the zone of interests the statutes protect.

Plaintiffs assert (Pls. Opp. 24) that AFSA and AFGE are "among the 'intended beneficiaries' of the FCAA" under *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 616 (D.C. Cir. 2019). But the purpose of the particular appropriations statutes at issue here is to provide foreign assistance funds to the agencies for those agencies to distribute consistent with Government policies; the benefit to employees of USAID or contractors from that provision of funds is merely incidental. Congress does not provide agencies with funding for the sake of agency employees. Similarly, Congress did not, in enacting FARRA, create USAID as an independent agency for the benefit of USAID employees or contractors. Plaintiffs' only argument for why AFSA and AFGE should be allowed to predicate APA claims on those statutes is that their interests "'coincide systemically' with their members' interests," *id.* (quoting *Twin Rivers*, 934 F.3d at 616), meaning that if the employees are not within the zone of interest, neither are AFSA and AFGE. Any benefit to Oxfam from these statutes is likewise incidental at best. The fact that Oxfam "relies on USAID's

services and programs," *id.*, does not mean that Congress intended to allow this private party, which is not a direct recipient of USAID funding at all, to bring disputes under those statutes through the APA.

### B.    Defendants' Actions Are Authorized by Statute.

The Court should reject Plaintiffs' arguments that Defendants have violated or exceeded the authority under FARRA and the FCAA.

To recap, Congress enacted FARRA in 1998 to make USAID an "independent establishment," 22 U.S.C. § 6563 (citing 5 U.S.C. § 104), albeit "under the direct authority and foreign policy guidance of the Secretary of State," *id.* § 6592. FARRA gave the President a central role in determining USAID's structure, authorizing the President to provide for the "consolidation and streamlining" of USAID, including the "transfer" of USAID functions to the State Department or the "abolition" of the agency. *Id.* § 6601(a)(2), (d)(1). President Clinton chose to keep USAID a "distinct agency" subject to State Department control. *See Reorganization Plan and Report Submitted by President Clinton to the Congress on December 30, 1998, Pursuant to Section 1601 of the FARR Act*, *as contained in* Pub. L. No. 105-277, 112 Stat. 2681 (1998).

Against that background, Plaintiffs have not shown that USAID has been or will be dismantled in violation of FARRA or any other statute because USAID is still an "independent establishment." 22 U.S.C. § 6563 (citing 5 U.S.C. § 104) ("Unless abolished pursuant to the reorganization plan… there is within the Executive branch of Government the United States Agency for International Development as an [independent establishment]"); *see* AR_0265–66 (noting that Secretary Rubio, "as current acting Administrator of USAID, will continue to oversee the implementation" of certain programs and that "USAID would continue to operate" other processes "until appropriate legislation is enacted" to transfer those functions to the State Department). Plaintiffs' proposed functional analysis of whether an entity is an independent

16

establishment is not grounded in the statutory definition of that phrase. Pls. Opp. 25. An "independent establishment" is defined in relevant part as an entity "in the executive branch" that is "not an Executive department" or "part thereof." 5 U.S.C. § 104(1). This status has various legal consequences, rendering USAID an "agency" for many purposes and subjecting it to APA review. *See, e.g.*, 5 U.S.C. § 706; *DOJ v. FLRA*, 39 F.3d 361, 365 (D.C. Cir. 1994). But this status says nothing about USAID's personnel, functions, organizational structure, or real estate portfolio. Nor does it require USAID to remain independent of State Department control.

Plaintiffs are also incorrect to assert (Pls. Opp. 26-28) that FARRA's 60-day deadline for reorganization prohibits the actions taken here. In context, that provision directed the President to weigh in on Congress's decision to move USAID outside of the State Department, ensuring that the President would play a central role in Congress's effort to restructure foreign affairs agencies within the Executive Branch. While the President's authority to reorganize USAID *pursuant to FARRA* expired in 1998, the President retains independent authority to reorganize USAID, most notably under the FAA. *See supra* pp. 11–12. No provision of FARRA purports to constrain that independent authority.

Additionally, contrary to Plaintiffs' contention (Pls. Opp. 29-32), Defendants satisfied the "prior consultation" requirement under the 2024 FCAA. Even if Plaintiffs had standing to bring this claim—which they do not—the Secretary's February 3, 2025 letter and March 28, 2025 notifications to Congress comply with the FCAA. The 2024 FCAA defined the types of "reorganization" that require prior notice, including "any action" to "expand, eliminate, consolidate, or downsize" either "covered departments, agencies, or organizations" or "the United States official presence overseas," as well as actions to reduce staff. 138 Stat. at 844, § 7063(b). That list covers changes to the agency's organizational structure, its personnel, and its overseas

presence.  The February 3 and March 28 notices fully satisfy any notice obligation that may exist.

