APPEAL,CLOSED,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00352–CJN</u>
### *Internal Use Only*

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES et al v. TRUMP et al
Assigned to: Judge Carl J. Nichols
Cause: 05:551 Administrative Procedure Act

Date Filed: 02/06/2025
Date Terminated: 07/25/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES** | represented by | **Karla A. Gilbride** |

**AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES**

represented by

**Karla A. Gilbride**
PUBLIC JUSTICE, P.C.
1620 L Street NW
Suite 630
Washington, DC 20036
202–797–8600
Fax: 202–232–7203
Email: kgilbride@citizen.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kayla Minton Kaufman**
DEMOCRACY FORWARD
P.O. Box 34553
Washington
Washington, DC 20043
202–448–9090
Email: kkaufman@democracyforward.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Bateman**
PUBLIC CITIZEN
1600 20th St NW
Washington, DC 20009
202–588–7739
Email: lbateman@citizen.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553

1

Washington, DC 20043
254–722–5745
Email: sperryman@democracyforward.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allison Marcy Zieve**
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588–1000
Fax: (202) 588–7795
Email: azieve@citizen.org
*ATTORNEY TO BE NOTICED*

**Kristen Paige Miller**
DEMOCRACY FORWARD
FOUNDATION
PO Box 34553
Washington, DC 20043
202–701–1782
Email: kmiller@democracyforward.org
*TERMINATED: 04/30/2025*
*ATTORNEY TO BE NOTICED*

**Rachel L. Fried**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–448–9090
Email: rfried@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–455–9060
Email: rthurston@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Kaitlyn Golden**
DEMOCRACY FORWARD
P.O. Box 34553
Washington
Washington, DC 20043
202–701–1789
Email: kgolden@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **AMERICAN FOREIGN SERVICE ASSOCIATION** | represented by | **Karla A. Gilbride** |

**AMERICAN FOREIGN SERVICE ASSOCIATION**

represented by

**Karla A. Gilbride**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kayla Minton Kaufman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Bateman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allison Marcy Zieve**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristen Paige Miller**
(See above for address)
*TERMINATED: 04/30/2025*
*ATTORNEY TO BE NOTICED*

**Rachel L. Fried**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robin F. Thurston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kaitlyn Golden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**OXFAM AMERICA, INC.**

represented by

**Kayla Minton Kaufman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristen Paige Miller**
(See above for address)
*TERMINATED: 04/30/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Bateman**
PUBLIC CITIZEN
Litigation Group
1600 20th St NW
Washington, DC 20009
202–588–7739
Email: lbateman@citizen.org
*ATTORNEY TO BE NOTICED*

**Kaitlyn Golden**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**                    represented by   **Christopher D. Edelman**
*President of the United States of America*             U.S. DEPARTMENT OF JUSTICE
                                                        1100 L Street, NW
                                                        Washington, DC 20530
                                                        202–305–8659
                                                        Email: christopher.edelman@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Eric Hamilton**
                                                        U.S. DEPARTMENT OF JUSTICE
                                                        950 Pennsylvania Avenue NW
                                                        Washington, DC 20530
                                                        202–514–2000
                                                        Email: eric.hamilton@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Indraneel Sur**
                                                        U.S. DEPARTMENT OF JUSTICE
                                                        1100 L St. NW
                                                        Washington, DC 20530
                                                        202–616–8488

Email: Indraneel.Sur@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Wetzler**
DOJ–CIV
1100 L St. NW
Ste 11,200
Washington, DC 20005
202–514–4782
Email: lauren.wetzler@usdoj.gov
*TERMINATED: 05/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy M. Canevari**
DEPARTMENT OF JUSTICE
1100 L St., N.W.
Washington, DC 20001
202–616–8040
Email: dorothy.m.canevari@usdoj.gov
*TERMINATED: 02/12/2025*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
(202) 353–0693
Fax: (202) 616–8460
Email: michael.p.clendenen@usdoj.gov
*TERMINATED: 05/15/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES DEPARTMENT OF STATE**             represented by     **Christopher D. Edelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Hamilton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Wetzler**
(See above for address)

*TERMINATED: 05/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy M. Canevari**
(See above for address)
*TERMINATED: 02/12/2025*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*TERMINATED: 05/15/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT**　　represented by　**Christopher D. Edelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Hamilton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Wetzler**
(See above for address)
*TERMINATED: 05/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy M. Canevari**
(See above for address)
*TERMINATED: 02/12/2025*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*TERMINATED: 05/15/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES TREASURY DEPARTMENT**　　represented by　**Christopher D. Edelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Hamilton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Wetzler**
(See above for address)
*TERMINATED: 05/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy M. Canevari**
(See above for address)
*TERMINATED: 02/12/2025*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*TERMINATED: 05/15/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **MARCO A. RUBIO**<br>*Secretary of State, and Acting*<br>*Administrator of United States Agency for*<br>*International Development* | represented by | **Christopher D. Edelman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Eric Hamilton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Wetzler**
(See above for address)
*TERMINATED: 05/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy M. Canevari**
(See above for address)
*TERMINATED: 02/12/2025*

*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*TERMINATED: 05/15/2025*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**SCOTT BESSENT**                     represented by    **Christopher D. Edelman**
*Secretary of Treasury*                                (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Eric Hamilton**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Indraneel Sur**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Lauren Wetzler**
                                                      (See above for address)
                                                      *TERMINATED: 05/22/2025*
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Dorothy M. Canevari**
                                                      (See above for address)
                                                      *TERMINATED: 02/12/2025*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michael Patrick Clendenen**
                                                      (See above for address)
                                                      *TERMINATED: 05/15/2025*
                                                      *ATTORNEY TO BE NOTICED*

<u>Movant</u>

**FORMER SENIOR NATIONAL**            represented by    **Alexis Jane Loeb**
**SECURITY OFFICIALS**                                 FARELLA BRAUN & MARTEL LLP
                                                      One Bush Street
                                                      Suit 900
                                                      San Francisco, CA 94104
                                                      415–954–4400
                                                      Fax: 415–954–4480
                                                      Email: aloeb@fbm.com
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

8

**Kyle Andrew McLorg**
FARELLA BRAUN & MARTEL LLP
One Bush Street
Suit 900
San Francisco, CA 94104
415–954–4915
Fax: 415–954–4480
Email: kmclorg@fbm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca S. LeGrand**
LEGRAND LAW PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
202–587–5725
Email: rebecca@legrandpllc.com
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**RESULTS EDUCATIONAL FUND, INC.**    represented by    **Brad C. Deutsch**
FOSTER GARVEY P.C.
3000 K St., NW
Suite 420
Washington, DC 20007
202–298–1793
Email: brad.deutsch@foster.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**ACTIONAID USA**    represented by    **Brad C. Deutsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**MEMBERS OF CONGRESS**    represented by    **Hannah Meredith Kieschnick**
PUBLIC JUSTICE, P.C.
475 14th St.
Suite Unit 610
Oakland, CA 94612
510–622–8150
Fax: 202–232–7203
Email: hkieschnick@publicjustice.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sharon McGowan**
PUBLIC JUSTICE
1620 L St NW
Suite 630
Washington, DC 20036
202–725–8576
Email: smcgowan@publicjustice.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah Marie Nicholls**
PUBLIC JUSTICE, P.C.
1620 L Street NW
Suite 630
Washington, DC 20036
202–797–8600
Email: lnicholls@publicjustice.net
*ATTORNEY TO BE NOTICED*

**Movant**

| | | |
|---|---|---|
| **CONSTITUTIONAL ACCOUNTABILITY CENTER** | represented by | **Brianne Jenna Gorod**<br>CONSTITUTIONAL ACCOUNTABILITY CENTER<br>1200 18th Street, NW<br>Suite 501<br>Washington, DC 20036<br>(202) 296–6889 ext. 304<br>Email: brianne@theusconstitution.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Miriam Becker–Cohen**<br>CONSTITUTIONAL ACCOUNTABILITY CENTER<br>1200 18th Street, NW<br>Suite 501<br>Washington, DC 20036<br>202–296–6889<br>Email: miriam@theusconstitution.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **UNITARIAN UNIVERSALIST SERVICE COMMITTEE** | represented by | **Brad C. Deutsch**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|

| 02/06/2025 | 1 | COMPLAINT against SCOTT BESSENT, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT ( Filing fee $ 405 receipt number ADCDC–11463059) filed by AMERICAN FOREIGN SERVICE ASSOCIATION, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES. (Attachments: # 1 Civil Cover Sheet, # 2 DCAO Summons, # 3 Department of State Summons, # 4 Donald J. Trump Summons, # 5 Marco Rubio (Secretary) Summons, # 6 Marco Rubio (USAID) Summons, # 7 Scott Bessent Summons, # 8 Treasury Summons, # 9 USAG Summons, # 10 USAID Summons)(Golden, Kaitlyn) (Entered: 02/06/2025) |
|---|---|---|
| 02/06/2025 | 2 | NOTICE of Appearance by Kaitlyn Golden on behalf of AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Golden, Kaitlyn) (Entered: 02/06/2025) |
| 02/06/2025 | 3 | NOTICE of Appearance by Kristen Paige Miller on behalf of AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Miller, Kristen) (Entered: 02/06/2025) |
| 02/06/2025 | 4 | NOTICE of Appearance by Robin F. Thurston on behalf of AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Thurston, Robin) (Entered: 02/06/2025) |
| 02/06/2025 | 5 | NOTICE of Appearance by Rachel L. Fried on behalf of AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Fried, Rachel) (Entered: 02/06/2025) |
| 02/06/2025 | 6 | NOTICE of Appearance by Allison Marcy Zieve on behalf of All Plaintiffs (Zieve, Allison) (Entered: 02/06/2025) |
| 02/07/2025 | | Case Assigned to Judge Carl J. Nichols. (znmw) (Entered: 02/07/2025) |
| 02/07/2025 | 7 | SUMMONS (9) Issued Electronically as to SCOTT BESSENT, MARCO RUBIO (2), DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 02/07/2025) |
| 02/07/2025 | 8 | ERRATA to Complaint by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Zieve, Allison) (Entered: 02/07/2025) |
| 02/07/2025 | 9 | MOTION for Temporary Restraining Order by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Memorandum of Law, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Proposed Order)(Miller, Kristen) (Entered: 02/07/2025) |
| 02/07/2025 | 10 | NOTICE of Appearance by Lauren Bateman on behalf of All Plaintiffs (Bateman, Lauren) (Entered: 02/07/2025) |
| 02/07/2025 | | MINUTE ORDER. The parties are hereby ORDERED to appear for an in–person hearing on the 9 Motion for Temporary Restraining Order on February 7, 2025 at 3:00 PM in Courtroom 17. Plaintiffs shall notify counsel for defendants of the contents of this Minute Order and the time and place of the hearing. So ORDERED by Judge Carl |

| | | |
|---|---|---|
| | | J. Nichols on 2/7/25. (lccjn1) (Entered: 02/07/2025) |
| 02/07/2025 | | NOTICE: Members of the Public and Media are permitted to attend the TRO hearing scheduled this afternoon **in person**. There will **not** be a public telephone line connected; however, the courthouse media access room will be available. (zcam) (Entered: 02/07/2025) |
| 02/07/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kayla M. Kaufman, Filing fee $ 100, receipt number ADCDC–11465386. Fee Status: Fee Paid. by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Exhibit Motion, # 2 Exhibit Certificate of Good Standing)(Golden, Kaitlyn) (Entered: 02/07/2025) |
| 02/07/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Skye Perryman, Filing fee $ 100, receipt number ADCDC–11465454. Fee Status: Fee Paid. by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Exhibit Motion, # 2 Exhibit Certificate of Good Standing)(Golden, Kaitlyn) (Entered: 02/07/2025) |
| 02/07/2025 | | MINUTE ORDER. The Court having considered Plaintiffs' 11 Motion For Admission *Pro Hac Vice* of Kayla M. Kaufman, and it appearing to the Court that the attorney referenced therein meets the requirements for *pro hac vice* admission under Local Civil Rule 83.2(e), it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Kayla M. Kaufman is ADMITTED to practice before the Court *pro hac vice*. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 2/7/25. (lccjn1) (Entered: 02/07/2025) |
| 02/07/2025 | | MINUTE ORDER. The Court having considered Plaintiffs' 12 Motion For Admission *Pro Hac Vice* of Skye Perryman, and it appearing to the Court that the attorney referenced therein meets the requirements for *pro hac vice* admission under Local Civil Rule 83.2(e), it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Skye Perryman is ADMITTED to practice before the Court *pro hac vice*. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 2/7/25. (lccjn1) (Entered: 02/07/2025) |
| 02/07/2025 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 2/7/2025 re 9 MOTION for Temporary Restraining Order filed by AMERICAN FOREIGN SERVICE ASSOCIATION, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES. Further Order to be issued by the Court. Court Reporter: Lorraine Herman. (zcam) (Entered: 02/07/2025) |
| 02/07/2025 | 13 | NOTICE of Appearance by Christopher D. Edelman on behalf of All Defendants (Edelman, Christopher) (Entered: 02/07/2025) |
| 02/07/2025 | 14 | NOTICE of Appearance by Dorothy M. Canevari on behalf of All Defendants (Canevari, Dorothy) (Entered: 02/07/2025) |
| 02/07/2025 | 15 | ORDER granting in part and denying in part 9 Motion for TRO. Signed by Judge Carl J. Nichols on 2/7/25. (lccjn1) (Entered: 02/07/2025) |
| 02/09/2025 | 16 | TRANSCRIPT OF TEMPORARY RESTRAINING ORDER PROCEEDINGS before Judge Carl J. Nichols, held on February 7, 2025. Page Numbers: 1–57. Date of Issuance: February 9, 2025. Court Reporter: Lorraine Herman. Email: |