The February 3 notice explained that interim steps were taken to facilitate a meaningful review of

USAID's operations.  AR_0137–38.  The March 28 notice provided a detailed account of the

results of that review and the Secretary's intentions for future actions.  AR_0262–66.  No more

was required.

### C. Defendants' Actions Are Not Arbitrary and Capricious

Plaintiffs' arbitrary-and-capricious claim fares no better.  First, Plaintiffs argue (Pls. Opp.

32-35) that Defendants did not provide a rational connection between the facts and the challenged

decisions.  But the Court's review under the APA is "highly deferential and narrow," *Silver State*

*Land, LLC v. Schneider*, 145 F. Supp. 3d 113, 124 (D.D.C. 2015) (citations omitted), and a court

"is not to substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Defendants have provided a rational

explanation (Defs. Mem. 9-14), which is sufficient under the APA's deferential standard.  That

Plaintiffs disagree with Defendants' decision is not a basis for finding the decision arbitrary and

capricious.  *See Inv. Co. Inst. v. CFTC*, 720 F.3d 370, 380 (D.C. Cir. 2013) (rejecting argument

that "amounts to nothing more than [a] policy disagreement").  Second, Plaintiffs continue to argue

that Defendants did not consider various parties' or non-parties' "reliance interests."  Pls. Opp. 33-

34.  Plaintiffs have not shown that any party could have reasonably relied on USAID's funding

despite the wide enforcement discretion given to the Government in how to allocate

appropriations, and in any event, Defendants did consider these interests in making their decisions.

Defs. Mem. 59.  Third, contrary to Plaintiffs' argument (Pls. Opp. 34), Defendants did consider

alternative courses of action (Defs. Mem. 60).

IV.    **Plaintiffs' Allegations That Defendants Violated FARRA And Similar Statutes Are Not Constitutional Claims, Subject to Judicial Review.**

A.    **Plaintiffs' Separation Of Powers Claims Allege Violations of Statute.  They Are Not Constitutional Claims.**

Plaintiffs' constitutional claims share the same factual basis as their statutory claims and derive from them.  Under Plaintiffs' theory, dismantling USAID contravenes FARRA and multiple appropriations statutes, therefore Defendants are in violation of the separation of powers clause and Take Care Clause.  FAC ¶¶ 58-79.

Plaintiffs assert that the statutes on which Defendants have relied have "long since expired . . . and more recently Congress has expressly limited the authority of the Executive branch to reorganize USAID."  Pls. Opp. 38.  But they have not identified any statute that prohibits USAID's restructuring.  They do not dispute that FARRA and related statutes confer broad discretion on the President.  Plaintiffs offer only their subjective interpretation of how to effectuate policy.  And as part of their subjective interpretation and advocacy, Plaintiffs fundamentally misconstrue Defendants' actions.  As set forth above, Defendants' intent is to reorganize USAID and, *with the authorization of Congress* to abolish USAID:  "The Department anticipates . . . proposing legislation to abolish USAID as an independent establishment."  AR_0262.

The disputes at issue here concerning the implementation of statutes do not give rise to constitutional causes of action. Such "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims[.]" *Dalton*, 511 U.S. at 476; *see also Center for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 53 (D.D.C. 2020) ("*Dalton's* holding is explicit . . . [plaintiff] is merely recasting its statutory claims.").

B.    **Plaintiffs' Take Care Clause Claim Is Not Justiciable Because Plaintiffs Challenge Purely Political Actions.**

Plaintiffs' Take Care Clause claim suffers the same defect.  Plaintiffs are unable to persuasively distinguish *Dalton* or separate this claim from their statutory claims.  Pls. Opp. 38.

They do not acknowledge or consider the statutes authorizing and vesting discretion in the President to act. But as Defendants explained (Defs. Mem. 11–12), under the FAA, the President has explicit authority to "exercise any functions conferred upon him by this [Act] through such agency or officer of the United States [] as he shall direct," 22 U.S.C. § 2381(a), and has broad authority to administer aid programs "on such terms and conditions as [the President] may determine," *e.g., id.* § 2151b(c)(1). In cases where the President may "exercise . . . Executive discretion," the duty "imposed on the President is in no just sense ministerial. It is purely executive and political." *Mississippi v. Johnson*, 71 U.S. 475, 498–99 (1867); *see also Lujan v. Def. of Wildlife*, 504 U.S. 555, 577 (1992) (finding it improper for courts "to assume a position of authority over" the President's duty to "take Care that the Laws be faithfully executed").