| | | |
|---|---|---|
| | | Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/2/2025. Redacted Transcript Deadline set for 3/12/2025. Release of Transcript Restriction set for 5/10/2025.(Herman, Lorraine) (Entered: 02/09/2025) |
| 02/10/2025 | <u>17</u> | TRANSCRIPT OF PRELIMINARY INJUNCTION PROCEEDINGS, before Judge Carl J. Nichols, held on February 13, 2025. Page Numbers: 1−57. Date of Issuance: March 5, 2025. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov.Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/3/2025. Redacted Transcript Deadline set for 3/13/2025. Release of Transcript Restriction set for 5/11/2025.(Herman, Lorraine) (Main Document 17 replaced on 3/5/2025) (zdp). Modified on 3/5/2025; to correct docket text (zdp). (Entered: 02/10/2025) |
| 02/10/2025 | <u>18</u> | NOTICE of Appearance by Karla A. Gilbride on behalf of All Plaintiffs (Gilbride, Karla) (Main Document 18 replaced on 2/10/2025) (zdp). (Entered: 02/10/2025) |
| 02/10/2025 | <u>19</u> | Emergency MOTION for Hearing *to Show Cause* by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # <u>1</u> Exhibit Declaration of Patricia Doe, # <u>2</u> Exhibit Declaration of Quinn Doe, # <u>3</u> Exhibit Declaration of Rebecca Doe, # <u>4</u> Exhibit Declaration of Ursula Doe, # <u>5</u> Exhibit Declaration of Mary Doe, # <u>6</u> Exhibit Declaration of Erica Doe, # <u>7</u> Text of Proposed Order Proposed Order)(Bateman, Lauren) (Entered: 02/10/2025) |

| 02/10/2025 | 20 | RESPONSE re 9 MOTION for Temporary Restraining Order filed by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Attachments: # 1 Declaration of Peter Marocco)(Edelman, Christopher) (Entered: 02/10/2025) |
|---|---|---|
| 02/10/2025 | 21 | NOTICE *of Correction* by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT (Edelman, Christopher) (Entered: 02/10/2025) |
| 02/11/2025 |  | NOTICE: Members of the Public and Media are permitted to attend the Preliminary Injunction hearing scheduled for Wednesday, February 12, 2025 **in person**. There will **not** be a public telephone line connected; however, the courthouse media access room will be available. (zcam) (Entered: 02/11/2025) |
| 02/11/2025 | 22 | RESPONSE re 19 Emergency MOTION for Hearing *to Show Cause* filed by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Attachments: # 1 Declaration of Jason Gray)(Edelman, Christopher) (Entered: 02/11/2025) |
| 02/11/2025 | 23 | Unopposed MOTION for Leave to File Excess Pages by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Text of Proposed Order)(Golden, Kaitlyn) (Entered: 02/11/2025) |
| 02/11/2025 |  | MINUTE ORDER. Plaintiffs' 23 Unopposed Motion for Leave to File in Excess of Page Limits is GRANTED. Plaintiffs' reply brief may contain up to 35 pages. So ORDERED by Judge Carl J. Nichols on 2/11/25. (lccjn1) (Entered: 02/11/2025) |
| 02/11/2025 | 24 | MOTION for Leave to File *Supplement to the Record* by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Marcus Doe, # 3 Declaration of Nancy Doe, # 4 Declaration of Nathan Doe, # 5 Declaration of Olivia Doe, # 6 Declaration of Ruth Doe, # 7 Declaration of Sarah Doe, # 8 Declaration of Thomasina Doe, # 9 Declaration of Ulysses Doe, # 10 Declaration of Virginia Doe, # 11 Declaration of Walter Doe, # 12 Declaration of Wanda Doe, # 13 Declaration of Xavier Doe, # 14 Declaration of Yolanda Doe, # 15 Declaration of Zeb Doe, # 16 Declaration of Jane Doe, # 17 Declaration of Randall Chester, # 18 Text of Proposed Order)(Golden, Kaitlyn) (Attachment 11 replaced on 2/13/2025) (zdp). (Attachment 12 replaced on 2/13/2025) (zdp). Modified on 2/13/2025; replaced at the request of counsel (zdp). (Attachment 6 replaced on 2/14/2025) (zdp). (Entered: 02/11/2025) |
| 02/11/2025 | 25 | REPLY to opposition to motion re 9 MOTION for Temporary Restraining Order *Reply in Support* filed by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Golden, Kaitlyn) Modified docket text on 2/12/2025 (zdp). (Entered: 02/11/2025) |
| 02/12/2025 |  | Set/Reset Hearings: Preliminary Injunction Hearing RESET for 2/13/2025 at 11:00 AM in Courtroom 17– In Person before Judge Carl J. Nichols. NOTE: Members of the Public and Media are permitted to attend **in person**. There will **not** be a public telephone line connected; however, the courthouse media access room will be available. (zcam) (Entered: 02/12/2025) |

| 02/12/2025 | 26 | NOTICE of Appearance by Lauren Wetzler on behalf of All Defendants (Wetzler, Lauren) (Entered: 02/12/2025) |
|---|---|---|
| 02/12/2025 | 27 | NOTICE OF SUBSTITUTION OF COUNSEL by Indraneel Sur on behalf of All Defendants Substituting for attorney DOROTHY M. CANEVARI (Sur, Indraneel) (Entered: 02/12/2025) |
| 02/12/2025 | 28 | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 1:25–cv–400. (Edelman, Christopher) (Entered: 02/12/2025) |
| 02/12/2025 | 29 | NOTICE of Appearance by Eric Hamilton on behalf of All Defendants (Hamilton, Eric) (Entered: 02/12/2025) |
| 02/13/2025 | 30 | AMENDED COMPLAINT against All Defendants filed by AMERICAN FOREIGN SERVICE ASSOCIATION, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, OXFAM AMERICA, INC.. (Attachments: # 1 Exhibit A, # 2 Redline to Complaint)(Golden, Kaitlyn) (Entered: 02/13/2025) |
| 02/13/2025 | 31 | ORDER amending TRO. Signed by Judge Carl J. Nichols on 2/13/25. (lccjn1) (Entered: 02/13/2025) |
| 02/13/2025 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Preliminary Injunction held on 2/13/2025. Government Supplemental Facts due by 2/14/2025. Further Orders and Opinion to be issued by the Court. Court Reporter: Lorraine Herman. (zcam) (Entered: 02/13/2025) |
| 02/14/2025 | 32 | NOTICE. Signed by Judge Carl J. Nichols on 2/14/25. (lccjn1) (Entered: 02/14/2025) |
| 02/14/2025 | 33 | NOTICE of Appearance by Kayla Minton Kaufman on behalf of OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Minton Kaufman, Kayla) (Entered: 02/14/2025) |
| 02/14/2025 | 34 | NOTICE of Appearance by Skye Perryman on behalf of OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION (Perryman, Skye) (Entered: 02/14/2025) |
| 02/14/2025 | 35 | SUPPLEMENTAL MEMORANDUM to re 20 Response to motion, filed by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Attachments: # 1 Declaration of Pete Marocco)(Edelman, Christopher) (Entered: 02/14/2025) |
| 02/17/2025 | 36 | MOTION for Leave to File *Supplement to the Record* by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Exhibit Third Declaration of Randall Chester, # 2 Exhibit Declaration of Terry Doe, # 3 Exhibit Declaration of Emilia Doe, # 4 Text of Proposed Order)(Miller, Kristen) (Entered: 02/17/2025) |
| 02/18/2025 | 37 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD J. TRUMP served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 38 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. MARCO RUBIO served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 39 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. (Golden, Kaitlyn) (Entered: 02/18/2025) |

| 02/18/2025 | 40 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. SCOTT BESSENT served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 41 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF STATE served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 42 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES TREASURY DEPARTMENT served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 43 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 2/13/2025. (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 44 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT served on 2/13/2025 (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | 45 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 2/13/2025. Answer due for ALL FEDERAL DEFENDANTS by 4/14/2025. (Golden, Kaitlyn) (Entered: 02/18/2025) |
| 02/18/2025 | | NOTICE of Hearing: Telephone Conference set for 2/19/2025 at 11:30 AM before Judge Carl J. Nichols. (zglw) (Entered: 02/18/2025) |
| 02/19/2025 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Conference held on 2/19/2025. Defendants' supplemental brief and declaration due by noon on 2/20/2025. (Court Reporter Lorraine Herman.) (zakb) (Entered: 02/19/2025) |
| 02/20/2025 | 46 | NOTICE *of Filing Declaration* by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT re Telephone Conference, Set Deadlines/Hearings (Attachments: # 1 Declaration Pete Marocco)(Edelman, Christopher) (Entered: 02/20/2025) |
| 02/20/2025 | 47 | MOTION for Leave to File *Supplement to the Record* by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Exhibit Fourth Declaration of Randall Chester, # 2 Text of Proposed Order)(Miller, Kristen) (Entered: 02/20/2025) |
| 02/21/2025 | 48 | ORDER denying 9 Motion for Preliminary Injunction. Signed by Judge Carl J. Nichols on 2/21/25. (lccjn1) (Entered: 02/21/2025) |
| 02/21/2025 | 49 | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on 2/21/25. (lccjn1) (Entered: 02/21/2025) |
| 03/05/2025 | 50 | TRANSCRIPT OF TELEPHONE STATUS HEARING, before Judge Carl J. Nichols, held on February 19, 2025. Page Numbers: 1–23. Date of Issuance: March 5, 2025. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form |

| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/26/2025. Redacted Transcript Deadline set for 4/5/2025. Release of Transcript Restriction set for 6/3/2025.(Herman, Lorraine) (Entered: 03/05/2025) |
|---|---|---|
| 03/10/2025 | 51 | MOTION for Summary Judgment by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Exhibit List, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Text of Proposed Order)(Golden, Kaitlyn) (Entered: 03/10/2025) |
| 03/10/2025 | 52 | MOTION to Expedite *Briefing on Summary Judgment* by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Text of Proposed Order)(Golden, Kaitlyn) (Entered: 03/10/2025) |
| 03/11/2025 | 53 | WITHDRAWN PURSUANT TO NOTICE FILED 3/13/2025..... MOTION for Temporary Restraining Order by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Attachments: # 1 Text of Proposed Order)(Golden, Kaitlyn) Modified on 3/17/2025 (znmw). (Entered: 03/11/2025) |
| 03/11/2025 | | MINUTE ORDER. In light of Plaintiff's 53 Motion for Temporary Restraining Order, it is ORDERED that by 10:00am on March 12, 2025, the Parties shall meet, confer, and file a Joint Status Report addressing a proposed briefing schedule for the 53 Motion. The Parties may also address any other issues that they believe will be helpful to the Court. Any disagreements should be noted in the Joint Status Report. So ORDERED by Judge Carl J. Nichols on 3/11/25. (lccjn1) (Entered: 03/11/2025) |
| 03/11/2025 | 54 | NOTICE of Appearance by Michael Patrick Clendenen on behalf of DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT (Clendenen, Michael) (Entered: 03/11/2025) |
| 03/11/2025 | 55 | Memorandum in opposition to re 52 Motion to Expedite filed by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Clendenen, |