The flaw in Plaintiffs' argument extends to their reliance on *Widakuswara v. Lake*, No. 25-cv-2390, 2025 WL 945869 at *6 (S.D.N.Y. Mar. 28, 2025), which they take as concluding that the President violates the Take Care Clause by refusing to carry out congressional commands. Pls. Opp. 38. That is incorrect, and in any event that decision addressed a different situation. In *Widakuswara*, as explained above, the District Court perceived VOA news service as having "gone completely dark with no signs of returning," 2025 WL 1166400 at *11, and explicitly contrasted USAID as "still standing." Here, USAID is continuing to disburse foreign aid until Congress approves a reorganization. *See supra* at 11.

Nor have Plaintiffs identified any statute Defendants *deliberately* violated "with impunity." Pls. Opp. 38 & 40. As Defendants have explained, they have undertaken efforts to comply with all applicable laws, including the FCAA, while they work with Congress to reorganize USAID.

Plaintiffs' conclusory allegations of acts taken in excess of statutory authority simply dispute the President's execution of Congress's laws, but that conduct is purely executive, political

and ill-suited to judicial review:  "[h]ow the President chooses to exercise the discretion Congress has granted him is not a matter for [the courts'] review."  *Dalton*, 511 U.S. at 476; *see also Citizens for Resp. & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 140 (D.D.C. 2018), *aff'd*, 924 F.3d 602 (D.C. Cir. 2019); *AFGE, AFL-CIO v. Trump*, 318 F. Supp. 3d 370, 440 (D.D.C. 2018) (following *Dalton* and questioning whether claims under the Take Care Clause are justiciable where plaintiffs failed to demonstrate intentional bad faith decision making on the part of the plaintiffs in executing certain executive orders) *rev'd on other grounds*, 929 F.3d 748 (D.C. Cir.).

Plaintiffs do not offer any independent basis for treating their Take Care Clause claim as "anything other than a rehashing of the same concern that animates" their statutory claims. *Center for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 245-250 (D.D.C. 2019).  Moreover, no court has read the Take Care Clause as opening the door to any plaintiff seeking to challenge how the President executes statutes.  Defs. Mem. 66.  Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials.

## V.    Plaintiffs' Overbroad Remedies Cannot Be Granted In Any Event

Although Plaintiffs' claims fail for lack of subject-matter jurisdiction or on the merits either for failure to state a claim or on summary judgment, in any event, if the Court finds any deficiency in the reasons Defendants have articulated for their conduct under the APA or on Plaintiffs' parallel constitutional claims, the proper course would be to direct the agencies to more fully explain that conduct, not to invalidate any of their actions—let alone to direct them, as Plaintiffs demand (via their proposed order, Doc. 51-25), to restore employment and contract arrangements as they existed in January 2024.  Constitutional and equitable principles ignored by Plaintiffs require that the extraordinary injunction they seek be no broader than necessary to accomplish the remedial function.  *Cf. Gill v. Whitford*, 585 U.S. 48, 73 (2018).

In demanding a structural injunction that would massively reconfigure USAID operations to their tastes without any legitimate legal basis, Plaintiffs ignore (Pls. Opp. 43-45) not only the equitable limitations on injunctions concerning federal employee relations, *cf. Sampson v. Murray*, 415 U.S. 61, 84 (1974) (emphasizing "the general [un]availability of preliminary injunctions in Government personnel cases"), but also the separation of powers principles that govern in the foreign affairs realm, as Defendants described (Defs. Mem. 72-73).  *See Widakuswara*, 2025 WL 1288817, at *5 (staying preliminary injunction pending appeal, where, by "requiring the restoration of all employees and contractors to their pre-March 14 status," preliminary injunction "interferes with" the "important responsibility" to "maintain[] control over personnel matters," and "implicat[ing] the Executive Branch's foreign-affairs authority.")  Entry of the Proposed Order would therefore be improper.  *See Cobell v. Kempthorne*, 455 F.3d 301, 317 (D.C. Cir. 2006)).

*     *     *     *     *

For the reasons above and those in Defendants' opening brief, the Court should grant Defendant's motion to dismiss and dismiss this case in its entirety.  In the alternative, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

Dated: May 12, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

LAUREN A. WETZLER
Deputy Director
Federal Programs Branch

*/s/ Michael P. Clendenen*
CHRISTOPHER D. EDELMAN
INDRANEEL SUR
Senior Counsel
MICHAEL P. CLENDENEN
RICHARD C. GILES
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-0693
Email: michael.p.clendenen@usdoj.gov

*Counsel for Defendants*