| | | Michael) (Entered: 03/11/2025) |
|---|---|---|
| 03/11/2025 | 56 | Joint STATUS REPORT by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Clendenen, Michael) (Entered: 03/11/2025) |
| 03/11/2025 | | MINUTE ORDER. Upon consideration of the 56 Joint Status Report, it is hereby ORDERED that Defendants shall respond to Plaintiffs' 53 Motion by 4:00 p.m. on March 12, 2025, and that Plaintiff shall file any reply by 12:00 p.m. on March 13, 2025. So ORDERED by Judge Carl J. Nichols on 3/11/25. (lccjn1) (Entered: 03/11/2025) |
| 03/12/2025 | 57 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alexis Loeb, Filing fee $ 100, receipt number ADCDC–11536806. Fee Status: Fee Paid. by Former Senior National Security Officials. (Attachments: # 1 Declaration of Alexis Loeb, # 2 Exhibit Certificate of Standing)(LeGrand, Rebecca) (Entered: 03/12/2025) |
| 03/12/2025 | 58 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kyle McLorg, Filing fee $ 100, receipt number ADCDC–11536991. Fee Status: Fee Paid. by Former Senior National Security Officials. (Attachments: # 1 Declaration of Kyle McLorg, # 2 Exhibit Certificate of Standing)(LeGrand, Rebecca) (Entered: 03/12/2025) |
| 03/12/2025 | 59 | Memorandum in opposition to re 53 Motion for TRO filed by DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES TREASURY DEPARTMENT, MARCO RUBIO, SCOTT BESSENT. (Attachments: # 1 Declaration of Erica Carr, # 2 Text of Proposed Order)(Clendenen, Michael) (Entered: 03/12/2025) |
| 03/12/2025 | 60 | REPLY to opposition to motion re 52 Motion to Expedite filed by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION. (Golden, Kaitlyn) (Entered: 03/12/2025) |
| 03/13/2025 | 61 | WITHDRAWAL of Motion by OXFAM AMERICA, INC., AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION re 53 MOTION for Temporary Restraining Order filed by OXFAM AMERICA, INC., AMERICAN FOREIGN SERVICE ASSOCIATION, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES . (Golden, Kaitlyn) (Entered: 03/13/2025) |
| 03/13/2025 | | MINUTE ORDER. Upon consideration of the 52 Motion to Expedite Briefing on Summary Judgment, it is hereby ORDERED that the Motion is GRANTED IN PART. It is further ORDERED that Defendants shall submit their combined motion to dismiss and opposition to Plaintiffs' motion for summary judgment on or before April 7, 2025; Plaintiffs shall submit their combined opposition to Defendants' motion to dismiss and reply in support of their motion for summary judgment on or before April 21, 2025; and Defendants shall submit a reply in support of their motion to dismiss on or before May 5, 2025. So ORDERED by Judge Carl J. Nichols on 3/13/25. (lccjn1) (Entered: 03/13/2025) |
| 03/14/2025 | | MINUTE ORDER. The Court having considered the 57 Motion For Admission Pro Hac Vice of Alexis Loeb, and it appearing to the Court that the attorney referenced therein meets the requirements for pro hac vice admission under Local Civil Rule |

| | | |
|---|---|---|
| | | 83.2(e), it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Alexis Loeb is ADMITTED to practice before the Court pro hac vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 3/14/25. (lccjn1) (Entered: 03/14/2025) |
| 03/14/2025 | | MINUTE ORDER. The Court having considered the 58 Motion For Admission Pro Hac Vice of Kyle McLorg, and it appearing to the Court that the attorney referenced therein meets the requirements for pro hac vice admission under Local Civil Rule 83.2(e), it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Kyle McLorg is ADMITTED to practice before the Court pro hac vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 3/14/25. (lccjn1) (Entered: 03/14/2025) |
| 03/17/2025 | 62 | NOTICE of Appearance by Alexis Jane Loeb on behalf of Former Senior National Security Officials (Loeb, Alexis) (Entered: 03/17/2025) |
| 03/17/2025 | 63 | NOTICE of Appearance by Kyle Andrew McLorg on behalf of Former Senior National Security Officials (McLorg, Kyle) (Entered: 03/17/2025) |
| 03/17/2025 | 64 | Unopposed MOTION for Leave to File *Amici Curiae Brief* by Former Senior National Security Officials. (Attachments: # 1 Exhibit A – Brief of Amici Curiae Former Senior National Security Officials In Support of Plaintiffs' Motion for Summary Judgment, # 2 Exhibit B – Proposed Order Granting Amici Former Senior National Security Officials' Unopposed Motion for Leave to File Amici Curiae Brief)(Loeb, Alexis) (Entered: 03/17/2025) |
| 03/17/2025 | 65 | NOTICE of Appearance by Brad C. Deutsch on behalf of RESULTS Educational Fund, Inc., ActionAid USA, UNITARIAN UNIVERSALIST SERVICE COMMITTEE (Deutsch, Brad) (Entered: 03/17/2025) |
| 03/17/2025 | 66 | MOTION for Leave to File *Brief Amicus Curiae In Support of Plaintiffs Motion for Summary Judgment* by RESULTS Educational Fund, Inc., ActionAid USA, UNITARIAN UNIVERSALIST SERVICE COMMITTEE. (Attachments: # 1 Exhibit 1 (Amicus Brief), # 2 Exhibit 2 (Proposed Order))(Deutsch, Brad) (Entered: 03/17/2025) |
| 03/31/2025 | 67 | NOTICE of Appearance by Sharon McGowan on behalf of MEMBERS OF CONGRESS (McGowan, Sharon) (Entered: 03/31/2025) |
| 03/31/2025 | 68 | MOTION for Leave to File Amicus Brief by MEMBERS OF CONGRESS. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Exhibit Proposed Order)(McGowan, Sharon) (Entered: 03/31/2025) |
| 04/07/2025 | 69 | ADMINISTRATIVE RECORD *Certification* by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (Edelman, Christopher) (Entered: 04/07/2025) |
| 04/07/2025 | 70 | MOTION to Dismiss *or in the Alternative, Motion for Summary Judgment* by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. |

| | | (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(Edelman, Christopher) (Entered: 04/07/2025) |
|---|---|---|
| 04/07/2025 | <u>71</u> | RESPONSE re 51 MOTION for Summary Judgment filed by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (Attachments: # <u>1</u> Response to Plaintiffs' Statement of Undisputed Material Facts)(Edelman, Christopher) (Entered: 04/07/2025) |
| 04/07/2025 | 72 | MOTION for Summary Judgment by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (See docket entry <u>70</u> to view document) (zdp) (Entered: 04/08/2025) |
| 04/15/2025 | <u>73</u> | NOTICE of Appearance by Leah Marie Nicholls on behalf of MEMBERS OF CONGRESS (Nicholls, Leah) (Entered: 04/15/2025) |
| 04/21/2025 | <u>74</u> | REPLY to opposition to motion re <u>51</u> Motion for Summary Judgment,, filed by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. (Golden, Kaitlyn) (Entered: 04/21/2025) |
| 04/21/2025 | <u>75</u> | RESPONSE re 72 MOTION for Summary Judgment, 70 MOTION to Dismiss *or in the Alternative, Motion for Summary Judgment* filed by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. (Golden, Kaitlyn) (Entered: 04/21/2025) |
| 04/24/2025 | <u>76</u> | NOTICE OF SUPPLEMENTAL AUTHORITY by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC. (Bateman, Lauren) (Entered: 04/24/2025) |
| 04/25/2025 | <u>77</u> | Consent MOTION for Leave to File Amicus Brief by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # <u>1</u> Exhibit Proposed Amicus Brief, # <u>2</u> Text of Proposed Order)(Gorod, Brianne) (Entered: 04/25/2025) |
| 04/25/2025 | <u>78</u> | NOTICE of Appearance by Miriam Becker–Cohen on behalf of CONSTITUTIONAL ACCOUNTABILITY CENTER (Becker–Cohen, Miriam) (Entered: 04/25/2025) |
| 04/28/2025 | <u>79</u> | MOTION for Extension of Time to File Response/Reply as to 72 MOTION for Summary Judgment, <u>70</u> MOTION to Dismiss *or in the Alternative, Motion for Summary Judgment* by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (Attachments: # <u>1</u> Text of Proposed Order)(Clendenen, Michael) (Entered: 04/28/2025) |
| 04/28/2025 | <u>80</u> | RESPONSE re <u>79</u> MOTION for Extension of Time to File Response/Reply as to 72 MOTION for Summary Judgment, <u>70</u> MOTION to Dismiss *or in the Alternative, Motion for Summary Judgment* filed by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. (Bateman, Lauren) (Entered: 04/28/2025) |

| 04/30/2025 | 81 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. Attorney Kristen Paige Miller terminated. (Miller, Kristen) (Entered: 04/30/2025) |
|---|---|---|
| 05/05/2025 | | MINUTE ORDER. It is hereby ORDERED that the government's 79 Motion for Extension of Time is GRANTED. The government shall file its reply in support of its motion to dismiss, or in the alternative, motion for summary judgment, on or before May 12, 2025. So ORDERED by Judge Carl J. Nichols on 5/5/25. (lccjn1) (Entered: 05/05/2025) |
| 05/05/2025 | 82 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Hannah M. Kieschnick, Filing fee $ 100, receipt number ADCDC–11666847. Fee Status: Fee Paid. by MEMBERS OF CONGRESS. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Nicholls, Leah) (Attachment 1 replaced on 5/5/2025) (zdp). (Entered: 05/05/2025) |
| 05/08/2025 | | MINUTE ORDER. The Court having considered the 82 Motion for Admission Pro Hac Vice of Hannah M. Kieschnick, and it appearing to the Court that the attorney referenced therein meets the requirements for pro hac vice admission under Local Civil Rule 83.2(e), it is hereby ORDERED that the motion is GRANTED and that Hannah M. Kieschnick is ADMITTED to practice before the Court pro hac vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. So ORDERED by Judge Carl J. Nichols on 5/8/25. (lccjn1) (Entered: 05/08/2025) |
| 05/12/2025 | 83 | REPLY to opposition to motion re 72 Motion for Summary Judgment, 70 Motion to Dismiss, filed by SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (Clendenen, Michael) (Entered: 05/12/2025) |
| 05/15/2025 | 84 | NOTICE OF WITHDRAWAL OF APPEARANCE as to SCOTT BESSENT, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. Attorney Michael Patrick Clendenen terminated. (Clendenen, Michael) (Entered: 05/15/2025) |
| 05/16/2025 | 85 | JOINT APPENDIX *Pursuant to Local Rule 7(n)* by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. (Bateman, Lauren) (Entered: 05/16/2025) |
| 05/22/2025 | 86 | NOTICE OF WITHDRAWAL OF APPEARANCE as to SCOTT BESSENT, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. Attorney Lauren Wetzler terminated. (Wetzler, Lauren) (Entered: 05/22/2025) |
| 05/30/2025 | | MINUTE ORDER. On May 3, 2025, a motions panel of the Court of Appeals issued an order in Case No. 25–5144, *Widakuswara et al. v. Lake*, which stayed in part several preliminary injunctions issued by the district court in litigation regarding the United States Agency for Global Media (USAGM). Among other things, the motions panel held that "the district court likely lacked subject–matter jurisdiction to enjoin USAGM's personnel actions." On May 22 and 28, 2025, the en banc Court of Appeals |

| | | issued orders concerning the petition for en banc rehearing of the motions panel's order. It is therefore ORDERED that, on or before June 6, 2025, the parties shall file supplemental briefs, not to exceed 15 pages, regarding the import of those developments on this case. The parties' briefs should specifically address whether and to what extent the motions panel's decision is binding on the Court in light of its procedural posture and the pertinent factual differences, if any, between the claims in this case and those involving USAGM. So ORDERED by Judge Carl J. Nichols on 5/30/25. (lccjn1) (Entered: 05/30/2025) |
|---|---|---|
| 06/02/2025 | 87 | NOTICE of Appearance by Hannah Meredith Kieschnick on behalf of MEMBERS OF CONGRESS (Kieschnick, Hannah) (Main Document 87 replaced on 6/3/2025) (zdp). (Entered: 06/02/2025) |
| 06/06/2025 | 88 | RESPONSE TO ORDER OF THE COURT re Order,,,,, Set Deadlines,,,, re: Widakuswara Stay by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. (Attachments: # 1 Exhibit 1)(Golden, Kaitlyn) Modified docket text on 6/12/2025 (zdp). (Entered: 06/06/2025) |
| 06/06/2025 | 89 | RESPONSE TO ORDER OF THE COURT re Order,,,,, Set Deadlines,,,, *re: Widakuswara Stay* filed by SCOTT BESSENT, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES TREASURY DEPARTMENT. (Sur, Indraneel) (Entered: 06/06/2025) |
| 07/25/2025 | | MINUTE ORDER. It is hereby ORDERED that the 64 66 68 77 Motions for Leave to File Amicus Briefs are GRANTED. So ORDERED by Judge Carl J. Nichols on 7/25/25. (lccjn1) (Entered: 07/25/2025) |
| 07/25/2025 | 90 | ORDER denying 51 Motion for Summary Judgment; granting 70 Motion to Dismiss. Signed by Judge Carl J. Nichols on 7/25/25. (lccjn1) (Entered: 07/25/2025) |
| 07/25/2025 | 91 | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on 7/25/25. (lccjn1) (Entered: 07/25/2025) |
| 08/05/2025 | 92 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 91 Memorandum & Opinion, 90 Order on Motion for Summary Judgment, Order on Motion to Dismiss by AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AMERICAN FOREIGN SERVICE ASSOCIATION, OXFAM AMERICA, INC.. Filing fee $ 605, receipt number ADCDC–11867500. Fee Status: Fee Paid. Parties have been notified. (Bateman, Lauren) (Entered: 08/05/2025) |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Foreign Service Association, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-00352 |
| President Donald J. Trump, et al., | |
| *Defendants*. | |

**PLAINTIFFS' NOTICE OF APPEAL**

Plaintiffs American Foreign Service Association, American Federation of Government Employees, and Oxfam America hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order issued on July 25, 2025 (ECF No. 90) and the Memorandum Opinion (ECF No. 91), granting Defendants' motion to dismiss and denying summary judgment, and from all orders antecedent to such order and opinion.

Dated: August 5, 2025                    Respectfully submitted,

*/s/ Lauren Bateman*
Lauren Bateman (DC Bar No. 1047285)        Kaitlyn Golden (DC Bar No. 1034214)
Karla Gilbride (DC Bar No. 1005586)        Kayla M. Kaufman (DC Bar No. 90029091)
Allison Zieve (DC Bar No. 424786)          Robin F. Thurston (DC Bar No. 1531399)
Public Citizen Litigation Group            Skye L. Perryman (DC Bar No. 984573)
1600 20th Street NW                        Democracy Forward Foundation
Washington, DC 20009                       P.O. Box 34553
(202) 588-1000                             Washington, DC 20043
lbateman@citizen.org                       (202) 448-9090
                                           kgolden@democracyforward.org

1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN FOREIGN SERVICE
ASSOCIATION, et al.,

   *Plaintiffs*,

  v.

DONALD TRUMP, et al.,

   *Defendants*.

Civil Action No. 1:25-cv-352 (CJN)

## **ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment, ECF No. 51, is **DENIED**;

and it is further

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 70, is **GRANTED**; and it is

further

**ORDERED** that Plaintiffs' Amended Complaint, ECF No. 30, is **DISMISSED**.

This is a final and appealable Order.

The Clerk of Court is directed to terminate this case.


DATE: July 25, 2025

                            
CARL J. NICHOLS
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:25-cv-352 (CJN) |
| DONALD TRUMP, et al., | |
| *Defendants*. | |

| | |
|---|---|
| PERSONAL SERVICES CONTRACTOR ASSOCIATION, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:25-cv-469 (CJN) |
| DONALD TRUMP, et al., | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION</u>

Across these two cases, four organizations challenge what they describe as the unlawful dismantling of USAID.  Three represent employees or contractors at USAID:  the American Foreign Service Association (AFSA) represents USAID foreign service officers, the American Federation of Government Employees (AFGE) represents USAID civil servants, and the Personal Services Contractor Association (PSCA) represents USAID personal services contractors, who perform standard government work for the agency without having been "directly hired" by it.  The fourth organization, Oxfam America, is a humanitarian group that sees its mission as combatting

1

global poverty, inequality, and injustice. Each organization alleges that the government's actions taken with respect to USAID, as detailed below, violate the Constitution, the APA, and are ultra vires.

The Court ultimately cannot reach the merits of any plaintiff's allegations, however, because it concludes that it lacks jurisdiction over the claims of AFSA, AFGE, and Oxfam (which have moved for summary judgment after the Court denied their earlier motion for a preliminary injunction), and that it likely lacks jurisdiction over the claims of the PSCA (which has moved for a preliminary injunction). The Court will accordingly grant the government's motion to dismiss the *AFSA* case and will deny the PSCA's motion for a preliminary injunction.

## I.    Background

### A.    Factual Background

The Court previously recounted many of the facts underlying these cases. *See Am. Foreign Serv. Ass'n v. Trump (AFSA I)*, 768 F. Supp. 3d 6, 11–14 (D.D.C. 2025). But there have been some further developments since that juncture, so a brief recap is in order before breaking new ground.

USAID is "the lead international humanitarian and development arm of the U.S. government." Cong. Rsch. Serv., *U.S. Agency for International Development: An Overview* (Jan. 6, 2025). President Kennedy initially created USAID via Executive Order, as an arm of the State Department. *See* Exec. Order 10,973 § 102, 26 Fed. Reg. 10,469 (Nov. 3, 1961). But in 1998, Congress passed a statute that installed the agency as an "independent establishment," outside of State. 22 U.S.C. § 6563(a); 5 U.S.C. § 104(1); *but see* 22 U.S.C. § 6592 (specifying that the USAID Administrator "shall report to and be under the direct authority and foreign policy guidance of the Secretary of State"). Since then, Congress has consistently appropriated funds for

2

USAID, including in the Further Consolidated Appropriations Act of 2024.  *See* Pub. L. 118–47, 138 Stat 460 (2024).  Relevant here, that Act provides that appropriated funds may not be used to "implement a reorganization [or] redesign" of the agency without "prior consultation" by the agency head with appropriate congressional committees.  *Id.* § 7063(a); *see also id.* § 7063(b) (defining "reorganization" and "redesign" to include actions to "downsize the United States official presence overseas," "reduce the size of the permanent Civil . . . [or] Foreign Service," and "eliminate, consolidate, or downsize covered departments, agencies, or organizations").

Until recently, USAID used its appropriated funds to support humanitarian and development projects in approximately 120 foreign countries—both via its independent work and via grants awarded to partner organizations and governments.  *AFSA*, ECF No. 51-2 (SOMF) ¶¶ 3–5.  On January 20, 2025, however, President Trump issued an Executive Order directing "a 90-day pause in United States foreign development assistance," pending an "assessment of [its] programmatic efficiencies and consistency with United States foreign policy."  Exec. Order. 14,168, 90 Fed. Reg. 8619 § 3(a) (Jan. 20, 2025).  The Order further instructed that, at the end of 90 days, "responsible department and agency heads" would determine "whether to continue, modify, or cease each foreign assistance program based upon the review recommendations."  *Id.* § 3(c).

Secretary of State Rubio implemented that Executive Order in a January 24 memorandum that paused "all new obligations of funding, pending a review, for foreign assistance programs funded by or through the [State] Department and USAID."  Dep't of State, Mem. 25 STATE 6828 ¶ 1 (Jan. 24, 2025).  The memorandum also directed that, "[f]or existing foreign assistance awards, contracting officers and grant officers shall immediately issue stop work orders, consistent with the terms of the relevant award, until such time as the Secretary shall determine, following a

review." *Id.* ¶ 7.  According to the government, a "blanket pause" on foreign aid "was the more efficient and effective path," since, given the scale of programming, "an ad hoc review would [have] unduly burden[ed] the execution of the President's other foreign policy priorities." *AFSA*, ECF No. 85 (AR) at 121–22.  Still, Secretary Rubio did exempt from the pause several categories of expenditures:  foreign military financing for Israel and Egypt; emergency food assistance; legitimate expenses incurred prior to the date of the memorandum; and salaries and related administrative expenses for certain direct hire employees, personal services contractors, and locally employed staff.  *See* Mem. 25 STATE 6828 ¶¶ 12(a)–(e).  And Secretary Rubio later also waived the pause as to spending on "life-saving humanitarian assistance" and "[l]ife-saving HIV care and treatment services."[1]  SOMF ¶¶ 28–30.

Six days later, President Trump appointed Secretary Rubio as the Acting Administrator of USAID.  AR at 16.  On February 3, 2025, Secretary Rubio sent a letter to Congress stating that Peter Marocco was delegated the duties of Deputy Administrator of USAID and would "begin the process of engaging in a review and potential reorganization of USAID's activities to maximize [its] efficiency and align [its] operations with the national interest." *Id.*

To effectuate that review and potential reorganization, and in light of alleged "noncompliance" with those efforts by former agency leadership, Deputy Administrator Marocco began placing USAID employees on administrative leave and terminating contracts with USAID personal services contractors (PSCs).  *See id.* at 7, 17–20.  By February 7, 2025, USAID had placed 2,140 of its 4,746 direct-hire employees on administrative leave, and had approved the termination

---

[1] Plaintiffs maintain that these waivers were largely ineffectual, due to newly imposed restrictions on who could access payment systems and heightened approval processes before payments could be disbursed, among other changes at the agency. *See*, *e.g.*, *AFSA*, ECF No. 51 (MSJ) at 5.

4

of 791 of its 1,239 PSCs.  *Id.* at 7, 19.  However, pursuant to a TRO issued in *AIDS Vaccine Advocacy Coalition (AVAC) v. United States Department of State*, D.D.C. Case No. 25-cv-400, and *Global Health Council v. Trump*, D.D.C. Case No. 25-cv-402, USAID ceased the "generalized stop work, suspension, or pause of Agency contracts, grants, or other federal assistance awards" under the Executive Order and Secretary Rubio's memorandum.  *Id.* at 51; *see AVAC v. United States Dep't of State*, 770 F. Supp. 3d 121, 130 (D.D.C. 2025) (summarizing the scope of the TRO).  Nonetheless, consistent with the *AVAC* TRO, USAID continued to "exercise Agency discretion to individually examine outgoing payments pursuant to a new Payment Integrity Review Process, and, as appropriate, to enforce the terms and conditions, including provisions allowing the Agency to issue stop work or termination notices, contained in USAID awards and contracts." AR at 51.

On March 10, 2025, Secretary Rubio announced the conclusion of the "first phase" of the government's "full-scope review" at USAID.  *Id.* at 3.  Then, on March 28, 2025, "the Department of State and USAID notified Congress of their intent to undertake a reorganization that would realign certain USAID functions to the Department of State . . . and discontinue other residual USAID functions inconsistent with Administration priorities."  *Id.*  State's and USAID's notification specifically proposed that the State Department would "assume responsibility for the administration of ongoing USAID programming" by July 1, 2025, and that, "by September 2, 2025, USAID's operations [would] be substantially transferred to State or otherwise wound down."  *Id.* at 3–4.  The State Department has accordingly expressed its intention to "propose legislation to authorize abolishing USAID as an independent establishment and to request [that] future appropriations for the relevant programming be provided directly to the Department."  *Id.* at 4.

5

Also on March 28, 2025, USAID notified its civil and foreign service personnel of a "consolidated agency-wide Reduction-In-Force" (RIF) action, occasioned by the anticipated elimination of "substantially all non-statutory positions" at the agency. *Id.* USAID employees "received RIF notices specifying one of two final separation dates: either July 1, 2025, or September 2, 2025." *Id.* The government represents that, in advance of those dates, it "returned to active duty"—i.e., removed from administrative leave—"substantially all its global personnel," though employees may still *elect* to be placed on paid administrative leave. *Id.* at 5, 7. Employees who have remained in active status after July 1 are "expected to supervise the responsible decommissioning of USAID assets and the wind-down of the Agency's independent operations." *Id.* at 6.

Remaining PSCs' contracts are likewise being terminated effective July 1, 2025, or September 2, 2025. *Id.* at 7. According to the government, throughout the reorganization and RIF, all PSC contracts have been "terminated consistent with all contractual and other notice periods, and PSCs will receive any travel and other repatriation accommodations to which they are generally entitled." *Id.* And, the government says, both terminated employees and PSCs will be eligible for new positions and/or contracts at the State Department, which is "build[ing] its capacities to administer an expanded set of foreign assistance programs and operations." *Id.* at 6–7.

At the time of the March 28 reorganization and RIF announcement, USAID retained 898 of its 6,239 foreign assistance grants—a remainder that totaled $78 billion in value—as well as 421 "operational and critical service contracts and other agreements." *Id.* at 3, 273. The government attests that stop-work orders on retained awards have now been lifted, and the State Department has "directed Contracting Officers and Grants Officers to expeditiously process

payment requests for both awards where work has now resumed and for terminated awards, including for legitimate expenses incurred in connection with stop work orders and suspensions." *Id.* at 141 (quotation marks omitted). As to terminated awards, USAID and the State Department are also making payments for legitimate expenses incurred prior to January 24, 2025, where counterparties provide sufficient documentation of "verifiable work that the Government [] committed to fund." *Id.* at 83.

### B.    Procedural History

This matter first came before the Court on February 7, 2025, when plaintiffs AFSA and AFGE—which had the day before filed a complaint alleging that defendants were violating the Constitution and the APA by "dismantl[ing]" USAID through their funding pause, administrative leave placements, and related actions—sought a temporary restraining order that would require the government to "immediately cease actions to shut down USAID's operations." *AFSA*, ECF No. 1 at 2, 23–28; *AFSA*, ECF No. 9 at 1. After a hearing that same afternoon, the Court entered a limited TRO that required the government until February 14 to reinstate USAID direct-hire employees who had been placed on administrative leave and to withhold from placing any additional employees on administrative leave or evacuating them from their overseas posts. *AFSA*, ECF No. 15 at 1, 7. As the Court explained, there was a risk that such employees might suffer imminent and irreparable harm if they were stripped of standard employment benefits while abroad or were required to repatriate on an expedited basis, in disruption of long-settled expectations. *Id.* at 2–5. But the Court did not restrain the government from implementing the 90-day freeze on foreign assistance funding because, by contrast, plaintiffs had not demonstrated that action would inflict irreparable harm. *Id.* at 6–7.

The Court's February 7 Order also converted plaintiffs' TRO motion into a motion for a preliminary injunction and scheduled a hearing on that motion for February 13, 2025. *Id.* at 7. At that hearing, and as reflected in an Order issued the same day, the Court extended the TRO for another week to permit itself time to issue an opinion on the motion for preliminary injunction, and also modified the February 7 Order to clarify that it prohibited only the *involuntary* evacuation of USAID employees from their overseas posts. *AFSA*, ECF No. 31. Also on February 13, 2025, AFSA and AFGE filed an amended complaint that joined OxFam as a plaintiff and added an ultra vires claim—albeit not for purposes of the already-filed preliminary injunction motion. *See AFSA*, ECF No. 30.

On February 21, 2025, the Court denied AFSA's and AFGE's motion for a preliminary injunction. *AFSA I*, 768 F. Supp. 3d at 25. The Court concluded, with the benefit of the governments' sworn declarations, that plaintiffs and their members did not in fact face a risk of irreparable harm from the essentially "employment-related injuries" that they alleged their members were facing: placement on administrative leave, expedited recall from their host countries, asserted financial and emotional burdens as a result of the freeze on foreign aid, and possible job loss. *Id.* at 16–21. As for likelihood of success on the merits, the Court held that it likely lacked jurisdiction to adjudicate AFSA's and AFGE's claims, which were "archetypal complaints about changed employment conditions and their follow-on effects" that belonged before statutorily-designated administrative review boards. *Id.* at 20, 24. Finally, the Court observed that both plaintiffs and the government had identified plausible harms as a result of the progression/cessation of the government's actions with respect to USAID, meaning that the final two preliminary injunction factors also did not tip in plaintiffs' favor. *Id.* at 25.

During this period, the PSCA filed its own action, which similarly alleged that defendants had violated the Constitution and the APA by "dismantl[ing]" USAID.  *PSCA*, ECF No. 1 at 2, 13–16.  The PSCA then moved for a TRO that sought essentially the same relief as AFSA and AFGE had requested in their motion, but as to its members (PSCs) rather than direct-hire employees.  *PSCA*, ECF No. 6; ECF No. 6-1 at 1–4.  The Court conducted a telephonic hearing on the PSCA's motion on March 5, 2025, and the next day held a follow-up telephonic hearing at which it denied that motion orally.  *See PSCA*, ECF No. 23.  The Court explained that none of the alleged harms to the PSCA's members—which the PSCA had characterized as "identical to those impacting direct-hires"—met the "high standard needed to warrant preliminary relief."  *Id.* at 7–11; *see also PSCA*, ECF No. 6-1 at 18.  The Court also explained that the PSCA was unlikely to succeed on the merits of its claims because the case "present[ed] as essentially a federal contract dispute" over which the Court likely lacked jurisdiction.  *PSCA*, ECF No. 23 at 11–15.  Finally, as in *AFSA*, the balance of the equities was "at a minimum [] in equipoise and perhaps favor[ed] the government."  *Id.* at 15.

All of this brings us to the motions now before the Court.  On March 10, 2025, the *AFSA* plaintiffs moved for summary judgment on all of their claims.  *AFSA*, ECF No. 51 (MSJ).  The government for its part moved to dismiss, and in the alternative, cross-moved for summary judgment.  *AFSA*, ECF No. 70 (MTD).  The PSCA (after filing an amended complaint that added new defendants and an ultra vires claim), in turn, moved for a preliminary injunction that, like its previously-sought TRO, would "stop the [allegedly] illegal dismantling and destruction of USAID."  *PSCA*, ECF No. 39 at 2 (Mot.).  The government opposed that motion.  *PSCA*, ECF No. 45 (Opp.).

While all of those motions were being briefed, a motions panel of the Court of Appeals issued an order in *Widakuswara v. Lake (Widakuswara II)*, 2025 WL 1288817, at *1 (D.C. Cir. 2025), that stayed in part several preliminary injunctions issued in litigation regarding the alleged dismantling of a different federal agency, the United States Agency for Global Media, on the basis that the district court lacked jurisdiction over the plaintiffs' personnel-termination and grant termination-related claims. *Id.* at *2–3. Thereafter, the en banc Court of Appeals denied a motion for reconsideration and vacatur of that portion of the motions panel's order concerning the government's "personnel actions," but granted the motion for reconsideration and vacatur as to that portion respecting the government's grant-related actions. *See Widakuswara v. Lake (Widakuswara III)*, 2025 WL 1556440, at *1 (D.C. Cir. 2025); *Widakuswara v. Lake (Widakuswara IV)*, 2025 WL 1521355, at *1 (D.C. Cir. 2025).

## II.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). In evaluating such a motion, "[t]he Court is not limited to the allegations of the complaint; instead, the Court may consider such materials outside the pleadings as it deems appropriate." *Transportation Trades Dep't, AFL-CIO v. Nat'l Mediation Bd.*, 530 F. Supp. 3d 64, 69 (D.D.C. 2021) (quotation marks and citations omitted). "Where both standing and subject matter jurisdiction are at issue," the "court may inquire into either and, finding it lacking, dismiss the matter without reaching the other." *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007).

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton,*

10

391 F.3d 251, 258 (D.C. Cir. 2004). "To warrant preliminary injunctive relief, the moving party

must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable

injury if the injunction were not granted, (3) that an injunction would not substantially injure other

interested parties, and (4) that the public interest would be furthered by the injunction."

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). When the

movant seeks an injunction against the government, the final two factors are analyzed as one. *See*,

*e.g.*, *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).

## III.    Analysis

The central question in these cases is whether the Court possesses subject-matter

jurisdiction over plaintiffs' claims. As the Court will explain in more detail below, it has concluded

that it does not in *AFSA*, and that it likely does not in *PSCA*. Each of the employee organizations

seeks relief from quintessentially personnel-related injuries that, as a motions panel of the Court

of Appeals recently confirmed, must be redressed through various administrative review schemes

that Congress has specified by statute.[2] As for OxFam, while it does assert injuries that are

theoretically traceable to *non*-personnel actions the government has taken with respect to

USAID—namely, termination of USAID grants—it lacks standing to seek relief with respect to

---

[2] The government also contends that AFSA's and AFGE's claims of employment-related
harm are moot because, whereas plaintiffs' complaint "primarily challenges the simultaneous mass
placement of all USAID workers on administrative leave," USAID has now restored "substantially
all" of its employees to active status—in anticipation of their July or September RIF dates. MTD
at 8–9, 12,17. This argument, which the government does not reprise in its reply brief, is too clever
by half. Plaintiffs' complaint squarely challenges what it characterizes as the "dissolution of
USAID," and cites the agency's placement of its employees on administrative leave as evidence
of—rather than the extent of—that purported effort. *AFSA*, ECF No. 30 at 2–4, 16. While, as
discussed below, plaintiffs' invocation of the word "dissolution" is not a talisman that permits
them to circumvent established limits on this Court's jurisdiction, it *does* broaden the aperture of
plaintiffs' claims to include *current* personnel actions at USAID rather than just those taken
previously. *Cf.* MTD at 17 (recognizing that plaintiffs allege "'mass' employment-related
harms").

them. The *AFSA* complaint must therefore be dismissed for lack of subject-matter jurisdiction, and the PSCA has failed to demonstrate it is likely to succeed on the merits of its claims. And regarding the remaining injunctive relief factors, the PSCA has not demonstrated that it or its members will suffer irreparable harm before a judgment on the merits as a result of the government's actions, or that the equities favor preliminary relief.

### A.    Jurisdiction

Each plaintiff in these cases strenuously argues that it is challenging the "wholesale dissolution" of USAID, rather than any more granular action taken by defendants. *See, e.g.*, MSJ at 15; Mot. at 22. But those contentions are undermined by the nature of the relief plaintiffs seek: injunctions that would, among other things, recall furlough notices to affected workers, and declaratory judgments that those actions were unlawful. *See AFSA*, ECF No. 51-25; *PSCA*, ECF No. 39-26. Because plaintiffs must demonstrate standing for each form of relief sought, *see Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017), the Court cannot just take plaintiffs at their word and analyze this case as if there were indeed just one, expansive agency action—the dismantling of USAID—from which plaintiffs seek relief. *Cf. Widakuswara II*, 2025 WL 1288817, at *3 ("The 'dismantling' that plaintiffs allege is a collection of many individual actions that cannot be packaged together and laid before the courts for wholesale correction under the APA.") (quotation marks omitted). Instead, the Court must look at plaintiffs' claims and requested remedies separately and ask, for each, whether it would redress an injury-in-fact that is fairly traceable to the government's challenged conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). If it would, the Court must next consider whether it has jurisdiction to order that relief. Here, as the Court will explain, the only relief that plaintiffs have standing to seek is beyond its capacity to award.

12

### 1.    Standing

Organizational plaintiffs can establish standing in two ways.  First, they can demonstrate that they have suffered "actual or threatened injury in fact" to their *own* interests that is "fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).  For this form of standing, known as "organizational standing," a "mere setback to [the organization's] abstract social interests is not sufficient."  *People for the Ethical Treatment of Animals (PETA) v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015).  Instead, an organization must allege a "concrete and demonstrable injury" to its "core business activities," as distinct from its mere "issue-advocacy."  *Id.*; *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).  Second, if an organization has members, it can also sue based on the cognizable injuries of its members so long as "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024).  This latter form of standing is called "associational standing."  *Id.*

Start with AFSA, AFGE, and PSCA, which all assert similar theories of injury, and do so under the rubrics of both organizational and associational standing.  As to the former, they allege that defendants' actions have interfered with their "strong interest in representing and protecting their members," and have as a result "stretched" their resources.  MSJ at 12; Mot. at 16–17.  Specifically, the associations point to time and money spent responding to their members' concerns and inquiries regarding their employment or contract status, as well as to the risk of membership loss if such relationships are indeed permanently dissolved.  *See AFSA,* ECF No. 9-3

¶¶ 6–8; *AFSA*, ECF No. 24-17 ¶¶ 21–25; *AFSA*, ECF No. 51-24 ¶ 12; *PSCA*, ECF No. 39-4 at 90 ¶¶ 16–17.  As to associational standing, the associations point to various "emotional, reputational, and financial harms" that they allege their members have suffered as a result of the government's actions with respect to USAID.  MSJ at 13; Mot. at 25.  In addition to loss of employment and related monetary injuries, those alleged harms include stress and anguish as a result of returning to the United States and separating from family abroad, "trauma" due to the closure of USAID facilities, and anxiety due to "violent anti-USAID rhetoric."  *See AFSA*, ECF No. 9-9 ¶¶ 5–7; *AFSA*, ECF No. 9-12 ¶¶ 4, 7–8; *PSCA*, ECF No. 37 ¶¶ 53–54.

The government strongly objects to both theories.  As for organizational standing, it argues that AFSA, AFGE, and PSCA have alleged merely a "decision to reallocate their resources," rather than the necessary "direct[] . . . interfere[nce]" with their "core business activities."  MTD at 32–33; *see* Opp. at 17.  And as for associational standing, the government argues, the organizations' asserted injuries to USAID employees and PSCs turn on "individual [employment] circumstances" that cannot be assessed union-wide.  MTD at 34; *see* Opp. at 15–16.

The Court need not decide here, however, whether AFSA, AFGE, and PSCA lack standing entirely.  Instead, it is sufficient to observe that, on either theory, the only cognizable harms the associations assert depend entirely on their members' employment or contractual relationships with USAID.  Even their alleged intangible injuries—like concerns about family separation, stigma, and post closures—fall into that category, because those harms affect the associations' members distinctly "in their capacities as USAID employees" or PSCs.  *AFSA I*, 768 F. Supp. 3d at 20.  Put another way, the associations' alleged injuries are traceable to the government's personnel actions regarding USAID, and would be redressed by relief that addressed those actions.

14

They would not be redressed at all, meanwhile, by an injunction or declaratory judgment that did something else.

The Court will therefore assume without deciding that AFSA, AFGE, and PSCA have standing to challenge the government's actions with respect to the employment or contract status and related working conditions of USAID's employees and PSCs, and to seek relief from those discrete personnel actions. But AFSA and AFSA do not, and PSCA likely does not, have standing to challenge the government's *non*-personnel actions with respect to USAID, such as its grant terminations, website closures, and lease transfers, *see* MSJ at 16–17, where the associations have alleged no concrete and particularized injuries flowing from those actions specifically.[3] *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Indeed, although the government made these points in its motion to dismiss, *see* MTD at 34, AFSA and AFGE offered no clear rejoinder—beyond reiterating their view that, because their complaint purports to challenge the wholesale "shutdown of the agency," the Court need not look behind the curtain and assess their standing to seek the specific relief they request. *AFSA*, ECF No. 74 (Pl.'s Reply) at 12.

The PSCA makes a similar if more involved argument, attempting to analogize its claims to those at issue in cases like *INS v. Chadha*, 462 U.S. 919 (1983) and *Seila Law, LLC v. CFPB*, 591 U.S. 197 (2020). Mot. at 26–28. In the PSCA's view, the logic of those "structural challenge" cases indicates that it would be a "serious category error" to conclude that the PSCA has standing to challenge only the personnel-related changes at USAID, as opposed to USAID's reorganization

---

[3] Plaintiffs' suggestion that these changes have caused their members to fear a "global humanitarian crisis," *see* MSJ at 13, is insufficient to support standing absent an account of why that concern is more than an undifferentiated "generalized grievance" that is "common to all members of the public." *Lujan*, 504 U.S. at 575. Plaintiffs offer no such account.

(or allegedly, "dismantling") writ large. *Id.* at 28. Like AFSA and AFGE, however, the PSCA gives unduly short shrift to the concept of redressability. The plaintiffs in *Chadha*, *Seila Law*, and the other cases on which the PSCA relies did *not* have standing based merely on the "constitutional violations themselves." *Id.* Instead, those plaintiffs sought (and won) the cessation, on constitutional grounds, of specific government actions against them, which unquestionably redressed their particular injuries. *See, e.g.*, *Chadha*, 462 U.S. at 936 ("If the veto provision violates the Constitution, and is severable, the deportation order against Chadha will be cancelled."); *Seila Law*, 591 U.S. at 210–11 (explaining that petitioner's success on separation of powers claim would excuse it from "comply[ing] with the civil investigative demand" and "provid[ing] documents it would prefer to withhold"); *Andrade v. Lauer*, 729 F.2d 1475, 1494–95 (D.C. Cir. 1984) (plaintiffs injured by RIF had standing to challenge it on the grounds that they were "fired by government officials who were constitutionally disqualified from exercising power over them"). Here, by contrast, AFSA, AFGE, and PSCA seek declaratory and injunctive relief that spans far beyond, and thus would *not* redress, the personnel-related injuries they have alleged. That is what limits their standing to sue.

Oxfam, for its part, *does* allege injuries as a result of the cancellation of USAID's grants.[4] Although Oxfam does not itself receive grant money from USAID, it alleges that the withdrawal of USAID funding from humanitarian projects abroad has placed an "inordinate burden" on Oxfam, which has had to reallocate funds and expend additional resources to "account[] for [that] dramatic change[] in the humanitarian landscape." *AFSA*, ECF No. 30-1 (Maxman Decl.) ¶¶ 10– 12. Oxfam further attests that it "implements programs in close collaboration with partner[]"

---

[4] Oxfam is not a membership organization, so it can only demonstrate organizational, not associational, standing.

organizations that receive funding from USAID, meaning that grant cuts at USAID will "jeopardize" Oxfam's ongoing projects and "generat[e] pressure on Oxfam to incur additional financial liability." *Id.* ¶ 13. According to Oxfam, it "has already been instructed to halt several projects undertaken with UN agency funding because they rely on [the] U.S. government as a back donor," and "adverse impacts to [its] work are likely to spread." *Id.* ¶¶ 16–17; *see also AFSA*, ECF No. 51-23 (Second Maxman Decl.) ¶ 4.

In making these arguments, which reduce to the theory that Oxfam will be harmed as a result of harms that USAID's spending cuts have inflicted on other organizations, Oxfam runs headlong into the third-party standing doctrine. Parties "generally . . . cannot rest [their] claim[s] to relief on the legal rights or interests of third parties," because only "the party with the right has the appropriate incentive to challenge (or not challenge) governmental action." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Oxfam, however, is attempting to vindicate the monetary interests of USAID grantees not before the Court, on the grounds that restoring *their* funding would permit certain joint projects to proceed and obviate the need for Oxfam to spend more money on humanitarian projects in their stead. That requires Oxfam to make "two additional showings" to demonstrate standing: that it has a "close relationship" with the entity that "possesses the right" and that "there is a hindrance to the possessor's ability to protect [it]s own interests." *Id.* at 130 (quotation marks omitted). Here, even assuming Oxfam has the requisite "close relationship" with third-party recipients of USAID funds, it has not identified any reason that those recipients could not bring their own action to restore funding—as some indeed have. *See AVAC*, 770 F. Supp. 3d at 129.

Instead, Oxfam contends that the third-party standing doctrine does not apply because the government's conduct has, in the manner described above, "injured Oxfam directly." Pl's Reply

at 10.  But even if that were the correct way to frame things, Oxfam's asserted injuries either are not fairly traceable to the government's actions regarding USAID or do not reflect interference with Oxfam's "core business activities" sufficient to meet the threshold for organizational standing.  *Alliance*, 602 U.S. at 395; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("When the plaintiff is not [it]self the object of the government action or inaction [it] challenges, standing is . . . ordinarily substantially more difficult to establish.") (alteration and quotation marks omitted).  Insofar as Oxfam alleges injury because its projects are funded by other entities that receive funding from USAID, like the U.N., that harm turns on an "independent variable":  the decision (or lack thereof) by those entities to discontinue the particular programs in which Oxfam participates.  *Nw. Airlines, Inc. v. F.A.A.*, 795 F.2d 195, 204 (D.C. Cir. 1986).  The same is true of the (wholly hypothetical) possibility that unidentified foreign persons would "hold Oxfam responsible for [other organizations'] abrupt and inhumane discontinuation of lifesaving support."  Second Maxman Decl. ¶ 6.  In such circumstances, "causation [is] sufficiently tenuous that standing should be denied."  *Mideast Sys. & China Civ. Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1174, 1178 (D.C. Cir. 1986) (unsuccessful sub-bidder could not sue government grantor on the theory that it "failed to follow the applicable regulations in administering the grant" because the final award decisions were made by the grant recipient).

Insofar as Oxfam alleges injury based on its own perceived need to reallocate its resources to fill gaps previously occupied by USAID, that harm is precisely the sort of "mere setback" to an organization's mission that falls below the showing required for organizational standing.  *PETA*, 797 F.3d at 1093.  As the Supreme Court recently explained, it is "incorrect" that "standing exists when an organization diverts its resources in response to a defendant's actions."  *Alliance*, 602 U.S. at 395; *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (housing counseling

18

organization could sue landlord for racial steering because it "perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income homeseekers"). "An organization cannot manufacture its own standing in that way." *Alliance*, 602 U.S. at 394.

Although its motion for summary judgment focuses on its alleged injuries as a result of grant terminations by USAID, Oxfam asserts in its reply that it is also injured by the personnel actions taken at the agency because it "relies on the expertise and logistical assistance of USAID personnel to perform its work." Pl's Reply at 7. As support, it cites to three paragraphs across two declarations by its President, Abby Maxman. *Id.* In one, Maxman states that, because USAID is "home to thought leaders in the development industry," "[d]issolving the agency will [] have signification negative ramifications [for] Oxfam and other humanitarian agencies that rely upon [USAID's] ingenuity." Maxman Decl. ¶ 18. In the others, Maxman references USAID-chartered flights that humanitarian workers from other organizations (presumably including Oxfam) are invited to join, and expresses concern about the humanitarian consequences of USAID reducing its staff presence in Africa. *Id.* ¶ 19; Second Maxman Decl. ¶ 11.

These alleged injuries are not sufficiently concrete or particularized to confer on Oxfam standing to challenge broader, non-funding related aspects of the government's conduct with respect to USAID. *See, e.g.*, MTD at 21 ("Article III would *not* countenance granting Oxfam relief as to USAID employment conditions . . . ."). Oxfam does not explain how *it specifically* will suffer "negative ramifications" as a result of the government's proposed reorganization of USAID—or even how it specifically has come to rely on USAID's ingenuity—beyond the already-discussed relationships between Oxfam and USAID grantees. Nor does Oxfam allege that USAID charter flights are indeed no longer operative, and, if so, that Oxfam, as opposed to a different

19

organization, has suffered resulting harm. *See Lujan*, 504 U.S. at 563 ("To survive the Secretary's summary judgment motion, respondents had to submit affidavits or other evidence showing, through specific facts, not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be directly affected apart from their special interest in the subject.") (quotation marks and alterations omitted). To the extent that Oxfam's concerns about USAID's overseas staff reductions are meant to imply that Oxfam may be prompted to expend additional resources in support of its humanitarian objectives, that assertion reduces to the same "manufactured" standing argument the Court rejected above.

***

In sum, AFSA and AFGE have standing only to object to the government's personnel-related actions at USAID, which is the only challenged conduct that has caused them particularized injury. The same is likely true of the PSCA. And Oxfam lacks standing entirely.

### 2.    Channeling

As noted above, in denying preliminary relief in both *AFSA* and *PSCA*, the Court concluded that it likely lacked jurisdiction over plaintiffs' personnel-related claims because Congress intended them to proceed exclusively through various statutory schemes of administrative and judicial review. *See AFSA I*, 768 F. Supp. 3d at 24; *PSCA*, ECF No. 23 at 15. As to AFSA and AFGE, which represent USAID employees, the Court explained at length when denying the preliminary injunction that the Civil Service Reform Act (CSRA), Federal Service Labor Management Relations Statute (FSLMRS), and Foreign Service Act (FSA) likely channel their members' claims to various agencies and provide for subsequent review in specific Article III courts. *See AFSA I*, 768 F. Supp. 3. at 20–21 (discussing 5 U.S.C. § 1101 *et seq.* and 22 U.S.C. § 4101 *et seq.*).

20

As to the PSCA, which represents USAID PSCs, the Court similarly held when orally denying the TRO that the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–09, likely channels its members' claims to either the Board of Contract Appeals or the Court of Federal Claims. *See PSCA*, ECF No. 23 at 12, 15. The CDA "applies to any express or implied contract . . . made by an executive agency for" "the procurement of services," 41 U.S.C. § 7102(a)(2), and, where applicable, provides the exclusive procedure for resolving any "claim by a contractor . . . relating to a contract." *Id.* § 7103(a)(1); *see also Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 521 (D.C. Cir. 2010) ("The [CDA] . . . established a comprehensive framework for resolving contract disputes between executive branch agencies and government contractors."). In particular, the CDA "pre-empts whatever jurisdiction this Court" generally has in contract disputes to which it applies, and mandates that such disputes be heard "only [in] the appropriate agency board of contract appeals or directly [in] the Court of Claims," with the "next appeal l[ying] only to the Federal Circuit." *Nat'l Star Route Mail Contractors Ass'n, Inc. v. United States Postal Serv.*, 223 F. Supp. 3d 14, 30–31 (D.D.C. 2016). Moreover, "[a]ll claims by a contractor against the government relating to a contract covered by the CDA must be submitted first to the contracting officer for a decision," before they are presented to any adjudicative body. *Id.*

Services contracts like those between the PSCA's members and USAID generally fall within the CDA's ambit. *See, e.g.*, *id.* at 21, 30 (applying CDA to claims by association of Postal Service delivery contractors); *Sys. Application & Techs., Inc. v. United States*, 26 F.4th 163, 170 (4th Cir. 2022) (applying CDA to claims by Navy services contractor). To be sure, as the Court noted when denying the TRO, whether the PSCs' contracts are indeed covered by the CDA hinges on their precise terms, which the PSCA has never produced in this litigation. *PSCA*, ECF No. 23 at 13; *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("[A]ny

21

agreement can be a contract . . . provided that it meets the requirements for a contract with the Government . . . .").  But the PSCA also has never *rebutted* the notion that its members have CDA-covered contracts, as is its burden to do.  *See Khadr*, 529 F.3d at 1115.  Rather, it has focused its arguments throughout this litigation on the substance of its *claims*, which it argues are not "essentially contractual" as required for CDA channeling.  *PSCA*, ECF No. 14 at 9; Mot. at. 19–20.  The Court previously rejected those arguments, explaining that where the PSCA "ha[s] Article III standing to sue only because of [its members'] contractual relationships with USAID" and "expressly seek[s] reinstatement of their contracts," "it appears likely that [the PSCA's] claims are at bottom contractual ones to which the CDA will apply."  *PSCA*, ECF No. 23 at 13; *see also* Mot. at 1–2 (requested relief).

Since the Court reached its respective preliminary determinations about the mandatory channeling of these organizations' claims, nothing has changed to persuade it that either of those determinations was incorrect.  To the contrary, subsequent decisions by the Court of Appeals align with the Court's initial view.  The Court will thus begin with those decisions, and will then turn to why plaintiffs' arguments in their summary judgment and preliminary injunction briefing do not warrant departing from the previous conclusions of this Court or the Court of Appeals.

In *Widakuswara v. Lake*, a motions panel of the Court of Appeals issued a stay pending appeal of several injunctions issued in litigation concerning operational changes at the United States Agency for Global Media (USAGM).  *See Widakuswara II*, 2025 WL 1288817, at *1–2.  Not unlike USAID, USAGM is statutorily tasked with overseeing and disbursing grants to federally-funded broadcasting networks, including some that operate abroad.  *Id.* at *1.  In March 2025, however, President Trump issued an Executive Order that "directed USAGM leadership to reduce the agency to the minimum level of operations required by statute."  *Id.*  To implement that

Executive Order, USAGM leadership—also not unlike USAID leadership—placed employees on administrative leave, cancelled contracts with PSCs, and terminated funding to grantees. *Id.* After "[v]arious plaintiffs, including USAGM employees, contractors, and grantees, filed lawsuits to challenge these actions," which they characterized as the "wholesale shuttering of [the agency]" in violation of the Constitution and the APA, the district court "granted a preliminary injunction requiring USAGM to (1) restore its employees and contractors to their pre-March 14 status, (2) restore its FY 2025 grants with [the plaintiff networks], and (3) restore [the Voice of America network] as 'a consistently reliable and authoritative source of news,'" in keeping with the agency's statutory mandate. *Id.* at *1, *3; *see also Widakuswara v. Lake*, 2025 WL 1166400, at *5, *18 (D.D.C. 2025).

The government sought, and the motions panel granted, a stay pending appeal as to the first two provisions of the injunction. *Widakuswara II*, 2025 WL 1288817 at *2. The motions panel concluded that the district court likely lacked subject-matter jurisdiction to issue either form of challenged injunctive relief—that regarding USAGM's personnel actions and that regarding its grant terminations. *Id.* As to the former, the panel explained, citing the CSRA, FSLMRS, FSA, and CDA, that "[t]hese remedial schemes provide the exclusive procedures by which federal employees may pursue employment- and contractor-related claims." *Id.* (quotation marks and alterations omitted). The panel rejected plaintiffs' (and the district court's) view that the USAGM litigation fell outside those schemes because it concerned "broad government actions to dismantle an entire federal agency" rather than "simply a collection of employment disputes." *Id.* at *3 (quotation marks and alterations omitted). As the panel explained, the principle that "[f]ederal employees may not circumvent these statutes' requirements and limitations by resorting to the catchall APA to challenge agency employment actions" "applies to a systemwide challenge to

23

agency policy just as it does to the implementation of such a policy in a particular case." *Id.* at *2 (quotation marks, alterations, and ellipses omitted). And as to the district court's grant-related injunctive relief, the panel similarly concluded that it likely exceeded the district court's jurisdiction pursuant to the Tucker Act, which "vests the Court of Federal Claims with jurisdiction over claims against the United States 'founded . . . upon any express or implied contract with the United States.'" *Id.* at *3 (quoting 28 U.S.C. § 1491(a)(1)).

Plaintiffs moved for en banc reconsideration of the motions panel's stay, which the en banc Court granted in part—only as to the panel's stay of the district court's grant-related injunction, and only as to the plaintiffs that had demonstrated resulting irreparable harm. *See Widakuswara III*, 2025 WL 1521355, at *1–2 (D.C. Cir. 2025) (en banc). The Court concluded that the government had "not made the requisite 'strong showing' of a likelihood of success on the merits" of its Tucker Act channeling argument. *Id.* at *1 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Yet—and most relevant here—the Court *denied* reconsideration of the panel's stay of the district court's personnel-related injunction, which, again, embraced claims by both USAGM employees and contractors, leaving intact the panel's reasoning on that score. *See Widakuswara IV*, 2025 WL 1556440 (D.C. Cir. 2025) (en banc).

To be sure, the government does not argue that the motions panel's reasoning is *binding* on the Court, *see, e.g.*, *AFSA*, ECF No. 89 at 5–6, and the Court will not treat it as such. *See, e.g.*, *S. Educ. Found. v. United States Dep't of Educ.*, 2025 WL 1453047, at *10 & n.4 (D.D.C. 2025) ("*Widakuswara II* is an unpublished opinion that may not be binding on this Court."). But the motions panel's decision on that question remains in force, and at a minimum it offers highly persuasive authority for the proposition that plaintiffs here must pursue their personnel-related

claims—whether brought on behalf of USAID employees or PSCs—through the statutory schemes the Court previously identified.

Plaintiffs resist that proposition by pointing to the provision of the district court's injunction that the panel did *not* address, which, again, ordered the government to "restore [Voice of America] programming such that USAGM fulfills its statutory mandate." *Widakuswara*, 2025 WL 1166400, at *18. Plaintiffs' argument is twofold. First, they analogize the relief they request to that unchallenged provision of the injunction, insofar as they similarly seek an order "prohibiting Defendants from shutting down USAID's operations in a manner not authorized by" statute. *AFSA*, ECF No. 88 at 7; *see also PSCA*, ECF No. 50 at 12–13. As explained above, however, that argument overlooks that the only relief plaintiffs have standing to seek is the restoration of USAID employees and PSCs to their pre-Executive Order status, including any working-conditions adjustments. That personnel-related relief is precisely what the motions panel held exceeds a district court's jurisdiction under the applicable channeling statutes.

Plaintiffs also point to statements that members of the en banc Court made about the unchallenged provision of the injunction when denying reconsideration of the panel's order on personnel-related relief. Namely, Chief Judge Srinivasan joined by six judges wrote that "[t]he court's denial of en banc reconsideration . . . should not be understood to accept or treat with the government's assertion" that the district court lacks authority under the third provision of its injunction to order "personnel actions" beyond those the government deems "necessary or appropriate to carry out its statutory mandate." *Widakuswara v. Lake*, No. 25-5144 (Order of May 28, 2025) (Srinivasan, C.J., respecting the denial of reconsideration en banc); *see also id.* (Pillard, J., respecting the denial of reconsideration en banc) (disagreeing with the merits of the motions panel's stay but deeming the "standard for the full court's intervention [] unmet because nothing

in the [] stay order prevents the district court from enforcing the unchallenged prong 3 of the injunction"). In plaintiffs' view, these statements "reflect[] that a majority of D.C. Circuit judges were not persuaded by the motions panel's conclusion that the district court likely lacked jurisdiction to enjoin USAGM's personnel actions in any way whatsoever." *AFSA*, ECF No. 88 at 8 (quotation marks omitted); *see also PSCA*, ECF No. 50 at 13. But there is significant daylight between what the district court's personnel-related injunction initially required and what certain members of the en banc Court appear to have suggested might be appropriate. In any event, the motions panel's stay order remains binding in that case on this question, and at the very least it supports the Court's initial jurisdictional analysis in both of these cases.

Plainitiffs also resist that analysis on its own terms, *Widakuswara II* notwithstanding. But plaintiffs' renewed objections—which differ little from their arguments in earlier briefing—are unpersuasive.

### 1.    AFSA and AFGE

AFSA and AFGE first try to resuscitate the premise the Court (like the *Widakuswara II* motions panel) dismissed at the outset: that this is not a channel-able employment dispute because plaintiffs are instead challenging the "dismantling of a federal agency, of which the en masse termination of employees is but one part." MSJ at 15. But as the Court has already explained, plaintiffs' only Article III injuries stem wholly from the government's actions with respect to their members' employment status. Because AFSA and AFGE lack standing to challenge any other "part" of USAID's dismantling (and Oxfam lacks standing entirely), the breadth of plaintiffs' complaint alone does not take this case outside the personnel-related review schema at issue.

Of course, as the Court recognized in *AFSA I*, a comprehensive statutory scheme only precludes district court jurisdiction if the specific "claims at issue are of the type Congress intended

26

to be reviewed within the statutory structure." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quotation marks and alteration omitted). The Supreme Court has identified three factors relevant to that inquiry: (1) whether denying district court jurisdiction could "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral" to the statute's review provisions; and (3) whether the claim is "outside the agency's expertise." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994). The Court remains convinced that none of these considerations pushes AFSA's and AFGE's claims outside of the relevant statutes.

AFSA and AFGE focus their efforts primarily on the second *Thunder Basin* factor, arguing that their claims are "collateral" to the relevant statutory schema because they challenge more than just "personnel actions." MSJ at 18, 20. But the cases on which AFSA and AFGE rely undermine rather than bolster their point. Indeed, warrantless searches, property conversion, the installation of hidden cameras, and rape are not mere adverse employment events that must be challenged in other fora. *See Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002); *Manivannan v. Dep't of Energy*, 42 F.4th 163, 174 (3d Cir. 2022); *Gustavson v. Adkins*, 803 F.3d 883, 888–90 (7th Cir. 2015); *Brock v. United States*, 64 F.3d 1421, 1424–25 (9th Cir. 1995). But termination of employees via a RIF and related changes to employee working conditions surely are. *See, e.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 22 (2012) (declining jurisdiction over constitutional claims against federal statute conditioning employment on Selective Service registry because "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme"); *AFSA I*, 768 F. Supp. 3d at 22 (explaining that review under CSRA is available for "any claim that an employee has suffered a 'significant change in duties, responsibilities, or working conditions' in a manner that 'violates any law, rule, or

27

regulation implementing . . . the merit system principles'") (quoting 5 U.S.C. §§ 2302(a)(1), (a)(2)(A)(xii), and (b)(12)); *id.* (explaining that the FSLMRS permits adjudication of union claims over employment conditions) (citing 5 U.S.C. §§ 7121–22); *id.* (noting that the FSA contains a "sweeping definition of 'grievance'" that "would permit a foreign USAID employee or union representative to challenge before the FSGB or FSLRB the whole range of actions to which plaintiffs [] object") (citing 22 U.S.C. § 4131(a)(1)).

AFSA and AFGE also argue that, in the context of this case, channeling their claims would wholly foreclose judicial review (violating the first *Thunder Basin* factor), because such review might not be available for some years—by which time USAID would "long since [have] ceased to exist." MSJ at 19. To start, it is not clear that the relief plaintiffs have standing to seek, i.e., their members' reinstatement, would indeed be out of reach after USAID's operations are wound down or assimilated into the State Department. Although the FLRA has held that the termination of an agency by legislation moots a pending unfair labor practice proceeding, *see Cmty. Servs. Admin.*, 7 F.L.R.A. 762, 763 (1982), it is currently speculative when or whether such legislation will in fact be passed as to USAID. And in any event, the Supreme Court has "made clear" that the mere "expense and disruption of protracted adjudicatory proceedings on a claim do not justify immediate review." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 192 (2023) (quotation marks omitted). Where plaintiffs simply "claim[] that the relief [they] seek[] would be harder to get if [they] proceed[] first before" the relevant administrative bodies, not that proceeding before those bodies would *itself* inflict harm, the judicial review factor does not tip in their favor. *Nat'l Treasury Emps. Union (NTEU) v. Trump*, 770 F. Supp. 3d 1, 9 (D.D.C. 2025); *cf. Axon*, 592 U.S. at 180, 191 (claims challenging the constitutionality of ALJ appointments could not be channeled to ALJs).

Finally, these plaintiffs reprise their argument that their claims are not within the competency of the relevant agency adjudicators, who "are generally ill suited to address structural constitutional challenges." *Carr v. Saul*, 593 U.S. 83, 92 (2021). But *Thunder Basin*'s "expertise" factor "will be satisfied so long as the agency's expertise is applicable to the 'threshold questions that may accompany' otherwise broader claims," and plaintiffs' suit plainly poses at least "preliminary" employment-related questions where such issues are the only ones they have standing to raise. *AFSA I*, 768 F. Supp. 3d at 23 (quoting *Payne v. Biden*, 62 F.4th 598, 607 (D.C. Cir.), *judgment vacated as moot*, 144 S. Ct. 480 (2023) (mem.)); *cf. Axon*, 598 U.S. at 195 (noting that *Elgin* relied on agency "expertise on a raft of ordinary employment issues surrounding the employee's contention that the Equal Protection Clause barred his discharge"). Plaintiffs' conclusory assertion that they seek review only of "agency action and constitutional abuses," MSJ at 20, does not persuade the Court otherwise. *See, e.g.*, *NTEU*, 770 F. Supp. 3d at 11 ("[A]lthough the FLRA may lack expertise on the constitutional claims, the agency could moot the need to resolve the unions' constitutional claims by finding that the President's actions violated the RIF statute.") (quotation marks omitted). Moreover, "[w]here plaintiffs *are* entitled to review before the MSPB, FLRA, FSGB, or FSLRB and subsequent judicial review, there is no reason to fear that plaintiffs' constitutional claims could wholly evade consideration." *AFSA I*, 768 F. Supp. 3d at 24. For instance, even if the MSPB "determine[s] that it lacks authority to decide" a constitutional issue, "[t]he Federal Circuit can then review the MSPB decision, including any factual record developed by the MSPB in the course of its decision on the merits." *Elgin*, 567 U.S. at 20.

## 2.    PSCA

The PSCA begins essentially where AFSA and AFGE started, by arguing that its claims are not "at their essence" contractual because they are styled as constitutional, APA, and ultra vires

challenges to the government's actions regarding USAID.  Mot. at 19.  But "[w]hether a claim is at its essence contractual . . . depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)."  *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quotation marks omitted).  Here, the only rights that the PSCA likely has standing to press are the contract rights of its members, which thereby define the universe of relief that the Court could order in this case.

Of course, "the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have."  *Id.* at 1107.  Even when claims "depend on the existence and terms of a contract with the government," they may still be heard in district court if they "turn[] on more than just contractual terms."  *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 276 (D.D.C. 2021).  But when, similar to *AFSA*, the fundamentally contract-based issue is seemingly the only issue the Court *could* rule on, the logic necessarily runs the other way.  *Cf. Crowley*, 38 F.4th at 1104–05, 1108–09 (APA and ultra vires claims for improper auditing of contract performance were not rooted in contract rights); *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 962, 969 (D.C. Cir. 1982) (suit to enjoin under Trade Secrets Act the release of data contractually acquired by the government was not a contract action); *Cemex*, 560 F. Supp. 3d at 274, 276 & n.4 (D.D.C. 2021) (acknowledging that plaintiffs "may not elude the Court of Federal Claims' exclusive jurisdictional purview by 'disguising' contract claims as something else" but holding that claims seeking vacatur of agency adjudication of contract dispute on APA and due process grounds were not "essentially contractual") (quoting *Megapulse*, 672 F.2d at 969).

30

Here, unlike in *Crowley*, *Megapulse*, and *Cemex*, it appears "possible to conceive of [the PSCA's] dispute [with the government] as entirely contained within the terms of [its members'] contract[s]," because "[t]he question presented by the complaint could be phrased as whether the contract forbids termination under these conditions." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985); *see PSCA*, ECF No. 37 at 21–22 (seeking the reinstatement of contracts and the obligation of contract funds). That is especially true where the PSCs' contracts include "termination-for-convenience clause[s]," permitting the PSCA to "challenge the termination"—which, again, is the only source of its injuries—"based solely on contract principles."[5] *Ingersoll-Rand*, 780 F.2d at 78; *see PSCA*, ECF No. 39-16 ¶ 1. Accordingly, "[t]hat the termination also arguably violates certain other [provisions of law] does not transform the action into one based solely on those [provisions]." *Ingersoll-Rand*, 780 F.2d at 78. And "the fact that [the PSCA] here alleges both statutory and constitutional violations," rather than straight contract claims, also "does not change the [CDA] analysis." *Nat'l Star Route Mail Contractors*, 223 F. Supp. 3d at 34; *see also Ingersoll-Rand*, 780 F.2d at 78 (collecting cases for the proposition that "where plaintiff was awarded contract and government terminated for convenience, cause of action is on the contract despite plaintiff's allegations of statutory and constitutional violations").

Nor does it mean that the PSCA's claims fall outside the "unique expertise of the Court of Federal Claims." *Nat'l Star Route Mail Contractors*, 223 F. Supp. 3d at 34 (alteration omitted). Like AFSA and AFGE, the PSCA argues that its claims "do not belong before a specialized tribunal" because they turn on "questions of administrative and constitutional law" rather than

---

[5] The PSCA's original complaint specifically averred that the PSCs' contracts include "convenience to the agency" clauses, and complained that USAID failed to provide the "minimum notice" required for termination under those clauses. *PSCA*, ECF No. 1 ¶ 32. The amended complaint omits but does not disavow those allegations. *See generally PSCA*, ECF No. 37.

questions about "the merits of PSCs' terminations." Mot. at 22. As discussed, though, the likely "substance of Plaintiff's claims is that the [government] [has] improperly terminate[d] [PSC] contracts," which indeed "calls for knowledge of the government contracting process." *Nat'l Star Route Mail Contractors*, 223 F. Supp. 3d at 32–34 (Court of Federal Claims had sufficient expertise regarding association's due process and statutory claims over proposed termination of postal route contracts).

Turning to the remedy prong of the *Crowley* analysis, the PSCA argues that channeling its claims through the procedures set by the CDA would be inappropriate because, according to the PSCA, neither the Court of Federal Claims nor the Board of Contract Appeals can provide the declaratory and injunctive relief that it seeks. Mot. at 21. Yet, while it is true that "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief," *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988), it does have authority to award equitable relief in certain "statutorily defined circumstances," including (1) when an order "directing restoration to office or position" is necessary "[t]o provide an entire remedy" and (2) when a claimant presents for adjudication a "nonmonetary dispute[]" "concerning termination of a contract." *H&M Assocs., LLC v. United States*, 165 Fed. Cl. 174, 184 (2023); 28 U.S.C. § 1491(a)(2); *see also Bowen*, 487 U.S. at 905 n.40 (noting that "Congress has . . . given the Claims Court certain equitable powers in specific kinds of litigation") (citing 28 U.S.C. § 1491(a)(2)). The PSCA asserts without further explanation that neither context is "present here," Mot. at 21 n.12, but it is not clear to the Court why that is.

More importantly, though, a "plaintiff may not sidestep the restrictions of the CDA merely by avoiding a request for damages." *Ingersoll–Rand*, 780 F.2d at 79. Here, it is likely that the only the relief the PSCA has standing to seek is the reinstatement of its members' contracts with

32

USAID or a declaration that they were wrongfully terminated.  The "practical result" of granting that "request for declaratory and injunctive relief would be [the] reinstatement of [their] terminated contracts."  *Id.* at 80.  Thus, "the essence of [the PSCA's] claim is a request for specific performance."  *Id.* at 79–80 (request for order "reinstating" contract "amount[ed] to a request for specific performance").  And even assuming that the Court of Federal Claims could not order that relief, the Court of Appeals has nonetheless "indicated that a complaint involving a request for specific performance must be resolved" by that Court, where, at minimum, plaintiffs will "have available . . . a damages remedy for wrongful termination of the contract."  *Id.* at 80 (citing *Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 894–95 (D.C. Cir. 1985); *Megapulse,* 672 F.2d at 969).  "To hold that the CDA does not apply merely because, under that scheme, plaintiff cannot receive all its requested [relief], would intolerably upset the congressional purpose underlying the Act"—which is to establish "a scheme for the resolution of contract disputes" that "includes a deliberate limitation on certain types of remedies."  *Id.*

***

For the reasons above, the Court concludes that it lacks jurisdiction over AFSA's and AFGE's claims.  The Court further concludes that it likely lacks jurisdiction over the PSCA's claims, and thus that the PSCA has not established a likelihood of success on the merits.

## B.    Remaining Preliminary Injunction Factors

The Court's jurisdictional conclusions do not end the matter as to the PSCA.  Because the PSCA seeks a preliminary injunction, the Court must also consider whether it has demonstrated that it or its members will suffer irreparable harm absent an injunction, as well as whether the equities and the public interest favor an injunction.  *See Chaplaincy of Full Gospel Churches*, 454

33

F.3d at 297 (D.C. Cir. 2006); *Pursuing Am.'s Greatness*, 831 F.3d at 511.  The PSCA has not met its burden on either score.

### 1.    Irreparable Harm

The standard for irreparable injury is "high":  it requires injuries that are "certain, great, actual, and imminent," as well as "beyond remediation."  *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008); *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  The PSCA cannot satisfy that standard, especially when considering the heightened showing required for injunctive relief in government personnel matters—as this case ultimately is.  *See Sampson v. Murray*, 415 U.S. 61, 83–84 (1974).

The PSCA points first to the termination notices that all PSCs have received.  Mot. at 38 (citing *PSCA*, ECF No. 39-4 at 90 ¶ 16).  Although the PSCA acknowledges that "job loss is not normally an irreparable harm," it contends that "this is not a normal situation" because USAID is "by far the biggest employer in the humanitarian aid sector," and provides essential funding for "almost all other employers in the sector."  *Id.*  Thus, in the PSCA's estimation, and on its assumption that decreased United States' foreign aid spending will cause the sector to "disintegrate[]," "for the vast majority of PSCs, the loss of employment [at USAID] means the loss of an entire career."  *Id.*  To be sure, in some circumstances, "massive economic disruption" like that alleged by the PSCA "can be irreparable harm."  *Id.*; *see TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 113 (D.D.C. 2020) (finding that TikTok was irreparably harmed by government actions "[f]unctionally shutting [it] down").  But it is the plaintiff's burden to "substantiate the claim that [such] irreparable injury is likely to occur" and "provide proof . . . indicating that the harm is certain to occur in the near future," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks omitted), and the PSCA has not done so here.  It has not provided, for

instance, any declarations from terminated PSCs unable to find new work, or from other humanitarian aid organizations attesting to hiring freezes.  Without that kind of concrete evidence, it is wholly speculative whether the complete professional lockout that the PSCA presages could eventually befall its members.[6]

The PSCA next makes various arguments about irreparable harm that it alleges will accrue to USAID and the world writ large absent a preliminary injunction.  It predicts that, without relief before judgment, USAID will permanently lose "institutional capacity," since "[o]nce USAID's infrastructure—its workforce, systems, contracts, and global partnerships—is dismantled, it cannot easily be restored." Mot. at 39.  And the PSCA further alleges that this injury will culminate in injuries to USAID's implementing partners, who have had to "lay off employees, stop or limit operations, or even close their doors" as a result of the changes at USAID, and to humankind, which will face "[i]mmiseration, instability, hunger, disease, and death . . . if USAID does not do the work that Congress has mandated it to do."  *Id.* at 41–42.  Whatever the validity of these concerns, they are not concerns about irreparable harm to the PSCA or its members specifically. The Court noted when denying the TRO that such generalized allegations of irreparable injury are insufficient for preliminary relief, and the same is true today.  *See PSCA*, ECF No. 23 at 7; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "the applicant" must be "likely to suffer irreparable harm before a decision on the merits").

---

[6] In a single line, the PSCA notes that "PSCs' personal information is being published on the widely publicized DOGE website," seemingly suggesting that this also inflicts irreparable harm.  Mot. at 39 (citing *PSCA*, ECF No. 6-13 ¶¶ 3, 8; ECF No. 6-15 ¶¶ 3–4; ECF No. 39-4 at 102 ¶ 21).  But despite including a provision in its proposed order that would require defendants to "[c]ease disclosing [PSCs'] personal identifying information and remove that information from all DOGE websites," *PSCA*, ECF No. 39-26 ¶ (h), the PSCA never attempts to link this requested relief with the substance of its claims, which it maintains challenge the "dismantling and destruction of USAID." Mot. at 2.  It is thus unclear how this theory of irreparable harm could support a preliminary injunction.

## 2.    Balance of the Equities and Public Interest

As the Court explained when denying the PSCA's TRO motion and in *AFSA I*, plaintiffs and the government have each identified plausible interests on either side of the equities ledger in these cases. *See PSCA*, ECF No. 23 at 15–16; *AFSA I*, 768 F. Supp. 3d at 25. Although the facts on the ground have shifted somewhat since then, those asserted interests generally have not. On one hand, the PSCA claims that without injunctive relief USAID will cease to exist, decades of "efforts to project U.S. 'soft power'" will be wasted, and drastic humanitarian consequences will ensue. Mot. at 43. On the other hand, the government claims that enjoining its "reorganization of USAID" would prevent it from aligning the United States' foreign aid programs with American values—including by quashing objectionable projects that "serve to destabilize world peace by promoting ideas in foreign countries that are directly inverse to harmonious and stable relations internal to and among countries." Opp. at 41 (quoting Exec. Order No. 14, 169, 90 Fed. Reg. 8619 § 1).

As the Court has said before, it is difficult to weigh these assertions against each other, seeing as they differ not only directionally but also in kind. *See AFSA I*, 768 F. Supp. 3d at 25. What the Court is ultimately most moved by, then, are the same jurisdictional principles that form the core of these cases. It is likely that the only harms as to which the PSCA has standing to seek relief are those regarding the termination of its members' voluntarily entered contractual agreements with USAID, and it is also likely that such terminations must and be addressed (and, if unlawful, will be redressed) under the CDA. *See Widakuswara II*, 2025 WL 1288817, at *5. On the other hand, issuing preliminary relief requiring the reinstatement of PSCs would intrude into Executive Branch personnel matters and expand the judicial role. *See id.* at *5–6 ("[T]he Executive Branch has a significant interest in maintaining control over personnel matters" and

36

"[t]he public has an interest in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress.").  Where the PSCA has not demonstrated any irremediable injury and where Congress meanwhile has "limited the resolution of . . . potentially costly [personnel] claims" implicating the public fisc to "specialized tribunals" like the Court of Federal Claims, *id.* at *6, the Court concludes that neither the equities nor the public interest favor a preliminary injunction.

### IV.    Conclusion

For the foregoing reasons, the Court will deny the *AFSA* plaintiffs' motion for summary judgment, *AFSA*, ECF No. 51, and will grant the government's motion to dismiss, *AFSA*, ECF No. 70.  The Court will deny the PSCA's motion for a preliminary injunction, *PSCA*, ECF No. 39. Orders in both cases will accompany this Opinion.


DATE: July 25, 2025

CARL J. NICHOLS
United States District Judge